UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

METROPOLITAN PROPERTY AND              )
CASUALTY INSURANCE COMPANY and         )
THE COMMERCE INSURANCE COMPANY,        )
                                       )          CIVIL ACTION
            Plaintiffs,                )          NO.  15-12939-LTS
      v.                               )
                                       )
SAVIN HILL FAMILY CHIROPRACTIC, INC.,  )
et al.,                                )
                                       )
            Defendants.                )

**REPORT AND RECOMMENDATION ON
THE GLASSMAN PARTIES' MOTION TO DISMISS
UNDER THE MASSACHUSETTS ANTI-SLAPP STATUTE**

December 28, 2016

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiffs, Metropolitan Property and Casualty Insurance Company and The

Commerce Insurance Company (collectively, "Plaintiffs" or "Carriers"), have brought this action

against two chiropractic entities, their present and former principals, certain of their

employees and various related entities and individuals, claiming that the Defendants engaged

in a fraudulent scheme to obtain insurance benefits from the Carriers by billing for chiropractic

treatment that was "unreasonable and unnecessary, that [has] been wrongfully and grossly

exaggerated, not rendered in some cases, rendered by unlicensed personnel, rendered to non-

injured body areas, as well as for magnified and fabricated symptoms and injuries," and by

"filing, pursuing and prosecuting insurance claims based on such treatment and bills."  Among the named Defendants are the Law Offices of Jeffrey S. Glassman, LLC ("GLO"), its owner, Jeffrey S. Glassman, Esq. ("Glassman"), and two individuals who were employed as paralegals at GLO, Brandy Soto ("Soto") and Heger Asenjo ("Asenjo") (collectively, "the Law Firm Defendants").   The Plaintiffs claim that the Law Firm Defendants participated in the alleged scheme by, *inter alia*, unlawfully recruiting and soliciting patients insured by the Carriers; referring patients to the chiropractic entities for treatment; and knowingly submitting and prosecuting false and inflated claims for insurance benefits using false chiropractic records.  In their Second Amended Complaint, the Plaintiffs have asserted claims against the Law Firm Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c)-(d) (Counts I-IV), common law fraud/deceit (Count V), true conspiracy (Count VI), civil conspiracy (Count VII), intentional interference with contractual relations (Count IX) and intentional interference with advantageous business relationships (Count X).  In addition, the Plaintiffs have asserted claims against GLO and Glassman pursuant to Mass. Gen. Laws ch. 93A (Counts XI-XIII).

The matter is presently before the court on the "Motion by Jeffrey Glassman and Law Offices of Jeffrey S. Glassman LLC, Under the Massachusetts Anti-SLAPP Statute, to Dismiss All State Law Claims Against Them and for an Award of Attorneys' Fees and Expenses" (Docket No. 344).  By their motion, Glassman and GLO (collectively, the "Glassman Parties") contend that all of the Carriers' state law claims against them must be dismissed because those claims are based on the Glassman Parties' "petitioning activities," and are therefore not actionable

under the Massachusetts anti-SLAPP statute, Mass. Gen. Laws ch. 231, § 59H.[1]  The Glassman

Parties further contend that under the anti-SLAPP statute, they are entitled to recover the

costs and reasonable attorney's fees incurred in connection with their motion.  As set forth in

detail below, this court finds that the Glassman Parties have ignored substantial portions of

the Complaint in an attempt to characterize the case against them as a challenge solely to

their representation of clients in connection with litigation.[2]  Considering the Second Amended

Complaint in its entirety, this court finds that the Glassman Parties have failed to satisfy their

burden of showing that the state law claims against them are based on petitioning activities

alone, and that there is no substantial basis for those claims aside from the petitioning

activities.   Accordingly, and for all the reasons described herein, this court recommends to the

District Judge to whom this case is assigned that the pending motion to dismiss be DENIED.

## II.  <u>STATEMENT OF FACTS</u>[3]

The Plaintiffs are insurance companies which underwrite motor vehicle insurance in

Massachusetts.  (2d Am. Compl. ¶ 126).  Massachusetts law requires that motor vehicle

insurers, including the Plaintiffs, provide personal injury protection ("PIP") benefits in every

---

[1] "The acronym 'SLAPP' stands for 'Strategic Lawsuit Against Public Participation.'"  <u>Fustolo v. Hollander</u>, 455 Mass. 861, 861 n.1, 920 N.E.2d 837, 838 n.1 (2010) (quoting <u>Duracraft Corp. v. Holmes Prods. Corp.</u>, 427 Mass. 156, 160 n.7, 691 N.E.2d 935 (1998)).

[2] Because the instant motion to dismiss addresses only the applicability of the Massachusetts anti-SLAPP statute, and does not challenge the veracity of the allegations against the Glassman Parties or the sufficiency of the allegations to state a claim against the Glassman Parties, this court expresses no opinion as to any subsequent challenges on those grounds.

[3] A court considering a motion to dismiss under the Massachusetts anti-SLAPP statute "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  Mass. Gen. Laws ch. 231, § 59H.  Accordingly, the facts are based on the allegations of the Second Amended Complaint (Docket No. 304) and the Declaration of Michael M. D'Isola ("D'Isola Decl.") (Docket No. 346), which was submitted by the Glassman Parties in support of their motion to dismiss.

policy they issue.  (Id. ¶ 127).  See also Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 225-26,

950 N.E.2d 853, 857 (2011) (describing PIP benefits as part of the Massachusetts standard

automobile insurance policy, and "the 'central feature' of the Massachusetts 'no-fault'

automobile insurance system" (citation omitted)).  Such benefits "are payable for medical

expenses, lost wages, and replacement services and may be claimed by, among others, any

person who is injured while occupying an insured vehicle."  Golchin, 460 Mass. at 226, 950

N.E.2d at 857-58.  Moreover, the insurer is required to pay the benefits "upon receipt of

reasonable proof of the fact and amount of expenses and loss incurred" by the claimant, and

may be subject to liability if PIP benefits that are due and payable remain unpaid for 30 days,

or if it is shown that the insurer knowingly or willfully failed to carry out the prompt, fair and

equitable settlement of a claim for which liability is reasonably clear.  (2d Am. Compl. ¶¶ 129-

30, 140).

The Plaintiffs contend that in order to meet their obligations to process PIP claims

promptly and fairly, they must rely on the representations of the claimants' treatment

providers, including their representations that the treatment given and the expenses incurred

were reasonable, necessary and causally related to an event covered under the applicable

insurance policy.  (Id. ¶ 132).  Allegedly, under Massachusetts law, chiropractic treatment, as

well as any bills associated with such treatment, are presumed to be necessary and reasonable

when sworn to by the licensed chiropractor who provided the claimant's treatment.  (Id. ¶

133).  The Plaintiffs assert that in this case, "[t]he Defendants have developed and

implemented a scheme to exploit this statutory framework by utilizing the 'necessary and

reasonable treatment' presumption to wrongfully induce Metropolitan and Commerce to pay or settle false and inflated claims[.]"  (Id. ¶ 142).

There is no need to describe the alleged scheme in detail, or to explain the role of each Defendant.  Rather, the following overview of the scheme and the Law Firm Defendants' alleged participation in that scheme will suffice to put the Glassman Parties' motion to dismiss in context.

### Overview of the Alleged Scheme to Defraud the Carriers

The Carriers claim that since January 2008, the Defendants have carried out a fraudulent scheme by soliciting and recruiting patients who had reportedly sustained injuries in automobile accidents and were eligible for PIP benefits under their automobile insurance policies, arranging for the patients to receive unnecessary and/or unreasonable chiropractic evaluations and treatment at Logan Chiropractic, Inc. ("Logan") or Savin Hill Family Chiropractic, Inc. ("Savin Hill"), and seeking coverage for the costs of that treatment by submitting or facilitating the submission of bills to the Carriers.  (See id. ¶¶ 1-5, 163). According to the Plaintiffs, the bills reflected chiropractic treatment that was "wrongfully and grossly exaggerated, not rendered in some cases, rendered by unlicensed personnel, rendered to non-injured body areas, as well as for magnified and fabricated symptoms and injuries."  (Id. ¶ 3).  Moreover, the Plaintiffs contend that the Defendants acted knowingly and intentionally in connection with their efforts to obtain improper insurance payments.  (Id. ¶ 4).

The Defendants' conduct allegedly resulted in the submission of thousands of improper insurance claims, including claims for PIP benefits, bodily injury coverage and uninsured motorist benefits.  (Id. ¶¶ 2, 9).  However, the Carriers contend that because the false nature

of the chiropractic records was not apparent on a claim-by-claim basis, they were unable to detect the fraud or avoid paying benefits. (Id. ¶¶ 9-10). They further contend that they have incurred millions of dollars in damages as a result of the Defendants' conduct. (See id. ¶¶ 12(g)-12(h)). By their claims in this action, the Carriers are seeking both compensatory damages and injunctive relief against each of the Defendants.

### The Law Firm Defendants' Alleged Role in the Fraudulent Scheme

Defendant GLO is a Massachusetts limited liability company, which was organized for the purpose of providing legal services. (Id. ¶ 40). Defendant Glassman is a licensed attorney and the sole owner of GLO. (Id. ¶ 42). The Plaintiffs claim that Glassman and his firm have "a longstanding illicit and illegal referral relationship with the [remaining] Defendants," which "was established to carry out the Defendants' fraudulent scheme to wrongfully obtain insurance benefits from [the Carriers]." (Id. ¶ 45). In particular, the Plaintiffs assert that Glassman, GLO, and two paralegals who have been employed by GLO throughout the relevant time period, Defendants Soto and Asenjo, participated in the alleged fraud by:

> (1) improperly and unlawfully soliciting, meeting and/or recruiting Metropolitan and Commerce patients and/or claimants to seek unwarranted, unlicensed, predetermined and/or unnecessary and unreasonable chiropractic treatment from [Logan, Savin Hill and a number of licensed chiropractors working for those entities (collectively, the "Medical Provider Defendants")]; (2) knowingly and willfully participating in the preparation and/or completion of patient in-take forms as well as other medical records and forms from the Medical Provider Defendants on behalf [of] Metropolitan and Commerce claimants and/or patients; and (3) improperly and unlawfully soliciting, meeting and/or recruiting Metropolitan and Commerce patients and/or claimants to submit PIP, Medical Payment ("MedPay"), Bodily Injury ("BI"), Optional Bodily Injury ("OBI"), and Uninsured and/or Underinsured Motorist ("UM") claims through the legal representation of the Defendant, Law Offices of Jeffrey S. Glassman, LLC, based on the

6

fraudulent chiropractic records and bills of the Medical Provider
Defendants.

(Id. ¶ 5).

As alleged in the Second Amended Complaint, the unlawful solicitation, recruiting and
referral activities were largely carried out by Soto and Asenjo in their capacities as employees
of GLO. (See id. ¶¶ 48-57). The plaintiffs claim that Soto and Asenjo met with individuals who
had been injured in automobile accidents, and were eligible for benefits under insurance
policies with the Carriers, in order to solicit business for GLO and establish an attorney-client
relationship between GLO and the patients. (Id. ¶¶ 49, 51-52, 54-55). According to the
Plaintiffs, the paralegals identified those patients by obtaining police reports of automobile
accidents that had occurred in the Boston area, and contacting the individuals identified in the
police reports. (Id. ¶¶ 51, 198). They also received the names and contact information of
motor vehicle accident victims from sources employed at Boston Medical Center, Enterprise
Rent-A-Car and Eagle Hill Auto Body. (Id. ¶¶ 241-46, 253-56, 260, 267, 273, 276). Soto and
Asenjo allegedly used that information to solicit and recruit new personal injury patients not
only for GLO, but also for Logan and Savin Hill. (Id. ¶¶ 244, 255, 267, 274). The Plaintiffs claim
that solicitations by a representative or agent of an attorney are prohibited under
Massachusetts statutory law, and that Soto's and Asenjo's conduct was therefore unlawful.
(See id. ¶ 166). They further claim, upon information and belief, that Glassman and his firm
were aware of Soto's and Arenjo's improper solicitation and recruiting activities, and that they
condoned the unlawful conduct by compensating the paralegals for their efforts. (Id. ¶¶ 171,
199-200, 206-07).

Allegedly, in addition to his work as a paralegal for GLO, Soto is an owner, chief operations officer and/or general manager of Logan and Savin Hill, and has continued to maintain control of the business operations at the clinics throughout his employment with GLO.  (See id. ¶¶  59-60, 187).  The Plaintiffs maintain that both Soto and Asenjo have acted as a "primary referral source" between the Glassman Parties and the chiropractic entities.  (Id. ¶¶ 169-70).  For example, they allege that Soto not only "recruits and solicits claimants and/or patients that treat at his clinics to be represented by Glassman and [GLO]," but also "recruits and solicits claimants and/or patients that are represented by Glassman and [GLO] to treat at his clinics."  (Id. ¶ 59).  They also allege that Soto and Asenjo have met with potential claimants at the clinics in order to both solicit them on behalf of GLO, and "facilitate the initiation of and continued chiropractic treatments at Savin Hill and/or Logan[.]"  (Id. ¶¶ 55-56).

According to the Plaintiffs, Soto's role in the fraudulent scheme has not been limited to his solicitation and referral activities.  Specifically, they claim that Soto also "participates in developing and implementing the fraudulent treatment practice and protocols administered to Metropolitan and Commerce claimants and/or patients at Logan . . . and Savin Hill."  (Id. ¶ 178).  They further claim that the owners of the clinics, along with various of their employees, "knowingly and willfully signed, certified, and/or submitted medical records and bills for false, unwarranted, unlicensed, predetermined and/or unnecessary and unreasonable chiropractic treatment . . . in order to fraudulently obtain insurance benefits from the Plaintiffs."  (Id. ¶ 6).  Thus, the Plaintiffs allege that Soto has been a key participant in various types of activities relating to the alleged fraud.

In connection with their employment as paralegals at GLO, Soto and Asenjo allegedly provided patients with documents from Savin Hill and Logan before the patients had even presented at the clinics for an initial evaluation. (Id. ¶¶ 218-20). The documents included but were not limited to, Irrevocable Assignments of Benefits forms, Consent for Treatment forms, health insurance forms, patient questionnaires and medical/clinical records. (Id.). The Plaintiffs claim that Soto and Asenjo completed or assisted the patients with the completion of these materials, which were subsequently used to process and prosecute fraudulent claims for insurance benefits from the Carriers. (Id. ¶¶ 221-22). Additionally, they claim, upon information and belief, that Glassman and GLO were aware of Soto's and Asenjo's possession of the forms and their use of the documents for purposes of carrying out insurance fraud. (Id. ¶¶ 219, 222-23).

Although the Glassman Parties allegedly knew that bills and chiropractic records reflecting treatment at Logan and Savin Hill were false and misleading, they allegedly sought insurance coverage from the Carriers on behalf of clients who had been evaluated and treated at the clinics. (Id. ¶¶ 303-07, 310-12). Thus, the Plaintiffs allege that the Glassman Parties submitted claims for coverage to the Carriers, issued demand letters to the Carriers pursuant to Mass. Gen. Laws ch. 93A ("Chapter 93A"), and engaged in litigation against the Carriers on behalf of those clients. (Id. ¶¶ 306, 310-12). In other words, the Plaintiffs claim that the Glassman Parties persisted in pursuing insurance coverage from the Carriers even though they knew that the claims were fraudulent. In their Second Amended Complaint, the Plaintiffs have asserted a number of claims against the Glassman Parties based on their conduct and the conduct of the paralegals. Those claims include state law claims for common law fraud/deceit,

9

true conspiracy, civil conspiracy, intentional interference with contractual relations, intentional interference with advantageous business relationships and violations of Chapter 93A.  (2d Am. Compl. at Counts V-VII, IX-XIII).

### Attorney D'Isola's Declaration

In support of their motion to dismiss under the Massachusetts anti-SLAPP statute, the Glassman Parties have submitted the Declaration of Michael M. D'Isola, a Massachusetts attorney who has served as the Manager of GLO's Litigation Department since 2009.  (D'Isola Decl. ¶¶ 1-2).  Attorney D'Isola avers that he has never been the subject of any disciplinary action, and has never participated in any fraudulent conduct at any time during his career as an attorney.  (Id. ¶ 4).  He also states that the attorneys at GLO maintain an ethical environment in which to practice law zealously and with integrity.  (Id.).

Attorney D'Isola claims that he has reviewed the Second Amended Complaint and the exhibits attached thereto.  (Id. ¶ 8).  He opines, based on his review, that the Plaintiffs have brought their claims against the Glassman Parties "in retaliation for the work [GLO performs] petitioning on behalf of clients in good faith, as well as to impose a chilling effect on those petitioning efforts."  (Id.).  In support of his assessment that the Plaintiffs are motivated by the Glassman Parties' petitioning activities, Attorney D'Isola cites allegations from the Second Amended Complaint that describe GLO's issuance of Chapter 93A demand letters and its prosecution of claims on behalf of its clients.  (Id. ¶ 9).  In support of his opinion that the Plaintiffs are seeking to chill the Glassman Parties' good faith petitioning activities, Attorney D'Isola notes that the Plaintiffs have attempted to rely on a temporary sealing order in this case as a basis for avoiding the use of a stenographer in an arbitration with a claimant, and

have argued in other proceedings that the pendency of this action creates a conflict of interest for GLO with respect to the representation of clients in their underlying claims for insurance coverage.  (Id. ¶¶ 21-22, 24).  Significantly, however, Attorney D'Isola does not address the Plaintiffs' allegations of improper solicitation and recruiting activities, the paralegals' alleged preparation of documentation that was used to pursue fraudulent insurance claims, or Soto's alleged role in the fraudulent treatment practices that were implemented at Logan and Savin Hill.  Nor does he attempt to explain how such conduct amounts to "petitioning" activity within the meaning of the Massachusetts anti-SLAPP statute.

Attorney D'Isola does challenge the Plaintiffs' claim that the Glassman Parties had knowledge of the alleged fraud, and participated knowingly in the allegedly fraudulent scheme.  For example, but without limitation, Attorney D'Isola suggests that the Glassman Parties had no reason to question the legitimacy of the chiropractic treatment provided to their clients, or the substance of the bills from Logan and Savin Hill, because formulaic treatment protocols are often dictated by what the available insurance policies allow.  (Id. ¶ 11).  He also insists that in any event, it is not the responsibility of counsel "to second guess the treatment plan of or bills by a licensed healthcare provider."  (Id.).  While Attorney D'Isola has made it clear that the merits of the claims against the Glassman Parties are highly contested, the instant motion to dismiss does not address the merits of this case.   Rather, the issue before this court is whether the Plaintiffs have objected only to the Glassman Parties' protected petitioning activities.  As described below, this court finds that the allegations against the Glassman Parties are much broader, and encompass activities that do not fall within the scope of the anti-SLAPP statute.

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. <u>ANALYSIS</u>

The Glassman Parties have filed a motion to dismiss pursuant to the Massachusetts anti-SLAPP statute, Mass. Gen. Laws ch. 231, § 59H.  "The [Massachusetts] Legislature enacted the anti-SLAPP statute 'to provide a quick remedy for those citizens targeted by frivolous lawsuits based on their government petitioning activities.'"  <u>Fustolo v. Hollander</u>, 455 Mass. 861, 864, 920 N.E.2d 837, 840 (2010) (quoting <u>Kobrin v. Gastfriend</u>, 443 Mass. 327, 331, 821 N.E.2d 60 (2005)) (footnote omitted).  The statute enables a party to "file a special motion to dismiss if 'the civil claims, counterclaims, or cross-claims against said party are based on said party's exercise of its right to petition under the constitution of the United States or of the commonwealth.'"  <u>Id.</u> at 865, 920 N.E.2d at 840 (quoting Mass. Gen. Laws ch. 231, § 59H).  By their motion in this case, the Glassman Parties are requesting the prompt dismissal of all of the Plaintiffs' state law claims against them, as well as an award of attorneys' fees and expenses in their favor.

### <u>Burden of Proof Under the Anti-SLAPP Statute</u>

In order to prevail on a special motion to dismiss under the anti-SLAPP statute, the moving party "must make a threshold showing through pleadings and affidavits that the claims against it 'are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.'"  <u>Id.</u> (quoting <u>Duracraft Corp. v. Holmes Prods. Corp.</u>, 427 Mass. 156, 167-68, 691 N.E.2d 935 (1998)) (internal quotations omitted).  "If the

moving party fails to make this showing, the special motion is denied."  <u>Cadle Co. v.</u>

<u>Schlichtmann</u>, 448 Mass. 242, 249, 859 N.E.2d 858, 864 (2007).  However,

> [i]f this showing is made, then the burden shifts to the nonmoving party
> to demonstrate, again by pleadings and affidavits, that "(1) the moving
> party's exercise of its right to petition was devoid of any reasonable
> factual support or any arguable basis in law and (2) the moving party's
> acts caused actual injury to the responding party."

<u>Id.</u> (quoting Mass. Gen. Laws ch. 231, § 59H).  In the instant case, the Plaintiffs argue that

Glassman and GLO cannot meet their initial burden because "the vast majority of the

Glassman Defendants' activities alleged in the [Second Amended Complaint] are not

'petitioning activities' under the Anti-SLAPP Statute and the claims in this litigation are not

'based on . . . petitioning activities alone and have . . . [a] substantial basis other than or in

addition to the petitioning activities[.]'"  (Pl. Opp. Mem. (Docket No. 384) at 4 (citation

omitted)).  This court agrees, and recommends that the motion to dismiss be denied.

### <u>Nature of the Glassman Parties' Allegedly Unlawful Activities</u>

The fundamental issue raised by the pending motion is whether "the *only* conduct

complained of" with respect to Glassman and GLO consists of "petitioning activity" within the

meaning of the anti-SLAPP statute.  <u>See</u> <u>Cadle Co.</u>, 448 Mass. at 250, 859 N.E.2d at 864

(quoting <u>Fabre v. Walton</u>, 436 Mass. 517, 524, 781 N.E.2d 780 (2002)) (emphasis in original).

The statute defines "a party's exercise of its right to petition" as follows:

> "[1] [A]ny written or oral statement made before or submitted to a
> legislative, executive, or judicial body, or any other governmental
> proceeding; [2] any written or oral statement made in connection with an
> issue under consideration or review by a legislative, executive, or judicial
> body, or any other governmental proceeding; [3] any statement
> reasonably likely to encourage consideration or review of an issue by a
> legislative, executive, or judicial body or any other governmental
> proceeding; [4] any statement reasonably likely to enlist public

participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government."

Id. at 248, 859 N.E.2d at 863 (quoting Mass. Gen. Laws ch. 231, § 59H).  "The right of petition contemplated by the Legislature is thus one in which a party seeks some redress from the government."  Global NAPs, Inc. v. Verizon New England, Inc., 63 Mass. App. Ct. 600, 606, 828 N.E.2d 529, 533 (2005) (quoting Kobrin, 443 Mass. at 333, 821 N.E.2d 60).  Consequently, the challenged conduct must have "the potential or intent to redress a grievance, or directly or indirectly to influence, inform, or bring about governmental consideration of the issue."  Id. at 606-07, 828 N.E.2d at 534.

The Glassman Parties argue that the Plaintiffs' state law claims are "clearly based on petitioning activity" because, among other things,

> [t]he operative factual allegations focus on the fact that the Glassman Law Firm "continued to prosecute claims on behalf of Metropolitan and Commerce claimants and/or patients by sending [Chapter] 93A demand letters to Metropolitan and Commerce," that the Glassman Law Firm "sent [Chapter] 93A demand letters to Metropolitan and Commerce," and that Glassman and the Glassman Law Firm received [Chapter] 93A response letters from Metropolitan and Commerce, but "continued to prosecute claims for insurance benefits from Metropolitan and Commerce **by filing lawsuits in Massachusetts State Courts**."

(Def. Mem. (Docket No. 345) at 12-13 (citations omitted; emphasis in original)).  This argument is consistent with Attorney D'Isola's view that the allegations which are pertinent to the Plaintiffs' claims against Glassman and GLO arise out of GLO's efforts to prosecute claims on behalf of its clients.  (See D'Isola Decl. ¶¶ 7-10).  There can be no dispute that the filing of lawsuits in state court constitutes petitioning activity, which is protected by the anti-SLAPP statute.  See Fabre, 436 Mass. at 523, 781 N.E.2d at 785 (stating that the filing of a complaint

in state court is petitioning activity "encompassed within the protection afforded by G.L. c. 231, § 59H").  However, this court finds that the Glassman Parties and Attorney D'Isola have taken an unreasonably narrow view of the alleged facts.

As described above, in support of their claims against Glassman and GLO, the Plaintiffs have relied not only on the Defendants' conduct in issuing demand letters and pursuing litigation, but also on Soto's and Asenjo's allegedly unlawful actions in recruiting and soliciting claimants on behalf of GLO, acting as the primary referral sources between GLO and the chiropractic clinics, and participating in the preparation of fraudulent patient intake forms and medical records, as well as on Soto's alleged participation in the development and implementation of fraudulent treatment practices and protocols, which were administered to patients by Logan and Savin Hill.  Under Massachusetts law, statements made as part of an effort to attract clients to a law practice do not constitute petitioning activity under the anti-SLAPP statute.  See Cadle Co., 448 Mass. at 250-51, 859 N.E.2d at 864-65 (holding that statements published on website designed to attract clients to defendant's law practice were not petitioning activity protected under Mass. Gen. Laws ch. 231, § 59H).  Therefore, the alleged solicitation and recruiting activities alone are sufficient to defeat the defendants' motion to dismiss.  Additionally, the Defendants have not addressed the paralegals' alleged preparation of fraudulent intake forms and medical records, or Soto's alleged role in the challenged treatment practices, much less attempted to establish that such conduct falls within the statutory definition of "petitioning activities."  For this reason as well, they have failed to meet their burden of showing "that the claims in the litigation 'are based on the petitioning activities alone and have no substantial basis other than or in addition to the

petitioning activities.'" <u>Fabre</u>, 436 Mass. at 522, 781 N.E.2d at 785 (quoting <u>Duracraft Corp.</u>, 427 Mass. at 167-68, 691 N.E.2d 935) (internal quotations omitted).

The Glassman Parties assert that "[w]ith respect to the solicitation of clients, the state law claims focus on alleged activities of paralegals, not on factual allegations about activities of Glassman." (Def. Reply Mem. (Docket No. 402) at 4).  However, the Defendants' suggestion that they cannot be held liable for the actions of their employees is unconvincing at this stage. As an initial matter, the Plaintiffs allege that Glassman and GLO condoned the unlawful solicitations, and that they compensated Soto and Asenjo for their efforts to recruit clients for the firm.  (<u>See</u> 2d Am. Compl. ¶¶ 199-200).  Therefore, they may be able to hold the Glassman Parties directly liable for at least some of the challenged conduct.  In any event, "[i]t is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." <u>Meyer v. Holley</u>, 537 U.S. 280, 285, 123 S. Ct. 824, 829, 154 L. Ed.2d 753 (2003). Accordingly, the Plaintiffs may seek to hold the Glassman Parties liable for the paralegals' alleged role in the fraudulent scheme under this theory as well.[4]

---

[4] The Glassman Parties also challenge the Plaintiffs' reliance on the alleged solicitation and recruiting activities by pointing to statements from a May 2016 hearing before the court in which the District Judge questioned whether the Carriers had standing to assert claims based on those activities. (<u>See</u> Def. Reply Mem. at 4-5).  However, no rulings were ever made that would preclude the Carriers from pursuing such claims.  Rather, in his June 15, 2016 Order on Pending Motions, the District Judge indicated that the Carriers may be able to hold GLO liable, under a theory of vicarious liability, for the paralegals' alleged conduct in the fraudulent scheme, including their alleged conduct in soliciting and recruiting clients for GLO and the chiropractic clinics. (<u>See</u> Order on Pending Motions (Docket No. 295) at 16-19).  To the extent the Glassman Parties contend that the District Judge has already ruled that the Complaint fails to state a fraud claim against them based on the allegedly improper solicitations, their argument is similarly unavailing. (<u>See</u> Def. Reply Mem. at 5).  In his June 15, 2016 Order on Pending Motions, the District Judge addressed whether the facts alleged in a prior version of the Complaint were sufficient to support a reasonable inference of fraud on the part of the Glassman Parties. (<u>See</u>

**Mandatory Reporting to the Merit Ratings Board**

In a final attempt to avoid the denial of their motion, the Glassman Parties argue that "the submission of automobile accident claims over $500 trigger regulatory schemes that require reports to the Merit Ratings Board of the Registry of Motor Vehicles[.]"  (Def. Reply Mem. at 6).  Thus, according to the Glassman Parties, "the state regulatory scheme makes it 'reasonably likely' that each automobile accident claim at issue . . . would lead to reports to, among others, the Merit Ratings Board of the RMV."  (Id. at 7).  This conduct, according to the Glassman Parties, is protected under the anti-SLAPP statute.  However, this argument is also insufficient to support the motion to dismiss.

Massachusetts regulations governing automobile insurance require insurance companies "to report to the [Merit Ratings Board] all 'At Fault Accidents' resulting in a claim for more than $500[,]" and "[f]ailure to do so can result in a fine of up to $500."  Beach v. Commerce Ins. Co., 69 Mass. App. Ct. 720, 723, 871 N.E.2d 1080, 1083 (2007).  However, this requirement has nothing to do with whether the Plaintiffs' state law claims against the Glassman Parties are based solely on the Defendants' petitioning activity.  Even assuming the mandatory reporting of claims to the Merit Ratings Board amounts to "petitioning activity" within the meaning of the anti-SLAPP suit, such reporting would involve the petitioning activity of the Carriers rather than the Defendants.  Therefore, it is irrelevant to the issues raised by the present motion.

---

Order on Pending Motions at 17-19).  However, the question whether the facts alleged in the Second Amended Complaint are adequate to support such a claim has yet to be decided.

Because the Glassman Parties have failed to make an initial showing that the claims against them are based on petitioning activities alone and have no substantial basis beyond the petitioning activities, they are not entitled to avail themselves of the immunity provided by the Massachusetts anti-SLAPP statute.  Accordingly, this court recommends that their motion to dismiss be denied.

## IV.  CONCLUSION

For all the reasons detailed above, this court recommends to the District Judge to whom this case is assigned that the "Motion by Jeffrey Glassman and Law Offices of Jeffrey S. Glassman LLC, Under the Massachusetts Anti-SLAPP Statute, to Dismiss All State Law Claims Against Them and for an Award of Attorneys' Fees and Expenses" (Docket No. 344) be DENIED.[5]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).