UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| METROPOLITAN PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY and | ) | |
| THE COMMERCE INSURANCE COMPANY, | ) | |
| | ) | CIVIL ACTION |
| Plaintiffs, | ) | NO.  15-12939-LTS |
| v. | ) | |
| | ) | |
| SAVIN HILL FAMILY CHIROPRACTIC, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON DEFENDANTS'
## MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT

July 21, 2017

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiffs, Metropolitan Property and Casualty Insurance Company ("Metropolitan")

and The Commerce Insurance Company ("Commerce") (collectively, "Plaintiffs" or "Carriers"),

have brought this action against two chiropractic entities, their present and former principals,

certain of their employees and various related entities and individuals, claiming that the

defendants engaged in a fraudulent scheme to obtain insurance benefits from the Carriers by

billing for chiropractic treatment that was "unreasonable and unnecessary, that [was]

wrongfully and grossly exaggerated, not rendered in some cases, rendered by unlicensed

personnel, rendered to non-injured body areas, as well as for magnified and fabricated

symptoms and injuries," and by "filing, pursuing and prosecuting insurance claims based on

such treatment and bills."  By their Second Amended Complaint, the Plaintiffs have asserted

claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1962(c)-(d) (Counts I-IV), common law fraud/deceit (Count V), true conspiracy (Count

VI), civil conspiracy (Count VII), breach of contract pursuant to Mass. Gen. Laws ch. 90 (Count

VIII), intentional interference with contractual relations (Count IX), intentional interference with

advantageous business relationships (Count X), and unfair and deceptive trade practices

pursuant to Mass. Gen. Laws ch. 93A ("Chapter 93A") (Count XI).  In addition, the Plaintiffs have

asserted claims for injunctive and equitable relief under Chapter 93A (Counts XII-XIII).

Metropolitan originally filed this action against a subset of the defendants in July 2015.

Those defendants subsequently filed motions to dismiss the original complaint.  However,

before the court had an opportunity to rule on the pending motions, Metropolitan notified the

court that it intended to amend the complaint in order to add new parties, claims and

allegations, including but not limited to, the addition of Commerce as a plaintiff in the litigation.

Accordingly, the District Judge to whom this case is assigned denied the motions to dismiss

without prejudice, directed Metropolitan to file any motion for leave to amend its complaint by

February 29, 2016, and gave the defendants an opportunity to oppose the proposed amended

complaint on the merits.  On June 15, 2016, following the completion of that process, the

District Judge issued an Order on Pending Motions ("Order") in which he denied the motion for

leave to file an Amended Complaint without prejudice.  As the District Judge ruled after denying

Metropolitan's motion:

> The Plaintiffs may file a revised Amended Complaint within 21 days of
> this order.  The Court limits briefing on any motions related to the revised
> Amended Complaint, including with respect to the Metropolitan's motion
> to amend and motions to dismiss, to the following three issues: (1)

whether the Plaintiffs adequately plead misrepresentation and fraud; (2) whether the allegations support an association-in-fact enterprise; and (3) whether the revised Amended Complaint passes muster with respect to any claims or parties not sufficiently plead in the proposed Amended Complaint, as discussed herein.

(Order (Docket No. 295) at 22).  Shortly thereafter, the District Judge issued an electronic order in which he clarified his June 15, 2016 Order as follows:

Plaintiffs may file a Second Amended Complaint to cure the deficiencies in the Proposed Amended Complaint, in the existing claims as to the existing parties, identified by the Court after which defendants may file motions to dismiss challenging whether the Second Amended Complaint cures the deficiencies.  The objections raised by the defendants in response to the Proposed Amended Complaint, but overruled by the Court are preserved without the necessity of renewal in response to the Second Amended Complaint.  The motions, if any, will focus just on narrower set of issues.

(Docket No. 299).  Metropolitan and Commerce then filed their Second Amended Complaint against 20 individual and corporate defendants.

The matter is presently before the court on the defendants' motions to dismiss the Second Amended Complaint (Docket Nos. 331, 334, 336, 337, 339 and 342), which have been filed by the following six categories of defendants: (1) the "Chiropractor Defendants" consisting of Richard McGovern, D.C., Marsella Imonti, D.C., Tara O'Desky, D.C., Allison Robin, D.C. and Charles Ronchetti, D.C.; (2) the "Paralegal Defendants" consisting of Brandy Soto and Heger Asenjo; (3) the "Chiropractic Assistants" consisting of William Hernandez, Maximo Soto, Arismeny Ramos, Tanisha Ramos, April Stewart and Karla Mendoza; (4) the "Moving Defendants" consisting of  Logan Chiropractic, Inc. ("Logan"), Savin Hill Family Chiropractic, Inc. ("Savin Hill"), Kenneth Ramos, Tony Ramos and Metro Coach, Inc. ("Metro Coach"); (5) Jeffrey S. Glassman, Esq.; and (6) Attorney Glassman's law firm, the Law Offices of Jeffrey S. Glassman

("GLO").  Although the motions have been filed separately, the defendants have raised

overlapping and substantially similar arguments in favor of dismissal.[1]  Thus, the defendants

contend that the Plaintiffs have failed to cure the specific deficiencies identified by the District

Judge in his June 15, 2016 Order, and that dismissal is also warranted because the Plaintiffs'

allegations are insufficient to satisfy the heightened standard for pleading fraud required by

Fed. R. Civ. P. 9(b), or to state a plausible claim for relief pursuant to Fed. R. Civ. P. 12(b)(6).  For

all the reasons detailed herein, this court recommends to the District Judge to whom this case

is assigned that the defendants' motions to dismiss the Second Amended Complaint be

ALLOWED IN PART and DENIED IN PART.  Specifically, this court recommends that the RICO

claims asserted in Counts I and III, the claims for breach of contract asserted in Count VIII and

the claims for intentional interference with contractual relations asserted in Count IX all be

dismissed.  However, this court recommends that the defendants' motions otherwise be

denied.

## II. <u>STATEMENT OF FACTS</u>

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts,

and give the plaintiffs the benefit of all reasonable inferences.  See <u>Cooperman v. Individual,</u>

<u>Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).  However, due to the voluminous nature of the Second

Amended Complaint, which consists of 166 pages of allegations and nearly 250 pages of

---

[1]  In addition to raising substantially similar arguments in their motions to dismiss, a number of the
defendants have adopted the arguments of their co-defendants and incorporated them by reference
into their memoranda of law in support of their motions to dismiss.  (See Chiropractic Assistants' Motion
to Dismiss (Docket No. 336) at 1; Glassman Mem. (Docket No. 340) at 2 n.1; GLO Mem. (Docket No. 343)
at 2). Accordingly, this court finds that it is appropriate to address all of the defendants' motions in a
single Report and Recommendation.

exhibits, it is not feasible to provide a detailed description of the Plaintiffs' allegations in this case.  Accordingly, this court will provide a general overview of the defendants' alleged scheme, including background information necessary to put the alleged scheme, and the defendants' alleged roles therein, in context.  Additional factual details relevant to the parties' arguments will be provided in connection with this court's analysis of the defendants' specific challenges to the Plaintiffs' claims.[2]

### The Plaintiffs' Obligations Under Massachusetts Law

The Plaintiffs, Metropolitan and Commerce, are insurance companies which underwrite motor vehicle insurance in Massachusetts.  (Compl. ¶ 126).  Massachusetts law requires that motor vehicle insurers, including the Plaintiffs, provide personal injury protection ("PIP") benefits in every policy they issue.  (Id. ¶ 127).  See also Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 225-26, 950 N.E.2d 853, 857 (2011) (describing PIP benefits as part of the Massachusetts standard automobile insurance policy, and "the 'central feature' of the Massachusetts 'no-fault' automobile insurance system" (citation omitted)).  The Plaintiffs claim that the constraints imposed upon them under the applicable statutory laws rendered them vulnerable to insurance fraud, and enabled the defendants to obtain millions of dollars in

---

[2] The facts are derived from the Second Amended Complaint ("Compl.") and the exhibits attached thereto ("Compl. Ex. __") (Docket No. 304).  Additionally, this court has considered Exhibit 1 to Brandy Soto's and Heger Asenjo's Memorandum in Support of Their Motion to Dismiss the Second Amended Complaint ("Paralegal Def. Mem., Ex. 1") (Docket No. 335), as well as the exhibits attached to the Memorandum in Support of Motion by Jeffrey S. Glassman to Dismiss the Second Amended Complaint ("Glassman Mem., Ex. __") (Docket No. 340).  For the reasons described in a Memorandum of Decision and Order on Parties' Motion to Strike issued separately on this date, this court has not considered the remaining exhibits submitted by the defendants.

improper and unlawful insurance benefits payments.  (See Compl. ¶¶ 7, 129-43, 417-28, 436-47).

Under Massachusetts law, "PIP benefits are payable for medical expenses, lost wages, and replacement services and may be claimed by, among others, any person who is injured while occupying an insured vehicle."  Golchin, 460 Mass. at 226, 950 N.E. 2d at 857-58.  The insurer is required to pay such benefits "upon receipt of reasonable proof of the fact and amount of expenses and loss incurred" by the claimant, and may be subject to liability if PIP benefits that are due and payable remain unpaid for 30 days, or if it is shown that the insurer knowingly or willfully failed to carry out the prompt, fair and equitable settlement of a claim for which liability is reasonably clear.  (Compl. ¶¶ 129-30, 140).  Chiropractic treatment, including any bills associated with such treatment, is presumed to be necessary and reasonable when sworn to by the licensed chiropractor who provided the claimant's treatment.  (Id. ¶ 133).

The Plaintiffs claim that in order to comply with their obligations to process PIP claims promptly and fairly, they must rely on the representations of claimants' treatment providers.  (Id. ¶ 132).  This includes the providers' representations that the treatment given and the expenses incurred were reasonable, necessary and causally related to an event covered under the applicable insurance policy.  (Id.).  The Plaintiffs further assert that "[t]he Defendants have developed and implemented a scheme to exploit this statutory framework by utilizing the 'necessary and reasonable treatment' presumption to wrongfully induce Metropolitan and Commerce to pay or settle false and inflated claims[.]"  (Id. ¶ 142).

**Overview of the Alleged Scheme to Defraud the Plaintiffs**

The Plaintiffs claim that from January 2008 through the filing of the Second Amended Complaint on August 4, 2016, the defendants were carrying out a fraudulent scheme by soliciting and recruiting patients who had reportedly sustained injuries in automobile accidents and were eligible for PIP benefits under their automobile insurance policies, arranging for those patients to receive unnecessary and/or unreasonable chiropractic evaluations and treatment at Logan or Savin Hill, and seeking coverage for the costs of that treatment by submitting or facilitating the submission of bills to the Carriers.  (See id. ¶¶ 1-5, 163).  According to the Plaintiffs, the bills reflected chiropractic treatment that was "wrongfully and grossly exaggerated, not rendered in some cases, rendered by unlicensed personnel, rendered to non-injured body areas, as well as for magnified and fabricated symptoms and injuries."  (Id. ¶ 3). They further allege that the defendants participated knowingly and intentionally in a concerted effort to obtain improper insurance payments from the Carriers.  (Id. ¶¶ 3, 5-6).

Allegedly, the coordinated actions of the defendants resulted in the submission of thousands of improper insurance claims over the course of the alleged 8 ½ year period, including claims for PIP benefits, bodily injury coverage and uninsured motorist benefits.  (See id. ¶¶ 1, 9).   However, the Plaintiffs claim that because the false nature of the chiropractic records were not apparent on a claim-by-claim basis, they were unable to detect the fraud or avoid paying benefits.  (Id. ¶¶ 9-10).  They further allege that they have incurred millions of dollars of damages as a result of the defendants' conduct.  (See id. ¶¶ 418-24, 437-43).  By their claims in this action, the Carriers are seeking both compensatory damages and injunctive relief against each of the defendants.

## The Defendants' Alleged Roles in the Fraudulent Scheme

The Plaintiffs claim that the chiropractic bills at the heart of the alleged scheme were generated by defendants Logan and Savin Hill. (See id. ¶¶ 4, 64, 84). Both Logan and Savin Hill are Massachusetts corporations that were organized for the purpose of providing chiropractic services to individuals who allegedly suffered injuries, including injuries sustained as a result of motor vehicle accidents. (Id. ¶¶ 63, 83). Allegedly, Logan provided chiropractic services from its principal place of business in East Boston, Massachusetts, while Savin Hill provided chiropractic services from its principal place of business in Dorchester, Massachusetts. (Id. ¶¶ 66, 86).

According to the Plaintiffs, both of the chiropractic clinics were owned by defendants Kenneth Ramos ("K. Ramos") and Brandy Soto ("B. Soto") during the relevant time period, and William Hernandez ("Hernandez") served as the President, Director, Treasurer and Secretary of Logan at various points during the time period from 2007 through 2009. (Id. ¶¶ 27, 67, 69-70, 88). They further claim that during the relevant time period, each of the Chiropractor Defendants and each of the Chiropractic Assistants worked as employees of both Logan and Savin Hill. (Id. ¶¶ 79, 98). Defendant Richard McGovern, D.C. ("Dr. McGovern") allegedly served as the clinics' Chiropractor of Record, and was directly responsible for the clinics' compliance with Massachusetts regulations governing the practice of chiropractic care in the Commonwealth. (Id. ¶¶ 80, 99; see also id. ¶¶ 144-45). Defendants Tony Ramos ("T. Ramos"), Arismendy Ramos ("A. Ramos") and Maximo Soto ("M. Soto") allegedly served as custodians of records for the clinics, and were responsible for compiling paperwork relating to the submission of claims to insurance carriers, including to the Plaintiffs. (Id. ¶¶ 82, 101).

8

The Plaintiffs claim that the Chiropractor Defendants, including Drs. McGovern, Imonti, O'Desky, Robin and Rochetti, "knowingly and willingly participated in the administration of . . . fraudulent treatment practices to Metropolitan and Commerce claimants and/or patients" while working at Logan and Savin Hill.  (Id. ¶ 333).  In particular, the Plaintiffs allege that during the initial chiropractic evaluation of their patients, the Chiropractor Defendants generated false and/or exaggerated tests and findings, and intentionally neglected to "assess certain risk factors and/or patients' actual medical history and/or conditions."  (Id. ¶¶ 344-46).  They also allege that the Chiropractor Defendants included fictitious, misleading and exaggerated orthopedic findings, prognoses, and diagnoses in the patients' examination reports.  (Id. ¶ 348). The Plaintiffs contend that these practices were used to justify the use of a "predetermined chiropractic treatment program" that was neither medically reasonable nor necessary, and caused the patients, including the Carriers' claimants, to incur excessive medical expenses.  (See id. ¶¶ 347, 349).  As a result, the vast majority of patients at the clinics, including those who were insured by Metropolitan and Commerce, received a formulaic program of treatment, which consisted of identical treatment modalities and levels of care, and was designed to ensure that each patient would incur medical expenses in excess of $2,000, the threshold necessary to recover damages for pain and suffering in tort actions arising out of the operation of a motor vehicle under Massachusetts law.  (Id. ¶¶ 349, 355, 357).  See also Mass. Gen. Laws ch. 231, § 6D.

Allegedly, the improper treatment practices were not limited to the activities of the Chiropractor Defendants.  According to the Plaintiffs, the Chiropractic Assistants and other unlicensed employees of Logan and Savin Hill routinely administered chiropractic treatment to

claimants of Metropolitan and Commerce, even though they knew that they lacked the qualifications required to provide such treatment.   (Compl. ¶¶ 367, 374, 377-81).  The Chiropractor Defendants would then sign the records, notes and bills relating to the allegedly unlicensed treatment in order "to provide these documents with a veil of legitimacy and conceal[ ] the fact that the person who rendered such treatment was unlicensed and/or unauthorized to do so." (Id. ¶ 383).  The Plaintiffs claim that the fraudulent paperwork was submitted to Metropolitan and Commerce in connection with claims for insurance coverage. (See id. ¶ 417).

Allegedly, the clinics billed the Carriers for the unlicensed treatment using CPT Code 97110, which requires direct one-on-one supervision by a licensed health care provider.  (Id. ¶ 369).  The clinics also submitted Health Insurance Claim Forms ("HICF"), which were completed by the Chiropractor Defendants, certifying that the chiropractic records and bills were "true, accurate and complete," that the services rendered were "medically indicated and necessary to the health of [the] patient," and that the treatment had been furnished by the Chiropractor Defendant or an employee under the Chiropractor Defendant's personal direction.  (Id. ¶¶ 370-71, 373).  The Plaintiffs allege that the clinics, with the knowledge and assistance of the Chiropractor Defendants and the Chiropractic Assistants, "fraudulently billed Metropolitan and Commerce by completing and signing HICF Forms using CPT Code 97110, for every claimant and/or patient that allegedly received therapeutic exercises rendered by . . . unlicensed medical staff and/or chiropractic assistants," including the Chiropractic Assistants.  (Id. ¶ 372; see also id. ¶¶ 368, 378-81).

In addition to billing the Carriers for excessive treatment and treatment rendered by unlicensed staff members, the clinics allegedly billed the Carriers for treatment that was never provided to patients.  (Id. ¶ 401).  Thus, in Exhibit B to the Second Amended Complaint, the Plaintiffs have listed various instances in which they received bills from Logan and Savin Hill, which allegedly included charges for treatment that was not rendered, as well as charges for false, exaggerated or misleading findings and reports, charges for excessive chiropractic treatment and charges for treatment rendered by unlicensed individuals.  (See id. at Ex. B). Similarly, in Exhibit C to the Complaint, the Plaintiffs have described various claims for which the clinics allegedly sought coverage for treatment that was never actually rendered and was otherwise fraudulent.  (See id. at Ex. C).  The Plaintiffs claim that under 233 C.M.R. § 4.09, improper charges, including "charges for 'treatments, procedures or services which were not rendered,' constitute a form of 'deceit' and 'gross misconduct.'"  (Id. ¶ 402).

Throughout the relevant time period defendant Tony Ramos was an office manager, billing clerk, custodian of records and a chiropractic assistant at Logan and Savin Hill.  (Id. ¶ 26). According to the Plaintiffs, he personally rendered unlicensed treatment to patients at the clinics, and was responsible for compiling billing paperwork at Savin Hill for submission to insurance companies, including to the Carriers.  (Id. ¶¶ 101, 374, 378).  He also served as the President, Director, Treasurer, Secretary and registered agent of defendant Metro Coach, a transportation company that was used to transport patients to Logan and Savin Hill, including patients who were claimants of Metropolitan and Commerce.  (Id. ¶¶ 104-06).  The Plaintiffs claim that Savin Hill and Logan used Metro Coach's services in order to insure that the Carriers' claimants would attend their appointments and receive the a pre-determined course of

chiropractic treatment.  (Id. ¶¶ 107-08).  They further claim that as a result of Tony Ramos' role in both Metro Coach and the clinics, Metro Coach knew that the clinics were involved in an unlawful scheme to obtain insurance benefits from the Plaintiffs, and that its transportation services were a necessary component of the scheme because it enabled the Chiropractor Defendants and Chiropractic Assistants to administer their fraudulent treatment practices and maintain a "continuous submission of false and fraudulent medical records, bills, and insurance claims for Metropolitan and Commerce patients and/or claimants."  (Id. ¶ 111).

The last group of defendants who allegedly participated in the fraudulent scheme includes Attorney Glassman, his law firm GLO, and the Paralegal Defendants, Brandy Soto and Heger Asenjo ("Asenjo").  GLO is a Massachusetts limited liability company, which was organized for the purpose of providing legal services.  (Id. ¶ 40).  Glassman is a licensed attorney and the sole owner of GLO.  (Id. ¶ 42).  The Plaintiffs claim that Glassman and his firm have "a longstanding illicit and illegal referral relationship with the [remaining] Defendants," which "was established to carry out the Defendants' fraudulent scheme to wrongfully obtain insurance benefits from [the Carriers]."  (Id. ¶ 45).  In particular, the Plaintiffs assert that throughout the relevant time period, Glassman and GLO employed the Paralegal Defendants, using the fictitious title of "paralegal" or "traveling paralegal," to disguise the fact that they were really employed as "runners" responsible for arranging illegal referrals between Glassman, GLO, Logan and Savin Hill.  (Id. ¶¶ 47-48).  They further assert that Glassman, GLO and the two paralegals participated in the alleged fraud by:

> (1) improperly and unlawfully soliciting, meeting and/or recruiting Metropolitan and Commerce patients and/or claimants to seek unwarranted, unlicensed, predetermined and/or unnecessary and unreasonable chiropractic treatment from [Logan, Savin Hill and a

number of licensed chiropractors working for those entities (collectively, the "Medical Provider Defendants")]; (2) knowingly and willfully participating in the preparation and/or completion of patient in-take forms as well as other medical records and forms from the Medical Provider Defendants on behalf [of] Metropolitan and Commerce claimants and/or patients; and (3) improperly and unlawfully soliciting, meeting and/or recruiting Metropolitan and Commerce patients and/or claimants to submit PIP, Medical Payment ("MedPay"), Bodily Injury ("BI"), Optional Bodily Injury ("OBI"), and Uninsured and/or Underinsured Motorist ("UM") claims through the legal representation of the Defendant, Law Offices of Jeffrey S. Glassman, LLC, based on the fraudulent chiropractic records and bills of the Medical Provider Defendants.

(Id. ¶ 5).

As indicated above, the allegedly unlawful solicitation, recruiting and referral activities were largely carried out by the Paralegal Defendants in their capacities as employees of GLO. (See id. ¶¶ 48-57).  Thus, the Plaintiffs claim that B. Soto and Asenjo met with individuals who had been injured in automobile accidents, and were eligible for benefits under insurance policies with the Carriers, in order to solicit business for GLO and establish an attorney-client relationship between GLO and the patients.  (Id. ¶¶ 49, 51-52, 54-55).  According to the Plaintiffs, the paralegals identified those patients by obtaining police reports of automobile accidents that had occurred in the Boston area, and contacting the individuals identified in the police reports.  (Id. ¶¶ 51, 198).  They also received the names and contact information of motor vehicle accident victims from sources employed at Boston Medical Center, Enterprise Rent-A-Car and Eagle Hill Auto Body.  (Id. ¶¶ 241-46, 253-56, 260, 267, 273, 276).  The Paralegal Defendants allegedly used that information to solicit and recruit new personal injury patients not only for GLO, but also for Logan and Savin Hill.  (Id. ¶¶ 244, 255, 269-70, 274).  The Plaintiffs claim that solicitations by representatives or agents of any attorney are prohibited under

Massachusetts statutory law, and that B. Soto's and Asenjo's conduct was therefore unlawful. (See id. ¶ 166).  They also claim that Glassman and GLO were aware of the improper solicitation and recruiting activities, and condoned the unlawful conduct by compensating the Paralegal Defendants for performing those activities.  (Id. ¶¶ 171, 199-200, 206-07).

The Plaintiffs claim that in addition to his work as a so-called "paralegal" for GLO, B. Soto was a manager and owner of Logan and Savin Hill, and he continued to maintain control of the clinics' business operations throughout his employment with GLO.  (See id. ¶¶ 59-60, 187). They also maintain that both B. Soto and Asenjo acted as a "primary referral source" between GLO and the chiropractic entities.  (Id. ¶¶ 169-70).  For example, they allege that B. Soto not only "recruits and solicits claimants and/or patients that treat at his clinics to be represented by Glassman and [GLO]," but also "recruits and solicits claimants and/or patients that are represented by Glassman and [GLO] to treat at his clinics."  (Id. ¶ 59).  Furthermore, the Plaintiffs allege that the Paralegal Defendants have met with potential claimants at the clinics in order to both solicit them on behalf of GLO and "facilitate the initiation of and continued chiropractic treatments at Savin Hill and/or Logan[.]"  (Id. ¶¶ 55-56).

According to the plaintiffs, B. Soto's role in the fraudulent scheme was not limited to his solicitation and referral activities.  Thus, they allege that B. Soto also "participate[d] in developing and implementing the fraudulent treatment practice and protocols administered to Metropolitan and Commerce claimants and/or patients at Logan . . . and Savin Hill."  (Id. ¶ 178). They further allege that B. Soto, as an owner of the clinics, "knowingly and willfully signed, certified, and/or submitted medical records and bills for false, unwarranted, unlicensed, predetermined and/or unnecessary and unreasonable chiropractic treatment . . . in order to

fraudulently obtain insurance benefits from the Plaintiffs." (Id. ¶ 6).  Therefore, the Plaintiffs allege that B. Soto was a key participant in various types of activities relating to the alleged insurance fraud.

In connection with their employment as paralegals at GLO, B. Soto and Asenjo allegedly provided patients with documents from Savin Hill and Logan before the patients had even presented at the clinics for an initial evaluation.  (Id. ¶¶ 218-20).  The documents included but were not limited to, Irrevocable Assignments of Benefits forms, Consent for Treatment forms, health insurance forms, patient questionnaires and medical/clinical records.  (Id. ¶ 220).  The Plaintiffs claim that the Paralegal Defendants completed or assisted the patients with the completion of these materials, which were subsequently used to process and prosecute fraudulent claims for insurance benefits from the Carriers.  (Id. ¶¶ 221-22).  They further claim that Glassman and GLO were aware of the Paralegal Defendants' possession of the forms and their use of the documents for purposes of carrying out insurance fraud.  (Id. ¶¶ 219, 222-23).

Although Attorney Glassman and GLO allegedly knew that bills and chiropractic records reflecting treatment at Logan and Savin Hill were false and misleading, they continued to seek insurance coverage from the Carriers on behalf of clients who had been evaluated and treated at the clinics.  (Id. ¶¶ 303-07, 310-12).  Specifically, the Plaintiffs allege that Attorney Glassman and GLO submitted claims for coverage to the Carriers, issued demand letters to the Carriers pursuant to Chapter 93A, and engaged in litigation against the Carriers on behalf of those clients.  (Id. ¶¶ 306, 310-12).  Thus, the Plaintiffs contend that Attorney Glassman and his firm repeatedly engaged in the prosecution of claims against the Carriers even though they knew that those claims were fraudulent.

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. ANALYSIS

### A.    Standard of Review

The defendants have moved to dismiss the Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for failure to comply with the requirements for pleading fraud under Fed. R. Civ. P. 9(b).  Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with such a motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  See Cooperman, 171 F.3d at 46.  Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Where, as here, "fraud lies at the core of the action[,]" the complaint must meet the heightened pleading requirements of Fed. R. Civ. 9(b).  Declude, Inc. v. Perry, 593 F. Supp. 2d 290, 297 (D. Mass. 2008).  "That rule mandates that in all averments of fraud or mistake, 'a party must state with particularity the circumstances constituting fraud or mistake.'"  First Choice Armor & Equip., Inc. v. Toyobo Am., Inc., 717 F. Supp. 2d 156, 161 (D. Mass. 2010) (quoting Fed. R. Civ. P. 9(b)).   In order to satisfy this requirement, "the complaint must, at a minimum, specify the 'time, place, and content of the alleged false or fraudulent representations.'"  Id. (quoting Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18-19 (1st Cir. 2002)).  "The other elements of fraud, such as intent and knowledge, may be averred in general

16

terms." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004).  However, the

complaint must "also identify[] the basis for inferring scienter."  N. Am. Catholic Educ.

Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009).  Accordingly, in order to

plead fraud under Rule 9(b), the complaint must set forth "specific facts that make it

reasonable to believe that defendant knew that a statement was materially false or

misleading."  Id. (quotations and citations omitted).

> **B.**     **Counts I-IV: Claims for Violations of RICO and RICO Conspiracy**

In Counts I through IV of their Second Amended Complaint, the Carriers have asserted

claims against all of the defendants for RICO violations pursuant to 18 U.S.C. § 1962(c), and

conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d).  The defendants argue that the

Plaintiffs have failed to plead the elements necessary to state a claim under RICO.  (See

Paralegal Def. Mem. (Docket No. 335) at 27-30; Moving Def. Mem. (Docket No. 338) at 10-13;

GLO Mem. (Docket No. 343) at 8-19).  Because this court's jurisdiction over the litigation is

based on the federal RICO claims (see Compl. ¶ 38), it is appropriate to address the defendants'

challenges to these claims before addressing the remaining arguments in support of their

motions to dismiss.

RICO "makes it 'unlawful for any person employed by or associated with any enterprise

engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt.'"  United States v. Ramirez-Rivera, 800 F.3d

1, 18 (1st Cir. 2015) (quoting 18 U.S.C. § 1962(c)).  In order to state a claim under Section

1962(c) of RICO, "a plaintiff must allege four elements: '(1) conduct; (2) of an enterprise; (3)

through a pattern; (4) of racketeering activity.'"  In re Pharm. Indus. Average Wholesale Price

Litig., 263 F. Supp. 2d 172, 181 (D. Mass. 2003) (quoting Libertad v. Welch, 53 F.3d 428, 441 (1st

Cir. 1995)).  To prove a RICO conspiracy claim under Section 1962(d), a plaintiff must meet "the

additional required element" of proving "that the defendant knowingly joined a conspiracy to

violate § 1962(c)."  Ramirez-Rivera, 800 F.3d at 18 (quoting United States v. Shifman, 124 F.3d

31, 35 (1st Cir. 1997)).  In this case, the defendants contend that the Carriers have failed to

state a claim under either section of RICO because they have failed to allege sufficient facts to

establish the existence of a RICO enterprise, the defendants' participation in the conduct of an

enterprise, or the continuity necessary to establish a pattern of racketeering activity.  (See GLO

Mem. at 8-18; Paralegal Def. Mem. at 27-29).  They further contend that the RICO claims must

be dismissed because the Carriers have failed to plead the predicate acts of racketeering with

particularity, as required by Rule 9(b).  (See GLO Mem. at 5-8; Paralegal Def. Mem. at 29).

Because the defendants' arguments concerning particularity implicate all of the

Plaintiffs' fraud claims and not merely the RICO claims, they will be addressed separately in

connection with this court's analysis as to whether the Plaintiffs' allegations meet the

requirements for pleading fraud under Rule 9(b).  With respect to the remaining challenges to

the Plaintiffs' RICO claims, this court finds that Counts I and III are foreclosed by the District

Judge's prior ruling regarding the nature and scope of a permissible RICO enterprise.  However,

this court concludes that the claims for violations of RICO and RICO conspiracy asserted in

Counts II and IV of the Second Amended Complaint should survive the motions to dismiss.

### 1.      Existence of a RICO Enterprise

The defendants first challenge whether the plaintiffs have sufficiently alleged the existence of an enterprise.  (See, e.g., GLO Mem. at 8-15; Moving Def. Mem. at 10-11).  "RICO defines an enterprise as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" Ramirez-Rivera, 800 F.3d at 18 (quoting 18 U.S.C. § 1961(4)).  Accordingly, a plaintiff may satisfy the "enterprise" element of a RICO claim "by alleging a legitimate enterprise that was victimized by a racketeering scheme."  In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d at 185.  Alternatively, a plaintiff may establish the existence of an enterprise by proving "that a group of individuals were associated-in-fact."  Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1557 (1st Cir. 1994).  The Carriers have alleged both types of enterprises in their Second Amended Complaint.

### Counts I and III

In Counts I and III, the Plaintiff rely on the "victim-enterprise" theory to support their claims under RICO.  Thus, the Plaintiffs allege that both Metropolitan and Commerce are "enterprises" as that term is defined in 18 U.S.C. § 1961(4) in that they are legitimate enterprises that were victimized by a racketeering scheme.  (Compl. ¶¶ 457-58, 512).  According to the Plaintiffs, the defendants' pattern of racketeering activity "consist[ed] of repeated violations of the federal mail and wire fraud statutes[.]"  (See id. ¶¶ 461-62, 514, 516).  The defendants argue that this theory was rejected by the District Judge in his June 15, 2016 Order where he ruled that the absence of any involvement by persons employed by the Carriers precluded the application of the "victim-enterprise" theory.  (See GLO Mem. at 8-10).

This court finds that no new facts have been pleaded, and the District Judge's prior ruling governs this issue.  Therefore, these claims cannot withstand the motions to dismiss.

In order to prevail on a so-called "victim-enterprise" theory, "plaintiffs must show not just the existence of a victim-enterprise, but that the defendants 'conduct[ed] or participat[ed], directly or indirectly, in the conduct of such enterprises['] affairs through a pattern of racketeering activity.'"  In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d at 185 (quoting 18 U.S.C. § 1962(c)) (first two alterations in original).  The Supreme Court has held that "'to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' [18 U.S.C.] § 1962(c), one must participate in the operation or management of the enterprise itself."  Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S. Ct. 1163, 1173, 122 L. Ed. 2d 525 (1993).  While "RICO liability is not limited to those with primary responsibility for the enterprise's affairs," or "to those with a formal position in the enterprise," the defendant must have "*some* part in directing the enterprise's affairs[.]"  Id. at 179, 113 S. Ct. at 1170 (emphasis in original).  Accordingly, an enterprise may be deemed to be operated or managed by outsiders "'associated with' the enterprise who exert control over it as, for example, by bribery."  Id. at 184, 113 S. Ct. at 1173.  The Supreme Court has cautioned, however, that "§ 1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  Id. at 185, 113 S. Ct. at 1173.

In this case, the District Judge rejected the Plaintiffs' prior attempt to allege RICO claims based on a victim-enterprise theory.  As the District Judge ruled in his June 15, 2016 Order:

> The contention that the Defendants participated in the conduct of the
> Plaintiffs as RICO enterprises draws from Aetna Cas. Sur. Co. v. P & B

Autobody, 43 F.3d 1546 (1st Cir. 1994).  The defendants in that case submitted fraudulent insurance claims to the plaintiff insurer for automobile repairs stemming from accidents that did not occur or from deliberate damage.  Id. at 1552.  Two of Aetna's own appraisers submitted false appraisals, aiding the defendants' fraudulent scheme.  Id. Addressing the issue of whether the defendants participated directly or indirectly in the plaintiff's affairs, the Court concluded that the defendants satisfied the "operation and management" test set forth in Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).  In Reves, the Supreme Court explained that to conduct an enterprise's affairs involves taking "some part in directing the enterprise's affairs."  Id.  Applying that standard, the First Circuit in P & B Autobody concluded that the defendants who had made fraudulent claims participated in Aetna's affairs by causing "Aetna employees having authority to do so to direct that other employees make payments Aetna otherwise would not have made."  P & B Autobody, 43 F.3d at 1559.  Importantly, a key fact in the Court's analysis was that Aetna's own appraisers approved the false claims.  Id. at 1560.

Here, there is no allegation that the Defendants were aided in their scheme by insiders or employees of the Plaintiffs.  That fact distinguishes the scenario at bar from that in P & B Autobody and renders the argument that the Plaintiff-insurers were RICO enterprises unpersuasive. The Plaintiffs are victims because they paid allegedly fraudulent claims, but that does not necessarily mean that the Defendants operated them as RICO enterprises.  In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d 172, 186 (D. Mass. 2003) (finding that employee health benefit plans were not RICO enterprises where plans overpaid for prescription drugs due to false inflation of average wholesale prices because there was "no allegation of infiltration of the third party payors, of cooperation by insiders, or of inducement of insiders, by bribery or any other covert means").  Although Liberty Mut. Ins. Co. v. Diamante, 138 F. Supp. 2d 47, 60-61 (D. Mass. 2001), followed P & B Autobody's lead and concluded that an insurance company was an enterprise where the defendants submitted false medical bills to the plaintiff-insurer, the Court twice noted that the question was a close one, id. at 61, and the decision preceded the [current] pleadings standards [for stating viable claims for relief].  The Court thus concludes that the Plaintiffs were not RICO enterprises.

(Order at 11-12).

The Second Amended Complaint contains no alleged facts that would render the District Judge's ruling inapplicable.  The Plaintiffs have not alleged that the defendants were assisted by insiders or employees of the Carriers.  (See Compl. at Counts I & III).  Nor have they alleged any "inducement of insiders, by bribery or any other covert means."  See In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d at 186.  Under such circumstances, the District Judge's ruling constitutes the law of the case.  See Ellis v. United States, 313 F.3d 636, 646 (1st Cir. 2002) (the law of the case doctrine "provides that unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation.  This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case" (internal quotations and citation omitted)).   Therefore, Counts I and III should be dismissed.

## Counts II and IV

The Plaintiffs' remaining RICO claims, which are set forth in Counts II and IV of the Second Amended Complaint, are premised upon the existence of an association-in-fact enterprise.  For example, in Count II of their Second Amended Complaint, the Plaintiffs allege that the defendants

> are a group of persons associated together for the common purpose of wrongfully obtaining insurance benefits through the Massachusetts statutory framework governing personal injury claims arising out of motor vehicle accidents, and thereby constitute an "association-in-fact enterprise," as that term is defined in 18 U.S.C. § 1961(4) (hereinafter referred to as the "association-in-fact enterprise"), that engages in activities which affect interstate commerce.

(Compl. ¶ 489).  Similarly, in Count IV, the Plaintiffs allege that the defendants, "as a continuous unit, knowingly agreed to participate, directly and/or indirectly, in the conduct and affairs of

22

the association-in-fact enterprise through a pattern of racketeering activity consisting of repeated violations of the federal mail and wire fraud statutes . . . . " (Id. ¶ 529).  The defendants contend that these claims must be dismissed because the Plaintiffs have failed to allege the existence of a RICO enterprise having a distinct and ascertainable structure apart from the predicate acts of racketeering activity.  (See Moving Def. Mem. at 10-11; GLO Mem. at 15-18).  This court disagrees for the reasons that follow.

"The Supreme Court has held on multiple occasions that [the] definition [of 'enterprise'] is to be interpreted broadly."  United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co., 719 F.3d 849, 853 (7th Cir. 2013) (and cases cited).  Moreover, the Supreme Court has clarified that "an 'association-in-fact enterprise need not have any structural features beyond 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'"  Id. (quoting Boyle v. United States, 556 U.S. 938, 946, 129 S. Ct. 2237, 2244, 173 L. Ed. 2d 1265 (2009)).  Such an enterprise "need not have a hierarchical structure or a 'chain of command'" and can make decisions on an "ad hoc basis[.]"  Boyle, 556 U.S. at 948, 129 S. Ct. at 2245.  Nor is there a requirement that members of the group have "fixed roles" or that the group "have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies."  Id.  Rather, in order to prove the existence of an association-in-fact enterprise, the plaintiff need only show "a continuing unit that functions with a common purpose."  Id.

In the instant case, the Plaintiffs have alleged sufficient facts to satisfy the requirements of Boyle.  As an initial matter, the Plaintiffs have alleged that the defendants acted for the

common purpose of fraudulently obtaining "monetary payments, through insurance claims, from Metropolitan and Commerce by submitting or facilitating the submission of fraudulent chiropractic records and bills, and submitting and prosecuting fraudulent claims for insurance benefits based on such records and bills."  (Compl. ¶ 528; see also Compl. ¶¶ 2, 163-64, 489). As detailed above, they have also delineated the specific roles of the defendants in the allegedly fraudulent scheme, and the nature of the relationships among the various groups of defendants.  In addition, the Plaintiffs have alleged extensive and detailed facts regarding the nature of the defendants' relationships, as "family members and business associates," which they allegedly used "to create, develop and implement a cohesive and comprehensive network of improper and illegal relationships in order to fraudulently obtain unwarranted insurance benefits" from the Carriers.  (Id. ¶ 164; see also id. ¶¶ 163, 165-300).

Nevertheless, the defendants argue that the Plaintiffs' allegations remain insufficient to meet the enterprise element of their RICO claims because their "allegations of an association-in-fact enterprise entail nothing more than the various defendants carrying out every day, usual business activities" and that the Plaintiffs have failed to allege "a distinct structure amongst all of the defendants separate and apart from each of their individual endeavors."  (Moving Def. Mem. at 10; see also GLO Mem. at 15 (arguing that "[t]here is no allegation of 'relationships' that formed a 'unit' beyond each alleged participant engaging in his, her or its respective professional and business activities")).  The relevant case law demonstrates that "RICO does not penalize parallel, uncoordinated fraud."  Walgreen Co., 719 F.3d at 855.  Therefore, allegations that "show different subsets of [a] group pursuing their own ends separately" rather than functioning "together as a coherent unit" fail to establish an association-in-fact enterprise.

Nelson v. Nelson, 833 F.3d 965, 968 (8th Cir. 2016).  However, this court finds that the Plaintiffs

have pled sufficient facts to support an inference that they were functioning as "a group of

persons associated together for a common purpose of engaging in a course of conduct."  Boyle,

556 U.S. at 946, 129 S. Ct. at 2244 (quoting United States v. Turkette, 452 U.S. 576, 583 101 S.

Ct. 2524, 69 L. Ed. 2d 246 (1981)).

    As an initial matter, the Plaintiffs have alleged connections among the various groups of

defendants that extende well beyond those of ordinary business associates.  For example, the

Plaintiffs allege that Attorney Glassman and GLO employed the Paralegal Defendants, B. Soto

and Asenjo, "under the fictitious title of paralegal[,]" in order to conceal the fact that those

defendants were employed by GLO for the purpose of facilitating "illegal and improper referrals

between Glassman, Glassman Law Office and Login Chiro, Savin Hill and other entities, for

financial gains."  (Compl. ¶ 171).  They also allege that B. Soto was an owner, chief operations

officer and/or general manager of Logan and Savin Hill, where he "actively participated in

developing and implementing the fraudulent treatment practice and protocols administered to

Metropolitan and Commerce claimants and/or patients."  (Id. ¶¶ 188-89).  Additionally, the

Plaintiffs claim that B. Soto is the half-brother of K. Ramos, the President, Director, Treasurer

and Secretary of Logan and Savin Hill, as well as the half-brother of T. Ramos, an office manager

and chiropractic assistant at the clinics, and the sole director and corporate officer of defendant

Metro Coach.  (Id. ¶¶ 172-73).  Finally, the Plaintiffs allege that B. Soto is related to M. Soto and

A. Ramos, both of whom were employed as chiropractic assistants and custodians of medical

records at Logan and Savin Hill.  (Id. ¶ 174).

The Plaintiffs have also alleged facts showing that the defendants engaged in a coordinated effort to carry out the alleged fraudulent billing scheme.  Thus, the Plaintiffs claim that during the relevant time period, B. Soto and Asenjo, acting on behalf of Attorney Glassman and GLO, solicited and recruited new personal injury claimants, including claimants who were insured under policies issued by Metropolitan and Commerce.  (See id. ¶¶ 197-01).  They then took steps to ensure that the claimants both received treatment at Logan and Savin Hill, and obtained legal representation from Attorney Glassman and GLO.  (See id. ¶¶ 203-04, 224-31, 238-39).  The Plaintiffs further claim that Metro Coach participated in the fraudulent scheme by transporting claimants to the clinics so they would not miss their appointments.  (Id. ¶ 107). Allegedly, while at Logan and Savin Hill, the claimants were subjected to a variety of fraudulent practices by the Chiropractor Defendants and the Chiropractic Assistants, including the reporting of false and exaggerated examination findings, the implementation of unwarranted and exaggerated chiropractic treatment based on a predetermined course of treatment, and the administration of treatment by unlicensed and unauthorized personnel.  (See id. ¶¶ 344-47, 349, 378-81).  The defendants then submitted the allegedly fraudulent treatment bills and records to the Carriers for payment, along with bills for treatment that had never even been provided.  (See id. ¶¶ 388, 391, 401, 403).  Finally, the Plaintiffs claim that Attorney Glassman and GLO knowingly used the fraudulent bills and records from the clinics to submit claims for coverage to the Carriers, and to prosecute claims against the Carriers, on behalf of various claimants.  (Id. ¶¶ 61-62).  These allegations are adequate to show that the defendants functioned as a continuing unit, and not merely as individual entities carrying out separate business activities.   See State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic

P.C., No. 4:14-CV-11521, 2015 WL 4724829, at *4 (E.D. Mich. August 10, 2015) (finding

plaintiffs' allegations sufficient to plead an association-in-fact enterprise where plaintiffs briefly

described each participant's role in a scheme to defraud an insurance company by arranging for

patients to receive a predetermined course of chiropractic treatment and submitting bills for

medically unnecessary services).  In sum, the Second Amended Complaint meets the purpose

and relationship features of an association-in-fact enterprise, as required by the Supreme Court

in Boyle.

        The final feature of an association-in-fact enterprise, longevity, is easily met by the

Plaintiffs' allegations as well.  The Plaintiffs claim that the defendants "collectively and

systematically engaged in a fraudulent scheme designed to wrongfully obtain monetary

payments, through insurance claims, from Metropolitan and Commerce" from January 2008

through the filing of the Second Amended Complaint on August 4, 2016.  (Compl. ¶ 1).  They

also maintain that the defendants have submitted hundreds of fraudulent bills throughout all or

nearly all of that time period, including bills reflecting false, exaggerated and/or misleading

evaluation findings, bills for treatment that was never rendered to the patient, bills for

unauthorized treatment by unlicensed providers, and bills for unwarranted and excessive

chiropractic procedures.  (See id. ¶¶ 343-48, 366-86, 394-411 & Ex. B thereto).   These

allegations are more than adequate to satisfy the longevity feature of an association-in-fact

enterprise.  See Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783, 794-95 (6th Cir. 2012)

(finding that complaint alleged "an organizational structure that satisfies the standard in Boyle"

where it "delineate[d] the specific roles and relationships of the Defendants, allege[d] the

enterprise functioned at least five years, and allege[d] it functioned for the common purpose of

promoting a fraudulent welfare benefit plan to generate commissions and related fees");

Warren Chiropractic & Rehab Clinic P.C., 2015 WL 4724829, at *4 (finding that plaintiff "has

sufficiently pled the level of structure required by the Supreme Court in *Boyle*" where plaintiff

alleged that "enterprise's purpose was to defraud Plaintiff and obtain unwarranted insurance

payments through the submission of false claims[,]" briefly described relationships among

defendants associated with the enterprise and their roles in the alleged enterprise, and alleged

that the scheme continued uninterrupted for approximately 10 years).

### 2.    Alleged Participation in the Conduct of the RICO Enterprise

As described above, RICO "makes it unlawful 'for any person employed by or associated

with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity . . . .'" Reves, 507 U.S. at 177, 113

S. Ct. at 1169 (quoting 18 U.S.C. § 1962(c)).  Therefore, in order to state a claim for violations of

§ 1962(c), "a plaintiff must set forth allegations to establish that the defendant[s] conducted or

participated, 'directly or indirectly, in the conduct of the RICO enterprise's affairs.'" Ouwinga,

694 F.3d at 791-92 (quoting 18 U.S.C. § 1962(c)) (punctuation omitted).  The defendants

contend that the Plaintiffs' RICO claims must fail because their alleged facts are inadequate to

satisfy this requirement.  (See Moving Def. Mem. at 10-12; GLO Mem. at 15-18).  Again this

court disagrees, and finds that the Plaintiffs' alleged facts are sufficient.

In Reves, the Supreme Court held that in order "'to conduct or participate, directly or

indirectly, in the conduct of [an] enterprise's affairs,' § 1962(c), one must participate in the

operation or management of the enterprise itself."  507 U.S. at 185, 113 S. Ct. at 1173.

However, this does not mean that RICO liability "is . . . limited to those with primary

28

responsibility for the enterprise's affairs" or "those with a formal position in the enterprise[.]"
Id. at 179, 113 S. Ct. at 1170.  "It suffices for this element that a defendant be 'plainly integral to
carrying out the enterprise's activities.'"  Ramirez-Rivera, 800 F.3d at 20 (quoting Shifman, 124
F.3d at 36.

　　　　In the instant case, the Plaintiffs have alleged facts showing how each of the defendants
was integral to carrying out the activities of the alleged enterprise.  Thus, the Plaintiffs allege
that the Paralegal Defendants solicited the Plaintiffs' claimants and referred them to Logan and
Savin Hill for the purpose of obtaining a fraudulent course of chiropractic treatment.  (See
Compl. ¶¶ 43-53).  They also allege that the Chiropractor Defendants and the Chiropractic
Assistants were responsible for carrying out the fraudulent treatment, and for preparing the
fraudulent bills and records for submission to the Carriers.  (See id. ¶¶ 333, 349, 370-73, 378-
79, 381, 383).  According to the Plaintiffs, defendants B. Soto, K. Ramos and T. Ramos
participated in signing, certifying and submitting the fraudulent paperwork to the Carriers for
payment.  (Id. ¶ 6).  They further allege that Metro Coach knowingly transported Metropolitan
and Commerce claimants to the clinics in order to receive a "pre-determined course of
chiropractic treatment[,]" and that Metro Coach was used "to ensure that Metropolitan and
Commerce claimants and/or patients attend[ed] their appointments, receive[d] alleged
treatment and generate[d] revenue for the Defendants."  (Id. ¶¶ 107-08).  Thus, the Plaintiffs
have alleged that these defendants played a fundamental role in facilitating and implementing
the unlawful scheme to obtain unwarranted insurance payments from the Carriers.  See
Warren Chiropractic Rehab Clinic P.C., 2015 WL 4724829, at *6-7 (finding that allegations were
sufficient to show that the defendants participated in the operation or management of an

enterprise where plaintiff described how one defendant "designed and implemented the fraudulent predetermined protocol;" a second defendant "implemented and carried out the protocol;" a third defendant constituted the facility "through which the fraudulent [insurance] claims were submitted" and the "business at which the [fraudulent] protocol was implemented[;]" and a fourth defendant ensured that patients continued to receive medically unnecessary treatment at the defendant facility by transporting patients to the facility).

With respect to Attorney Glassman and his law firm, GLO, the Plaintiffs allege that their conduct also was integral to the success of the alleged enterprise.  Thus, the Plaintiffs allege that those defendants intentionally employed B. Soto and Asenjo "under the fictitious title of paralegal a/k/a 'traveling paralegal[,]'" in order to disguise the fact that they were compensating the Paralegal Defendants for illegally referring Metropolitan and Commerce claimants to the clinics for a predetermined course of chiropractic treatment, and to GLO for legal representation.  (See Compl. ¶¶ 48-57).  As described above, the Paralegal Defendants were instrumental in recruiting patients for the clinics.  Therefore, it can reasonably be inferred that by employing the paralegals and supporting their allegedly illegal recruiting activities, Attorney Glassman and GLO played a significant role in perpetuating the alleged scheme.

The Plaintiffs also allege that Attorney Glassman and his firm "knowingly and willfully use[d] Savin Hill and Logan Chiro's fraudulent chiropractic records and bills" to submit claims to the Carriers for coverage, and to prosecute claims against Metropolitan and Commerce, on behalf of claimants who purported to have received treatment at the clinics.  (Id. ¶¶ 61-62). According to the Plaintiffs, Attorney Glassman and GLO were aware of the fraudulent treatment and billing practices that took place at the clinics, but maintained their practice of pursuing

coverage from the Carriers.  (See id. ¶¶ 5, 61-62, 303-11).  The Plaintiffs further claim that they

relied on the false medical and chiropractic records and bills "to make unwarranted insurance

benefits payments," and have incurred significant losses as a result.  (Id. ¶¶ 418-24).  Therefore,

the Plaintiffs have adequately explained how Attorney Glassman and GLO "made or carried out

decisions on behalf of the enterprise, and, thus, how [they] had some part in conducting and/or

participating in the enterprise's affairs."  Warren Chiropractic & Rehab Clinic P.C., 2015 WL

4724829, at *7.

### 3.   Continuity

The defendants' next challenge to the Carriers' RICO claims concerns the so-called

"continuity" requirement of the statute, which is related to the "pattern" element of a civil

RICO claim.  In order to state a RICO violation, the "plaintiff must allege a pattern of

racketeering activity involving at least two predicate acts, the second of which must occur

within 10 years of the first."  Ahmed v. Rosenblatt, 118 F.3d 886, 888 (1st Cir. 1997).  "Predicate

acts" for purposes of RICO "are acts indictable under any one or more of certain specified laws,

including the mail and wire fraud statutes."  Id. at 888-89.  Significantly, "a plaintiff seeking to

establish a RICO 'pattern' must show that the predicate acts are related *and* that they amount

to or pose the threat of continued criminal activity (the 'continuity' requirement)."  Id. at 889

(emphasis in original).  In this case, the defendants contend that the Second Amended

Complaint "lacks the continuity required to make a pattern."  (Paralegal Def. Mem. at 27).  To

the extent the defendants contend that continuity is lacking because the Plaintiffs have failed

to allege the predicate acts of racketeering with particularity, that argument will be addressed

below in connection with this court's analysis as to whether the Complaint complies with the

heightened pleading requirements of Rule 9(b).  To the extent the defendants argue that the

Plaintiffs have otherwise failed to plead continuity, this court disagrees and finds that the

alleged facts are more than adequate to meet this requirement.

In order to satisfy the continuity prong of the pattern requirement, "a plaintiff must

demonstrate that the related predicate acts 'amount to or pose a threat of continued criminal

activity.'"  Fleet Credit Corp. v. Sion, 893 F.2d 441, 446 (1st Cir. 1990) (quoting H.J. Inc. v. Nw.

Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 2900, 106 L. Ed. 2d 195 (1989)).  Thus, "[a] party

may establish continuity by demonstrating that the predicate acts amount to continued

criminal activity.  Alternatively, a party may establish continuity by demonstrating that the

predicate acts, though not continuous, threaten to become so."  Id. (emphasis in original).  This

court finds that the Second Amended Complaint alleges related predicate acts that amount to

continued criminal activity.

In their Second Amended Complaint, the Plaintiffs allege that the defendants engaged in

a pattern of racketeering activity "consisting of repeated violations of the federal mail and wire

fraud statutes[.]"  (Compl. ¶¶ 461-62, 529).  The Plaintiffs contend that throughout the time

period from January 2008 to August 4, 2016, the defendants "submitted false and/or fraudulent

chiropractic records, bills, letters, PIP Applications and/or fraudulent insurance claims for

payment to [the Carriers] through the use of and/or knowledge of the use of United States

mails and wires[,]" or aided and abetted their co-defendants in submitting such materials.  (Id.

¶¶ 481-84).  They further claim that throughout the course of the relevant time period, "all

Metropolitan and Commerce patients and/or claimants' chiropractic records, bills, claim letters,

PIP Applications, demand letters and packages and other legal documents were sent by the

Defendants to [the Carriers] through the use of United States mails and wires[,]" and that the

defendants engaged in "repeated violations of the federal mail and wire fraud statutes" by

using "the United States mails and wires to submit thousands of false and fraudulent medical

records, bills, and insurance claims on a continuous basis to Metropolitan and Commerce for

the improper and unlawful payment of insurance benefits."  (Id. ¶¶ 461-62, 478).  Moreover,

the Plaintiffs have presented charts, attached as Exhibits B and C to the Second Amended

Complaint, in which they have listed numerous insurance claims, as well as specific treatment

notes, reports, records and bills, that were submitted by the defendants to the Carriers, and

explained why they contend the information contained in those communications were

fraudulent.  (Id. at Exs. B & C).

"[A] plaintiff who alleges a high number of related predicate acts committed over a

substantial period of time establishes that those acts amount to continued criminal activity[.]"

Fleet Credit Corp., 893 F.2d at 446.  Here, the Carriers have alleged sufficient facts to satisfy this

criteria.  See id. at 447 (finding that 95 fraudulent mailings sent over a four and one-half year

period were sufficient to establish continuity for purposes of RICO).  Accordingly, their RICO

claims should not be dismissed on this basis.

### 4.    Conspiracy to Violate RICO

In Count IV, the Plaintiffs claim that "[t]he collective actions of all Defendants in

furtherance of a scheme to defraud Metropolitan and Commerce and collect an unlawful debt

through the use of the United States mails and wires constitutes a conspiracy to violate 18

U.S.C. § 1962(c), in violation of 18 US.C. § 1962(d)."  (Compl. ¶ 525).  In order to prove that a

defendant conspired to violate RICO, the plaintiff must establish:

33

> (1) the existence of an enterprise affecting interstate [or foreign] commerce, (2) that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise, (3) that the defendant participated in the conduct of the affairs of the enterprise, and (4) that the defendant did so through a pattern of racketeering activity by agreeing to commit, or in fact committing, two or more predicate offenses.

Ramirez-Rivera, 800 F.3d at 18 (quoting Shifman, 124 F.3d at 35).  GLO argues that the Plaintiffs have failed to state a conspiracy claim against it because they have not explained how GLO conducted the affairs of a RICO enterprise, and have not alleged facts showing "how or when the Law Firm. . . knowingly entered into any particular conspiracy."  (GLO Mem. at 18-19).  Additionally, the Moving Defendants argue that they cannot be held liable on this claim because the Plaintiffs have failed to plead the predicate acts of mail and wire fraud with particularity, and have failed to allege facts supporting "the knowing joinder and involvement of the Moving Defendants in a conspiracy to commit two predicate offenses."  (Moving Def. Mem. at 12-13).  The question whether the Second Amended Complaint meets the particularity requirements of Rule 9(b) will be addressed below.  Furthermore, as described above, the Plaintiffs have alleged sufficient facts to show that GLO was integral to carrying out the activities of a RICO enterprise, and thus "participated in the conduct of the enterprise's affairs."  See Ramirez-Rivera, 800 F.3d at 20.  With respect to the remaining arguments, this court finds that they do not support the dismissal of the RICO conspiracy claim asserted in Count IV of the Second Amended Complaint for the reasons that follow.

In order to show that a defendant "knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise[,]" the plaintiff need only "prove that the defendant agreed with one or more co-conspirators to participate in the conspiracy."  Shifman, 124 F.3d at

38 (quotations, citations and punctuation omitted). "[I]t is not necessary for the conspiratorial agreement to be express, so long as its existence can plausibly be inferred from words, actions, and the interdependence of activities and persons involved." P & B Autobody, 43 F.3d at 1562. This court finds that the allegations of the Second Amended Complaint are sufficient to support an inference that both GLO and the Moving Defendants agreed with one or more of their co-defendants to participate in a conspiracy to submit fraudulent insurance claims to the Carriers.

With respect to GLO, the Plaintiffs allege that the law firm employed the Paralegal Defendants for the purpose of facilitating unlawful and improper referrals between GLO and the clinics. (Compl. ¶ 171). They further allege that in the course of their employment as paralegals, B. Soto and Asenjo provided patients with documents from Savin Hill and Logan before the patients had even presented at the clinics for an initial evaluation. (Id. ¶¶ 218-20). The documents included but were not limited to, "Irrevocable Assignments of Benefits forms, Consent for Treatment forms, health insurance forms, and patient questionnaires[.]" (Id. ¶ 220). The Plaintiffs claim that B. Soto and Asenjo completed or assisted in the completion of these materials, which were subsequently used to process and prosecute fraudulent claims for insurance benefits from the Carriers. (Id. ¶¶ 221-22). They also claim that Attorney Glassman and GLO were aware that the Paralegal Defendants were using these documents for the purpose of carrying out insurance fraud because, during the relevant time period, GLO's clients provided sworn testimony, in the presence of attorneys from GLO, in which they described the paralegals' use of the documents.[3] (Id. ¶¶ 219, 222-23).

---

[3] In their Second Amended Complaint, the Plaintiffs have set forth specific instances in which Metropolitan and Commerce claimants described, in recorded statements or during examinations under oath, how the Paralegal Defendants met with them in order "to initiate representation by [GLO] by

According to the Plaintiffs, GLO's participation in the allegedly fraudulent scheme was not limited to its employment and support for the activities of the Paralegal Defendants. Specifically, the Plaintiffs allege that GLO represented the vast majority of the Metropolitan and Commerce claimants (amounting to hundreds of individuals) who had been evaluated and treated at Logan and Savin Hill as a result of motor vehicle accidents.  (Id. ¶¶ 282, 285).  In connection with their representation of those claimants, Attorney Glassman and his firm allegedly sought insurance coverage from the Carriers by submitting claims for coverage to the Carriers, issuing demand letters to the Carriers pursuant to Mass. Gen. Laws ch. 93A, and engaging in litigation against the Carriers.  (Id. ¶¶ 306, 310-12).  The Plaintiffs further claim that Attorney Glassman and GLO had actual knowledge, from their clients' testimony under oath, that the chiropractic bills and records from Logan and Savin Hill were fraudulent.  (Id. ¶¶ 306-07).  In particular, the Plaintiffs have submitted two charts, attached as Exhibits A and C to the Second Amended Complaint, describing instances in which GLO's clients provided testimony regarding the allegedly fraudulent treatment practices, including specific examples where its clients' sworn testimony was directly inconsistent with information contained in the clients' chiropractic bills and treatment records.[4]  (See id. at Ex. A & C).  This court finds that these

---

completing and filling out claim forms, including, but not limited to power of attorney forms ('POA'), medical record authorization forms, health insurance affidavits, and applications of PIP benefits (collectively 'claim forms'), and to initiate treatment at Logan or Savin Hill[.]"  (Compl. ¶¶ 238-39).

[4] In particular, Exhibit C contains numerous instances in which a client's testimony conflicted with bills and records generated at Logan and Savin Hill.  For example, Exhibit C shows that on December 5, 2012, a client of GLO testified, in the presence of an attorney from GLO, that he received treatment from "one male and one female chiropractor" at Logan.  However, Logan generated billing records indicating that he was treated by three different male providers, two female providers and one unidentified provider. (Compl. Ex. C at 3).  Similarly, on April 1, 2014, a client of the firm testified that no male chiropractors provided him with treatment at Savin Hill.  (Compl. Ex. C at 9).  However, the clinic generated treatment

allegations are adequate to support an inference, not only that GLO agreed to join a conspiracy to commit acts of mail and wire fraud, but also that it participated directly in the underlying acts of racketeering by continuing to pursue insurance coverage despite its clients' statements.[5]

GLO points out that in his June 15, 2016 Order, the District Judge determined that GLO's alleged support for the Paralegal Defendants' improper solicitation activities was insufficient to support a plausible inference that Attorney Glassman or GLO had knowledge of fraud.  (See Order at 18).  He also found that any such inference was undermined by the Plaintiffs' assertion that "the fraudulent scheme implemented by the Defendants was 'intentionally devoid of any readily recognizable fraudulent patterns in order [to] prevent detection in isolated claims.'" (Id.).  GLO argues that the Second Amended Complaint fails to remedy these deficiencies, and fails to allege any facts from which it could logically be inferred that "the Law Firm participated in fraudulent billing, as opposed to merely representing clients in billing disputes."  (GLO Mem. at 3; see also GLO Mem. at 2, 4).

---

notes and billing records indicating that the client received treatment from defendant Richard McGovern.  (Id. at 9).

[5] The Carriers also allege that Attorney Glassman and GLO "had actual knowledge that [their] clients' chiropractic records and bills from Logan Chiro and/or Savin Hill were fraudulent, by way of denial letters from Metropolitan and Commerce issued to Glassman, individually, and to other representatives and/or attorneys of [GLO]."  (Compl. ¶ 308). However, this court finds that these allegations are insufficient to establish the requisite knowledge on the part of these defendants.  As GLO argues in support of its motion to dismiss, at all relevant times the law firm was representing claimants in an adversarial setting, and had no obligation to accept the Carriers' statements as true.  (See GLO Mem. at 3-4).  Additionally, Attorney Glassman has submitted copies of five of the Carriers' denial letters in support of his motion to dismiss.  None of those letters characterize the chiropractic treatment received at Logan or Savin Hill as "fraudulent" or describe the medical records as containing "material misrepresentations."  (See Glassman Mem. at 3 & Exs. 1-5 thereto).  Furthermore, at least some of those letters authorized payment for certain types of chiropractic treatment.  (See id.).  Therefore, it does not appear plausible that the Carriers' denial letters would have put GLO on notice of the allegedly fraudulent treatment practices or would support an inference that GLO knowingly elected to enter into a RICO conspiracy.

This court concludes that when the more fulsome allegations of the Second Amended Complaint are accepted as true, and all reasonable inferences are drawn in the Plaintiffs' favor, they are adequate to show that GLO knowingly entered into the alleged RICO conspiracy.  The Plaintiffs' allegations regarding GLO's knowledge are not limited to the law firm's awareness of B. Soto's and Asenjo's solicitation activities.  As indicated above, the Plaintiffs have alleged that GLO represented hundreds of clients whose chiropractic bills and records reflected improper chiropractic evaluations and treatment, and whose testimony under oath suggested a consistent pattern of fraudulent treatment and billing practices at Logan and Savin Hill.[6]  They have also alleged that GLO continued to pursue coverage from the Carriers even after attorneys at the firm had become aware of their clients' sworn testimony.  (See Compl. ¶¶ 306-07, 309-10).  At this stage, this is enough to support a reasonable inference that GLO knowingly participated in the fraudulent billing practices.

This court recognizes that in their Second Amended Complaint, the Plaintiffs continue to allege that the fraudulent scheme remained "undetectable on an individual claim by claim basis as a result of the presumptions and mandates created by the Massachusetts statutory framework governing automobile personal injury claims."  (Id. ¶ 143).  While these allegations may raise a factual issue as to whether Attorney Glassman and GLO could have had actual knowledge of the fraudulent treatment practices at the clinics, this court concludes that they are not enough to defeat the Plaintiffs' RICO conspiracy claims against GLO at this juncture in

---

[6] Although the defendant makes much of the fact that the testimony from GLO's clients occurred in the context of an adversarial setting in which the Carriers were investigating the legitimacy of the insurance claims, there is no question that the statements were made by GLO's own clients.  (See GLO Reply Mem. (Docket No. 442) at 4-5).  GLO has not shown that it had any basis to question its clients' veracity.

the case.  Given the hundreds of claimants who were represented by GLO throughout the

relevant time period, the numerous inconsistencies alleged between the chiropractic bills and

treatment records and the testimony of GLO's own clients, GLO's alleged knowledge of and

support for the Paralegal Defendants' recruiting practices and preparation of fraudulent patient

in-take forms, and its alleged effort to disguise the true nature of B. Soto's work on behalf of

the firm by employing him "under the fictitious title of paralegal" (id. ¶ 188), it can reasonably

be inferred at this early stage of the litigation that GLO and its owner, Attorney Glassman, had

knowledge of the fraud and were willing participants in the allegedly unlawful billing scheme.

Accordingly, this court recommends that the defendant's motion to dismiss the Plaintiff's RICO

conspiracy claim against GLO be denied.

This court similarly finds that the Plaintiffs' allegations regarding the Moving

Defendants' knowledge of the unlawful billing scheme are adequate to support their claims

that those defendants knowingly agreed to participate in a RICO conspiracy.  As detailed above,

the Plaintiffs have alleged that defendants Logan and Savin Hill were responsible for

implementing the fraudulent treatment practices and for generating the associated paperwork,

including bills and records that were submitted to the Carriers by way of the United States mails

and wires.  They have also alleged that K. Ramos is one of Logan's owners, and has served as its

President, Director, Treasurer and Secretary since September 2007.  (Id. ¶¶ 68-69).  Allegedly,

in his capacity as an owner and officer of the clinic, K. Ramos "knowingly and willfully signed,

certified, and/or submitted medical bills and bills for false, unwarranted, unlicensed,

predetermined and/or unnecessary and unreasonable chiropractic treatment . . . in order to

fraudulently obtain insurance benefits from the Plaintiffs."  (Id. ¶ 6).  At this preliminary stage in

the proceedings, this court finds these allegations adequate to establish the clinics' and K. Ramos' knowing participation in the alleged RICO conspiracy.

With respect to T. Ramos, the Plaintiffs allege that he was the Office Manager, Billing Clerk, Custodian of Records and a chiropractic assistant at Logan and Savin Hill, that he personally rendered unlicensed treatment to patients at the clinics, and that he personally generated false and misleading chiropractic bills and records, which he then submitted to the Carriers for payment.  (Id. ¶¶ 26, 101, 374-81).  Moreover, the Plaintiffs allege that T. Ramos was the President, Director, Treasurer, Secretary and registered agent of Metro Coach during the relevant time period, and that Metro Coach derived most if not all of its revenue from the transportation of individuals to Logan and Savin Hill.  (Id. ¶¶ 104, 106).  According to the Plaintiffs, Metro Coach's transportation services were used for purposes of insuring that Metropolitan and Commerce claimants would keep their appointments at the clinics so they could receive a pre-determined course of chiropractic treatment and incur medical expenses in excess of the $2,000.00 tort threshold provided under Mass. Gen. Laws ch. 231, § 6D.  (See id. ¶¶ 104-12).  Accordingly, the Plaintiffs have alleged that T. Ramos and Metro Coach played an integral role in carrying out the unlawful scheme, and that they were willing participants in the alleged conspiracy to defraud Metropolitan and Commerce.  Therefore, this court recommends that the motions to dismiss the RICO conspiracy claim asserted in Count IV be denied.

### C.    Compliance with Fed. R. Civ. P. 9(b)

The defendants argue generally that the Plaintiffs' claims for fraud must be dismissed because they have failed to plead those claims with particularity, as required by Fed. R. Civ. P. 9(b) and the District Judge's June 15, 2016 Order.  (See, e.g., Chiropractor Def. Mem. (Docket

No. 331-1) at 3-11; Paralegal Def. Mem. at 4-7; Moving Def. Mem. at 4-8).   This court finds that the Second Amended Complaint is adequate to satisfy the applicable standard.  Therefore, this court recommends that the defendants' motions to dismiss the fraud claims on this basis be denied.

### Time Place and Content of the Alleged Misrepresentations

As indicated above, in order to meet the particularity requirements of Rule 9(b), a plaintiff "must specify the time, place, and content of an alleged false representation sufficiently to put [the opposing party] on notice and enable them to prepare meaningful responses."  Rick v. Profit Mgmt. Assocs., Inc., --- F. Supp. 3d ---, 2017 WL 971702, at *6 (D. Mass. Mar. 13, 2017) (quoting OrbusNeich Med. Co., Ltd. , BVI v. Boston Sci. Corp., 694 F. Supp. 2d 106, 118 (D. Mass. 2010)).  In his June 15, 2016 Order on the parties' then-pending motions, the District Judge suggested how the Carriers could comply with their obligation to plead fraud with particularity in this case.  Specifically, as the District Judge stated in relevant part:

> Because the Plaintiffs' fraud, RICO and conspiracy claims all rely upon allegations that the Defendants engaged in a fraudulent scheme to inflate medical bills submitted to Metropolitan and Commerce, they must plead with particularity specific individual bills which are fraudulent based on particular facts alleged, e.g., on a certain date a bill sought payment for spinal manipulations not performed as evidenced by the patient's assertion that she received no such treatment.  The bill or the underlying medical record supporting the bill can qualify as the material misrepresentation.

(Order at 6).  The District Judge further noted that

> Paragraph 312 of the Amended Complaint comes close to pleading with specificity that certain Defendants submitted bills to Metropolitan and Commerce premised on material misrepresentations.  That allegation contains a chart showing specific instances in which certain Chiropractor Defendants recorded administering chiropractic treatment to the Plaintiffs' claimants that allegedly, based on patient testimony, was not

41

rendered.  Savin Hill and Logan then used these records to bill
Metropolitan and Commerce.  These allegations contain the name of the
Chiropractor Defendant who recorded administering treatment that was
not rendered, the initials of the Metropolitan claimant, the claim
number, and the date of loss.  In some instances, these allegations also
contain the date of the purported treatment.  These alleged
misrepresentations identify who made the misrepresentations, what the
misrepresentations were, where the misrepresentations in recording and
billing were made, and when they occurred.  The critical missing
component, however, is specificity regarding the bills that resulted from
these misrepresentations.  The focus of the Plaintiffs' claims is their
overpayment in reliance on fraudulent chiropractic bills.  Their complaint,
therefore, must, at a minimum, identify with particularity the fraudulent
bills arising from the misrepresentations described in paragraph 312.

(Id. at 6-7 (citations omitted)).

In their Second Amended Complaint, the Plaintiffs have replaced paragraph 312 with

Exhibit C.  Therein, the Plaintiffs continue to allege specific instances in which certain of the

Chiropractor Defendants falsely recorded chiropractic treatment that was never actually

rendered.  (Compl. Ex. C).  However, Exhibit C does not specify the bills that were generated as

a result of the allegedly false representations.  (See id.).  Consequently, it is not sufficient to

remedy the problem identified by the District Judge in his earlier Order.

Nevertheless, the Second Amended Complaint also contains a chart, labeled as Exhibit B

to the Complaint, in which the Plaintiffs have listed specific amounts that were allegedly billed

to Metropolitan and Commerce throughout the relevant time period.  (Compl. Ex. B).  The chart

identifies the relevant claim number, along with the initials of the claimant.  (Id.).  It also lists

the date of loss giving rise to the claimant's need for treatment; the bill date and name of the

treatment clinic; the licensed chiropractors or other health care providers who allegedly

provided or authorized the treatment; the dates when the bills were received by the Carriers;

and the date range of the billing/treatment period.  (Id.).  The chart further identifies the

treatment modalities that were billed to the Carriers; the attorney/law firm that handled the

claims; the amount of each bill; and the basis for the Plaintiffs' contention that each of the bills

was fraudulent.  (Id.).  In particular, the Plaintiffs have indicated, with respect to each amount

billed, whether the billing reflected "false, exaggerated and/or misleading evaluation

findings/reports," "overutilization of chiropractic practice," "billing for treatment not

rendered," and/or "billing for unauthorized chiropractic practice."  (Id.).  As discussed *supra*,

the Plaintiffs have described each of these practices in the body of their Complaint, and have

discussed the defendants' respective roles in the allegedly fraudulent billing scheme.

Accordingly, they have specified the time, place, and content of the allegedly false

representations, and explained why the bills associated with specific claims and claimants

allegedly were fraudulent.[7]  This is enough "to place the defendants on notice and enable them

to prepare meaningful responses[.]"  Declude, Inc., 593 F. Supp. 2d at 294 (quoting New

England Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987)).  See also Allstate Ins. Co.

v. Lyons, 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012) (finding that charts identifying the entity that

submitted the claim, the associated claim number, and amounts paid by the insurer were

sufficient to satisfy the specificity requirement of Rule 9(b) in case involving alleged scheme to

defraud insurance company by submitting claims for allegedly unnecessary medical services);

Toyobo Am., Inc., 717 F. Supp. 2d at 161-62 (finding that complaint was "more than sufficient to

---

[7] It is "well settled" in the First Circuit "that RICO pleadings of mail and wire fraud must satisfy the
particularity requirements of Rule 9(b), and that under 9(b), a pleader must state the time, place and
content of the alleged mail and wire communications perpetrating that fraud."  Ahmed, 118 F.3d at 889
(internal citations omitted).  Here, the Plaintiffs have alleged that every insurance claim submitted by
the defendants to Metropolitan and Commerce, including all of the bills listed in Exhibit B, were
submitted using the United States mails.  (See Compl. ¶¶ 472, 478).  Therefore, this court finds that they
have alleged the predicate acts of racketeering with particularity, as required under Rule 9(b).

meet the heightened pleading standards of Rule 9(b)", for purposes of plaintiff's claim that defendants engaged in a pattern and practice of fraudulent misrepresentations concerning the quality, condition, safety and suitability of their product, where plaintiff alleged "at least 25 examples of intentional misrepresentations or fraudulent omissions" made by the defendants); Warren Chiropractic & Rehab Clinic P.C., 2015 WL 4724829, at *8 (noting that numerous courts have concluded that spreadsheets reflecting information such as the "claim number, dates of service, and dates of mailing, among other items[,]" were sufficient to satisfy Rule 9(b)).

The Chiropractor Defendants continue to insist that "[t]here are no specific allegations of fraud against specific chiropractors as to any specific dates of service, nor are there any specific explanations as to how any specific Chiropractic Defendant engaged in any fraud." (Chiropractor Def. Mem. at 8 (emphasis in original)).  This argument appears to ignore the significance of Exhibit B to the Complaint.   As described above, that document links specific chiropractors, including each of the Chiropractor Defendants, to specific claim numbers, patients, dates when bills were issued and the amounts billed to the Carriers.  It also indicates, among other things, the types of treatment provided, date ranges when the treatment was administered, and why the plaintiffs contend that the referenced bills were fraudulent.  At this stage, no more is needed to satisfy the particularity requirement of Rule 9(b).

**Pleading by Exemplar**

A number of the defendants argue that even if the Plaintiffs have complied with the heightened pleading standard for specific records and bills, they cannot rely on those allegations to support a fraud claim with respect to additional records and bills that have not been listed in their Second Amended Complaint.  (See Paralegal Def. Mem. at 20-26; Glassman

Mem. at 8).  Relying on the First Circuit's decision in United States ex rel. Karvelas v. Melrose-

Wakefield Hosp., 360 F.3d 220 (1st Cir. 2004), the defendants argue that "the First Circuit has

not adopted pleading fraud by exemplar nor endorsed a relaxed pleading requirement" under

Rule 9(b).  (Glassman Mem. at 8; see also Paralegal Def. Mem. at 20-21).  Thus, they contend

that the Plaintiffs cannot seek damages for any bills or records that have not been pled with

particularity in the Complaint.

It is true, as the defendants argue, that the Karvelas court refused to adopt a relaxed

This court finds that the defendants' description of the First Circuit's ruling in Karvelas is

inaccurate, and that the Plaintiffs are not required to plead details of every record or bill at

issue in this case.  In Karvelas, the First Circuit made it clear that a plaintiff is not required to

plead the particulars of each document at issue in order to plead fraud with particularity.  See

Karvelas, 360 F.3d at 230 n.11 (explaining that in order to satisfy Rule 9(b), plaintiff was only

"required to describe with particularity *some* of the documents containing false claims for

payment" (emphasis added)), abrogated on other grounds by Allison Engine Co., Inc. v. United

States ex rel. Sanders, 553 U.S. 662, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008).  Rather, in order

to satisfy Rule 9(b), the plaintiff is only required to plead information "for at least some of the

claims" at issue.  Id. at 233.  See also First Choice Armor & Equip., Inc., 717 F. Supp. 2d at 161

(finding that complaint was "more than sufficient to meet the heightened pleading standards of

Rule 9(b)" where plaintiff alleged "at least 25 examples of intentional misrepresentations or

fraudulent omissions made by [the defendant]").  As described above, the Second Amended

Complaint complies with this requirement.

It is true, as the defendants argue, that the Karvelas court refused to adopt a relaxed

Rule 9(b) standard.  See Karvelas, 360 F.3d at 228-31.  However, this does not mean that the

Plaintiffs are required to plead every allegedly fraudulent statement.  As the First Circuit explained in Karvelas, courts that have implemented a relaxation of Rule 9(b)'s particularity standard have allowed the plaintiff "to plead generally at the outset" and amend the complaint following discovery in order to add in details of the allegedly false or misleading statements.  Id. at 29. See also id. at 228, 230-31.  By refusing to adopt such an approach, the First Circuit meant that a plaintiff may not "present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery."  Id. at 231. That is not what the Plaintiffs are seeking to do in this case.

In any event, it is far from clear that the Plaintiffs are attempting to satisfy the requirements of Rule 9(b) by "pleading fraud by exemplar" as the defendants contend.  (See Glassman Mem. at 8; Paralegal Def. Mem. at 20-21).  As the Plaintiffs have explained in connection with their oppositions to the defendants' motions,

> once the Plaintiffs have identified at least one misrepresentation or fraudulent chiropractic record and bill, all of the additional chiropractic records and bills submitted in connection with that claim may also be considered fraudulent under Massachusetts law.  Moreover, the Plaintiffs' damages are not limited to their payment of fraudulent chiropractic bills submitted by the Defendants, as the Plaintiffs may also recover consequential damages, such as investigative costs, expenses and attorney's fees, as those damages represent a reasonably foreseeable outcome of the Defendants' fraudulent scheme.  See Spillane v. Corey, 323 Mass. 673, 676 (1949); Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1568-1570 (1st Cir. 1994).

(Pl. Opp. to Paralegal Def. (Docket No. 383) at 8).   Therefore, it appears that the Plaintiffs are intending to rely on a limited number of misrepresentations to establish that, as a matter of law, one fraudulent claim for coverage made under a specific insurance policy is enough to

invalidate all claims made under that policy.  (See id. at 13-14).  For this reason as well, the

defendants have not shown that the Plaintiffs' fraud allegations run afoul of Rule 9(b).

## Knowledge of Fraud

The Chiropractic Assistants, including William Hernandez, M. Soto, A. Ramos, T. Ramos,

April Stewart ("Stewart") and Karla Mendoza ("Mendoza"), contend that there are no

allegations establishing their knowledge of the alleged fraud.  As noted above, as long as the

complaint identifies the basis for inferring scienter, the elements of intent and knowledge may

be averred in general terms.  Wilder v. Toyota Fin. Servs. Americas. Corp., 764 F. Supp. 2d 249,

260 (D. Mass. 2011), and cases cited.  Here, the Plaintiffs allege that M. Soto, A. Ramos, T.

Ramos, Stewart and Mendoza knew that they were not qualified to administer therapeutic

procedures, which were billed under CPT Code 97110, because those procedures could only be

rendered by a physician, chiropractor or other qualified health care professional.  (See Compl.

¶¶ 367-68, 378-79, 409).  They further allege that those defendants administered therapeutic

procedures, under CPT Code 97110, to patients and claimants of Metropolitan and Commerce

despite knowing that they could not do so.  (Id. ¶¶ 380-81, 405).  Additionally, the Plaintiffs

claim that the Chiropractic Assistants "knowingly and willfully signed, certified, and/or

submitted medical records and bills [to the Carriers] for false, unwarranted, unlicensed,

predetermined and/or unnecessary and unreasonable chiropractic treatment rendered by

themselves or [others.]"  (Id. ¶ 6).  These allegations support an inference that they were

knowing participants in the alleged fraud, with direct responsibility for submitting false and

misleading statements to the Carriers for payment.

With respect to Hernandez, the Plaintiffs allege that he served as the President of Logan at times during the period from 2007 through 2009, and was subsequently employed as a customer service representative at a rental car agency during the time period from 2009 through April 2015.  (Id. ¶¶ 27, 253).  They further allege that during his employment as Logan's President, Hernandez took part in signing, certifying and submitting false and misleading records and bills to the Carriers, with knowledge of their falsity, for purposes of fraudulently obtaining insurance benefits.  (Id. ¶ 6).  After he became employed at the rental car agency, Hernandez allegedly funneled clients to GLO, Logan and Savin Hill.  (Id. ¶¶ 255-61).  As the District Judge previously determined, these allegations are sufficient to support a plausible inference that Hernandez had knowledge of the fraudulent scheme.  (Order at 14).  Therefore, the Chiropractic Assistants have not shown that the Carriers' claims of fraud against Hernandez should be dismissed.

Attorney Glassman and Metro Coach also argue that the Second Amended Complaint falls short of pleading their knowledge of the alleged fraud.  (See Glassman Mem. at 7-14; Moving Def. Mem. at 17).  However, as described above with respect to the Plaintiffs' RICO claims, this court finds that the Plaintiffs have plausibly alleged knowledge on the part of these defendants as well.  Therefore, they have not shown that the fraud claims against them should be dismissed on this basis.

Attorney Glassman takes exception with the accuracy of the Plaintiffs' allegations, and contends that the Plaintiffs have mischaracterized the client statements and denial of coverage letters, which the Plaintiffs contend establish his knowledge of the allegedly fraudulent claims.  (See Glassman Mem. at 8-13; Compl. ¶¶ 307-08).  He also challenges the Plaintiffs'

interpretation of some of the claimants' testimony.  (See Glassman Mem. at 10).  In support of

his positions, Attorney Glassman urges the court to review several of the underlying letters, as

well as excerpts from the testimony of GLO's clients, which are attached as exhibits to the

Paralegal Defendants' motion to dismiss.  (See Glassman Mem. at 8-13).  However, arguments

of this nature raise issues of fact that are not appropriate on a motion to dismiss, where the

court is obliged to accept the well-pleaded facts as true and draw all reasonable inferences in

the plaintiff's favor.  See Cooperman, 171 F.3d at 46.  Moreover, as detailed in this court's

contemporaneous rulings on the parties' motions to strike, some of the material on which

Attorney Glassman relies to make his argument is not appropriately considered at the motion

to dismiss stage at all.  Attorney Glassman's factual challenges do not warrant the dismissal of

the Plaintiffs' fraud claims.

     **D.**    **Sufficiency of Fraud Claims Under Rule 12(b)(6)**

The Paralegal Defendants argue that the Plaintiffs have not only failed to satisfy the

particularity requirements of Rule 9(b), but have also failed to allege sufficient facts to sustain a

plausible claim for fraud under Fed. R. Civ. P. 12(b)(6).  (Paralegal Def. Mem. at 7-20).  In

particular, the Paralegal Defendants contend that the Plaintiffs have not satisfied each of the

elements necessary to allege a claim for fraud.  (Id. at 7-19).  They also contend that some of

the claims are barred by the statute of limitations, and that the Plaintiffs have failed to plead

any complicity by Asenjo in the allegedly fraudulent scheme.  (Id. at 19-20, 27).  For the reasons

detailed below, this court finds that these arguments do not merit dismissal of the Second

Amended Complaint.

**Elements of a Fraud Claim**

"In Massachusetts, a claim for fraud requires the plaintiff to show 'that (1) the defendant made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act in reliance thereon, (4) the plaintiff relied upon the representation, and (5) the plaintiff acted to his detriment.'" Fiorillo v. Winiker, 85 F. Supp. 3d 565, 574 (D. Mass. 2015) (quoting Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71, 81 (D. Mass. 2004)).  Relying exclusively on Exhibit C to the Second Amended Complaint, the Paralegal Defendants argue that the majority of the claims that are set forth therein fail to satisfy these elements.  (Paralegal Def. Mem. at 8-14).  Exhibit C lists 44 claims for insurance coverage from the Carriers, including the date of the alleged loss and the initials of the patient.  (Compl. Ex. C). It also alleges specific instances in which the Chiropractor Defendants recorded chiropractic treatment that, according to the Plaintiffs, was never actually rendered.  (See id.).  As described above, Exhibit C is just one of a number of exhibits attached to the Second Amended Complaint.  While the Plaintiffs have indicated that they are relying on Exhibit C in order to support their claims of fraud, they argue that it must be read in conjunction with the 166 pages that make up the body of the Second Amended Complaint, as well as with the remaining exhibits attached thereto. This court finds that the Paralegal Defendants are reading the Complaint too narrowly, and that the alleged facts are sufficient to state a claim for fraud.

The Paralegal Defendants first argue that 7 of the 44 claims listed in Exhibit C "do not allege facts that would support that any misstatement was made at all." (Paralegal Def. Mem. at 8).  By way of illustration, the Paralegal Defendants contend as follows with respect to the seventh claim listed on Exhibit C:

> Claim 7 (CAPH95-WXVW59): Plaintiffs allege that an invoice for supervised therapeutic procedure or exercise was fraudulent because the patient testified that she performed unsupervised therapeutic exercise. Plaintiffs do not allege, however, that the patient did not also receive supervised therapeutic exercise, and patients routinely receive multiple types of treatment.  As a result, the facts alleged cannot be construed to allege a false statement.

(Id.).  This argument is insufficient to defeat the Plaintiffs' claim that the defendants made

misrepresentations in an attempt to obtain insurance coverage from the Carriers.  As an initial

matter, the Paralegal Defendants' argument presents questions of fact that are not appropriate

on a motion to dismiss.  Furthermore, their argument ignores the extensive allegations

contained in the Plaintiffs' Complaint.  In the body of the Second Amended Complaint, the

Plaintiffs have described in detail how the defendants participated in a fraudulent scheme

involving the submission of bills to the Carriers for chiropractic treatment that was

"unreasonable and unnecessary," "wrongfully and grossly exaggerated, not rendered in some

cases, rendered by unlicensed personnel, rendered to non-injured body areas, as well as for

magnified and fabricated symptoms and injuries[.]"  (See Compl. ¶¶ 3-4).  They have also

provided an extensive list of bills, set forth in Exhibit B, along with a description as to why the

amounts billed were based on misrepresentations.  (Compl. Ex. B).  Consequently, the Plaintiffs

have satisfied the first element of their claims for fraud.

Next, the Paralegal Defendants argue that even where the Plaintiffs have alleged a

misrepresentation, nearly all of the statements at issue are not material.  Under Massachusetts

law, "materiality" is "defined as whether 'a reasonable man would attach importance [to the

statement] in determining his choice of action in the transaction in question.'"  Zimmerman v.

Kent, 31 Mass. App. Ct. 72, 78, 575 N.E.2d 70, 74 (1991) (quoting Rogen v. Ilikon Corp., 361 F.2d

260, 266 (1st Cir. 1966)).  Here, the Paralegal Defendants contend, with respect to nearly all of

the claims listed in Exhibit C, that "the basis for the claim [of fraud] is that at an [examination

under oath], the patient recalled a different provider at particular encounters" than the ones

specified in the patient's medical record.  (Paralegal Def. Mem. at 9-11).  Thus, the Defendants

reason that because the misrepresentations concern only the misidentification of providers,

they cannot be deemed material as a matter of law.  (See id. at 11).

This argument too reflects a far too narrow view of the Plaintiffs' allegations because it

ignores the extensive allegations regarding the nature of the fraudulent scheme, as well as the

detailed list of bills set forth in Exhibit B.  A reasonable person viewing those allegations would

consider it important that the defendants were seeking coverage for treatment that was

unreasonable, unnecessary, exaggerated, not rendered in certain cases, rendered by unlicensed

personnel and the like.  See Massachusetts. v. Mylan Labs., 608 F. Supp. 2d 127, 156 (D. Mass.

2008) (finding defendants' false representations regarding prices of drugs to be material where

the plaintiff based its reimbursements on such prices).  Therefore, the Complaint is sufficient to

establish the materiality of the alleged misrepresentations.

The Paralegal Defendants also contend that the Plaintiffs have failed to allege a

plausible claim for fraud because they have failed to set forth facts showing that the

defendants intended to defraud them.  (See Paralegal Def. Mem. at 12).  This argument is based

solely on the first claim listed in Exhibit C, whereby the Plaintiffs allege that Logan fraudulently

billed Commerce for a spinal manipulation even though the patient's medical records indicated

that the patient received no such treatment.  (See id.; Compl. Ex. C).  The Paralegal Defendants

argue that this entry cannot support a claim for fraud because "there is no factual support

52

provided to establish that this error was intentional, rather than an inadvertent mistake."
(Paralegal Def. Mem. at 12).  Again, their argument is unpersuasive.

As an initial matter, relevant authority establishes that there is no need to allege an
intent to deceive on the part of the defendant in order to state a claim for fraud.  "Under
Massachusetts law, 'fraudulent intent may be shown by proof that a party knowingly made a
false statement and that the subject of that statement was susceptible of actual knowledge.
No further proof of actual intent to deceive is required.'"  Mylan Labs., 608 F. Supp. 2d at 156
(quoting Fisch v. Bd. of Registration in Med., 437 Mass. 128, 139, 769 N.E. 2d 1221, 1230
(2002)).  In connection with the first claim listed on Exhibit C, the Plaintiffs have alleged that
Logan billed Commerce for spinal manipulations under CPT code 98940 even though the
patient's records show that the patient received no such treatment.  (Compl. Ex. C; see also
Compl. Ex. B (describing CPT billing codes)).  Because the falsity of the bill would have been
susceptible to actual knowledge due to the availability of the underlying medical records, the
Plaintiffs' allegations are sufficient to meet the knowledge requirement of their fraud claim.
See Mylan Labs., 608 F. Supp. 2d at 156-57 (concluding that evidence was sufficient to support
a finding that the defendants knew their statements were false where "defendants made false
statements, and the subject of those statements was quite susceptible to knowledge by the
defendants").

The Paralegal Defendants' assertion that the Plaintiffs have failed to allege an intent to
defraud also ignores the remainder of the Second Amended Complaint.  The Plaintiffs have
listed numerous examples of bills that allegedly sought coverage not only for treatment that
was never rendered to patients, but also for false, exaggerated and/or misleading evaluation

findings and reports, overutilization of chiropractic practice, and unauthorized chiropractic treatment.  (See Compl. Ex. B).  Additionally, the Complaint provides detailed allegations regarding the Carriers' expert's review of hundreds of chiropractic records, notes and bills from Logan and Savin Hill, which describe the factual basis for the Plaintiffs' claims that the bills were false and misleading.  (See, e.g., id. ¶¶ 343-86, 394-400, 405-11).   In short, the Plaintiffs' allegations are more than adequate to support an inference that the submission of false bills to the Carriers was intentional and not a result of mistake.

Finally, in order to establish a claim for fraud, the plaintiff must show that it reasonably relied upon the defendant's representations as true, and that it sustained actual damages as a result of the defendant's misrepresentation.  Mylan Labs., 608 F. Supp. 2d at 157.  The Paralegal Defendants contend that the Plaintiffs cannot satisfy these elements of their fraud claims because they "did not actually pay any amount of the invoices submitted to them by the clinics[,]" and "did not suffer any damage at all for [the] instances of purported fraud[.]" (Paralegal Def. Mem. at 12-14).  This argument is at odds with the Plaintiffs' allegations.  The Plaintiffs allege that the defendants' misrepresentations caused them "to make unwarranted insurance benefits payments, resulting in significant pecuniary loss."  (Compl. ¶¶ 419, 438). They further allege that between January 2008 and August 4, 2016, Metropolitan paid Logan and Savin Hill over $270,500 in PIP benefits relating to 221 individual claims, and more than $291,000 in bodily injury and uninsured motorist benefits relating to 118 claims.  (Id. ¶¶ 420, 424 & Ex. D thereto).  During that same period, Commerce allegedly paid the clinics over $1,900,400 in PIP and/or MedPay benefits relating to 891 individual claims, and more than $1,186,400 in bodily injury and uninsured motorist benefits relating to 668 claims.  (Id. ¶¶ 439,

443 & Ex. D thereto).  According to the Plaintiffs, these payments were premised upon the

misrepresentations contained in the chiropractic and medical records, reports, notes and bills.

(See id. ¶¶ 417-24, 436-43).  Therefore, they have alleged all of the elements necessary to state

claims for fraud.

### Reliability of Allegations

The Paralegal Defendants' next contention is that "[e]ven where Plaintiffs technically

allege facts that would meet all of the elements of a claim of fraud, the facts alleged lack any

reliability to support a claim for fraud."  (Paralegal Def. Mem. at 14).  Specifically, the Paralegal

Defendants posit that the Plaintiffs' assertions of fraud are based on inconsistencies between

the patients' records and the testimony of those same patients during examinations under

oath.  They then attempt to show, based on excerpts from that testimony, that "the patient

statements are not reliable, and certainly not reliable enough to support claims of fraud."  (Id.).

However, these arguments are not appropriate on a motion to dismiss.   As described above

with respect to Attorney Glassman's effort to raise similar arguments, the defendants' attempts

to argue evidence is premature.  In any case, the excerpts of patient testimony on which the

Paralegal Defendants rely are not properly before the court and have been stricken from the

record.  Therefore, that evidence provides no support for the motion to dismiss.

### Statute of Limitations

In another effort to have at least some of the Plaintiffs' fraud-based claims dismissed,

the Paralegal Defendants argue that certain of those claims are time barred.  (Paralegal Def.

Mem. at 19-20).  As these Defendants reason:

55

The longest statutes of limitation at issue in this case are the four-year statutes of limitation for Plaintiffs' RICO and 93A claims. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987); M.G.L. c. 260, § 5A.[8] Metropolitan filed its Complaint against the Defendants on July 13, 2015, while Commerce filed its claims as part of the Second Amended Complaint, on August 4, 2016.  As a result, to be recoverable under any theory Plaintiffs set forth, any claim brought by Metropolitan must have accrued on or after July 13, 2011, and any claim brought by Commerce must have accrued on or after August 4, 2012.

(Id. (footnote added)).  They then argue that because five of the claims set forth in Exhibit C allege that fraudulent invoices and records were submitted to Commerce prior to August 4, 2012, they are barred by the statute of limitations.  (Id. at 20).

The Plaintiffs do not dispute that the longest limitations period applicable to their fraud-based claims is four years.  However, they contend that equitable tolling applies because they have pled that the fraud was undetectable.  (Pl. Opp. to Paralegal Def. at 9 n.2).  "With respect to their Massachusetts claims, the Commonwealth recognizes the doctrine of equitable tolling . . . if the plaintiff could not have procured the information necessary for filing a claim with 'due diligence.'"  Harry v. Countrywide Home Loans Inc., 219 F. Supp.3d 228, 236 (D. Mass. 2016) (quoting Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631, 682 N.E.2d 624 (1997)).  Consequently, "equitable tolling is applicable . . . where the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit."  Protective Life Inc. Co., 425 Mass. at 631, 682 N.E.2d at 635.  With respect to the Plaintiffs' RICO claims, the statute of limitations does not begin to run until "the plaintiff discovers or should

---

[8] In Agency Holding Corp. v. Malley-Duff & Assocs., Inc., the Supreme Court ruled that civil RICO actions are subject to a 4-year statute of limitations.  483 U.S. 143, 156, 107 S. Ct. 2759, 2767, 97 L. Ed. 2d 121 (1987).  Furthermore, Mass. Gen. Laws ch. 260, § 5A provides that "[a]ctions arising on account of violations of any law intended for the protection of consumers, including but not limited to ... chapter ninety-three A ... shall be commenced only within four years next after the cause of action accrues."

have discovered the injury." Id. at 234 (quoting In re Celexa & Lexapro Mktg. & Sales Practices Litig., 65 F. Supp.3d 283, 289 (D. Mass. 2014)). In their Second Amended Compaint, the Plaintiffs have alleged that while their "investigations of individual Savin Hill and Logan Chiro patients' claims revealed indications of the Defendants' fraudulent conduct, the breadth of the Defendants' entire fraudulent scheme, including their fraudulent treatment practices and billing protocols remained undetectable in the individual claims investigations." (Compl. ¶ 336). Therefore, the issue as to whether and when the Plaintiffs knew or should have discovered the alleged fraudulent billing practices must await further development of the record, and the question whether the applicable statutes of limitations bar some of the Carriers' fraud-based claims cannot be resolved on a motion to dismiss.

### Complicity of Asenjo in the Allegedly Fraudulent Billing Scheme

The District Judge determined, in his June 15, 2016 Order, that the Plaintiffs had failed to make out a fraud claim against Asenjo. (Order at 17). In particular, he noted that although the allegations demonstrated that the Paralegal Defendants had engaged in the improper solicitation of clients for GLO, they did not allege that Asenjo had sufficient ties with the clinics or their employees to support a plausible inference that he was complicit the allegedly fraudulent billing scheme. (See id. at 16-17). The Paralegal Defendants contend that the Plaintiffs' present claims against Asenjo should be dismissed because the Second Amended Complaint contains no additional facts establishing his involvement in the fraud. (Paralegal Def. Mem. at 27). Although the issue is a close one, this court recommends that their motion to dismiss Asenjo from the litigation be denied.

In their Second Amended Complaint, the Plaintiffs continue to allege that Asenjo was actively involved in the unlawful solicitation of clients for GLO, and that he and B. Soto were instrumental in facilitating improper referrals between GLO and the clinics.  (Compl. ¶¶ 45-57, 169-71, 191-93, 206-07).  However, they also claim that Asenjo completed and/or assisted with the completion of Logan and Savin Hill medical records, patient intake forms and other documents, on behalf of the Carriers' claimants, before those claimants had even presented to the clinics for an initial evaluation or treatment.  (Id. ¶¶ 221-22).  Allegedly, those forms included "claim forms," which consisted of, among other things, applications for PIP benefits.  (See id. ¶¶ 238-39).  These allegations are adequate to support an inference that Asenjo played a direct role in the creation of false claim forms, which were subsequently submitted to the Carriers for payment of insurance benefits, and was therefore complicit in the alleged scheme to defraud the Plaintiffs.  For all these reasons, the motions to dismiss the fraud claims should be denied.

       **E.**      **Count VI: Claim for True Conspiracy**

In Count VI of their Second Amended Complaint, the Plaintiffs have asserted a claim for true conspiracy against all of the named defendants.  The Moving Defendants contend that the Plaintiffs have not stated a plausible claim for relief under this theory, and that Count VI should be dismissed.  This court recommends that the motion to dismiss be denied with respect to this claim.

Under Massachusetts law, a "true conspiracy" "occurs when the conspirators, acting in unison, exercise a peculiar power of coercion over the plaintiff that they would not have had if they acted alone."  Metro. Prop. & Cas. Ins. Co. v. Boston Reg'l Physical Therapy, Inc., 550 F.

Supp. 2d 199, 202 (D. Mass. 2008) (quoting <u>Wajda v. R.J. Reynolds Tobacco Co.</u>, 103 F. Supp. 2d 29, 37 (D. Mass. 2000)) (internal quotations omitted).  "In order to state a claim of [this type of] civil conspiracy, plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently."  <u>P & B Autobody</u>, 43 F.3d at 1563 (quoting <u>Jurgens v. Abraham</u>, 616 F. Supp. 1381, 1386 (D. Mass. 1985)).  While this cause of action is "limited" and "rarely proven," a true conspiracy may be appropriate in the insurance context "where an insurer paid claims presented to it by the conspirators and the conspirators' joint agreement to deceive the insurer foiled the insurer's safeguards and triggered the insurer's obligation to pay the claims."  <u>Boston Reg'l Physical Therapy</u>, 550 F. Supp. 2d at 202.

In this case, the Plaintiffs allege that "[t]he unified actions of the Defendants resulted in a peculiar power of coercion" over the Carriers "because the Defendants were able to exploit the presumptions and mandates of the Massachusetts statutory framework governing personal injury automobile claims to defeat Metropolitan and Commerce's safeguards and defraud the Plaintiffs of insurance benefits."  (Compl. ¶ 555).  They also allege that the defendants were able to exercise a peculiar power of coercion over the Plaintiffs by their unified actions in, among other things, concealing their roles, relationships, positions and interests in the clinics and GLO; developing and implementing fraudulent treatment practices and billing protocols; and submitting claims to the Carriers that were based on false and misleading chiropractic records and bills.  (See <u>id.</u> ¶¶ 556, 562, 565; 573).  This court finds that these allegations are adequate to support the Plaintiffs' claim for true conspiracy.  See <u>P & B Autobody</u>, 43 F.3d at 1564 (finding that insurer stated a claim for true conspiracy where it alleged that "defendants

were collectively able to negate the safeguards that would have prevented any one group of defendants, acting alone from accomplishing [the] fraud").

The Moving Defendants argue that the Plaintiffs have failed to state a claim against them for true conspiracy because they have not shown that the Moving Defendants were "engaged in anything other than lawful business practices" such as "submitting claims pursuant to the legislatively enacted PIP statute[.]"  (Moving Def. Mem. at 16).  This argument is entirely at odds with the substance of the Second Amended Complaint, which describes an elaborate scheme to submit fraudulent claims for chiropractic care to the Carriers for payment. Therefore, it is not sufficient to defeat the Plaintiffs' claim.

Nevertheless, the Moving Defendants insist that the Plaintiffs cannot maintain their claim because they have not explained how the defendants could possibly defeat the fraud prevention systems of an international insurance corporation.  (Id. at 16-17).  In order to illustrate their point, the Moving Defendants cite to allegations in the Second Amended Complaint in which the Plaintiffs conceded that they not only performed investigations of questionable claims, but also denied coverage for certain of those claims.  (Id. at 16-17 (citing Compl. ¶ 586)).  However, this court finds that these arguments do not warrant the dismissal of the claims asserted in Count VI of the Second Amended Complaint.  While there is no dispute that the Plaintiffs conducted investigations of individual patients' claims and denied coverage for certain of those claims, the Plaintiffs allege that "the magnitude and [breadth] of the Defendants' entire fraudulent scheme . . . was undetectable on an individual claim by claim basis."  (Compl. ¶ 558).  They further allege that they were unable to uncover the alleged scheme until they had conducted an extensive investigation and were able to view the

60

cumulative evidence that had been amassed from that investigation.  (Id. ¶ 559).   Moreover,

the Plaintiffs claim that they lost millions of dollars as a result of the defendants' fraudulent

scheme.  (See id. ¶¶ 419-24, 438-43).   Accordingly, this court recommends that the motion to

dismiss Count VI be denied.

  **F.**  **Count VIII: Claim for Breach of Contract**

  In Count VIII, the Plaintiffs have brought a claim for breach of contract, pursuant to

Mass. Gen. Laws ch. 90, §§ 34A and 34M, against Logan, Savin Hill and the Chiropractor

Defendants.  The statute provides in relevant part that

> [i]n any case where [PIP] benefits due and payable remain unpaid for
> more than thirty days, any unpaid party shall be deemed a party to a
> contract with the insurer responsible for payment and shall therefore
> have a right to commence an action in contract for payment of amounts
> therein determined to be due in accordance with the provisions of this
> chapter.

Mass. Gen. Laws ch. 90, § 34M.  The Plaintiffs allege that the defendants became parties to a

statutory contract with the Carriers "for all fraudulent chiropractic bills the Plaintiffs did not pay

within thirty (30) days."  (Compl. ¶ 587).  They further allege that the defendants "breached the

implied covenants of good faith and fair dealing" implied in those contracts by submitting

fraudulent bills for benefits to the Carriers.  (Id. ¶¶ 591-92).  The clinics and the Chiropractor

Defendants have moved to dismiss Count VIII for failure to state a plausible claim for relief.

(Moving Def. Mem. at 13-14; Chiropractor Def. Mem. at 11-12).  This court recommends that

this claim be dismissed.

  Where "[t]he language of [a] statute is clear and unambiguous" it "must be given its

ordinary meaning."  McGovern Physical Therapy Assocs., LLC v. Metro. Prop. & Cas. Ins. Co., 802

F. Supp. 2d 306, 313 (D. Mass. 2011).  Pursuant to the unambiguous language of § 34M, unpaid

medical providers are granted a right to bring an action in contract against an insurer responsible for the payment of PIP benefits, but only where the benefits due have remained unpaid for over thirty days.  Significantly, however, nothing in the statute grants the insurer a right of action.  The Plaintiffs have cited no authority to suggest otherwise.

In any event, the Plaintiffs' interpretation of the statute makes no logical sense.  The Plaintiffs' claims in this action arise out of their payment of insurance benefits, which should not have been paid because they were based on fraudulent bills and records.   Nevertheless, in support of their claim for breach of contract, the Plaintiffs allege that "[t]he Defendants breached the implied covenants of good faith and fair dealing every time one of their fraudulent chiropractic bills was *not* paid within thirty (30) days."  (Compl. ¶ 591 (emphasis added)).  Not only is this allegation inconsistent with the Plaintiffs' theory of the case, but the Plaintiffs also have failed to explain how they were damaged by withholding benefits from the defendants.  Accordingly, this court recommends that Count VIII be dismissed.

### G.      Count IX: Intentional Interference with Contractual Relations

The Moving Defendants are also seeking the dismissal of the Plaintiffs' claim for intentional interference with contractual relations, which is asserted in Count IX of the Second Amended Complaint against all of the defendants.  In support of this claim, the Plaintiffs allege that under the terms of the standard Massachusetts Automobile Insurance Policy, the Carriers had contractual obligations to pay PIP benefits for chiropractic treatment that had been rendered to their claimants.  (Compl. ¶ 595).  They further allege that the defendants interfered with those contractual obligations by causing the Carriers' "performance under the applicable insurance policy contract to be more expensive and burdensome [than] it would be otherwise."

(Id. ¶¶ 596-97).  This court finds that the Plaintiffs' allegations fail to state a plausible claim for

relief.  Therefore, this court recommends that Count IX be dismissed.

"To state a claim for intentional interference with contractual relations, a party must

demonstrate that: (1) he had a contract with a third party; (2) the defendant knowingly induced

the third party to break the contract; (3) the interference, in addition to being intentional, was

improper in motive or means; and (4) plaintiff was harmed by the defendant's actions."  Am.

Paper Recycling Corp. v. IHC Corp., 707 F. Supp. 2d 114, 122 (D. Mass. 2010).  In this case,

however, the Plaintiffs have not alleged that the defendants induced any claimants to break

their contracts with Metropolitan and Commerce.  On the contrary, they claim that they

remained responsible for coverage under those policies, and that they suffered pecuniary

losses as a result.  (See Compl. ¶¶ 599-600).  Because the Plaintiffs have failed to allege an

element of their claim for intentional interference with contractual relations, this court

recommends that the claim be dismissed.

### H.  Count XII: Claim for Injunctive Relief

In Count XII, the Plaintiffs have asserted a claim against Logan, Savin Hill, Attorney

Glassman, GLO, Metro Coach and the Chiropractor Defendants for injunctive relief pursuant to

Chapter 93A, § 11.  The Chiropractor Defendants argue that this claim should be dismissed

because "the statute provides injunctive relief is available to the claimant 'if he has not suffered

any loss of money or property'.  Here, the Plaintiffs clearly assert claims for monetary loss."

(Chiropractor Def. Mem. at 12).  However, Section 11 provides in relevant part that

> Any person who engages in the conduct of any trade or
> commerce and who suffers any loss of money or property, real or
> personal, as a result of the use or employment by another person who
> engages in any trade or commerce of an unfair method of competition or

> an unfair or deceptive act or practice … may, as hereinafter provided, bring an action …, whether by way of original complaint, counterclaim, cross-claim or third-party action for damages *and such equitable relief, including an injunction, as the court deems to be necessary and proper*.

Mass. Gen. Laws ch. 93A, § 11 (emphasis added).  This court cannot determine, at this early stage in the proceedings, that there is no basis for a claim of injunctive relief.  Therefore, this court recommends that the motion to dismiss be denied with respect to Count XII.[9]

## IV. **CONCLUSION**

For all the reasons detailed herein, this court recommends that the defendants' motions to dismiss the Second Amended Complaint (Docket Nos. 331, 334, 336, 337, 339 and 342) be ALLOWED IN PART and DENIED IN PART.  Specifically, this court recommends that Counts I and III, the claims for breach of contract asserted in Count VIII and the claims for intentional interference with contractual relations asserted in Count IX all be dismissed, but that the defendants' motions otherwise be denied.[10]

---

[9] To the extent the Chiropractor Defendants contend that the Plaintiffs' claim for injunctive relief "is premised on the G.L. c. 93A claim that is not asserted … against the [Chiropractor] Defendants[,]" their argument is unpersuasive. (See Chiropractor Def. Mem. at 12).  Although Count XII is entitled "Injunctive Relief Pursuant to M.G.L. c. 93A, § 11," it alleges that the defendants engaged in unfair and deceptive business practices in violation of Chapter 93A.  (See Compl. ¶¶ 619-20).  Therefore, it is appropriate to construe Count XII as encompassing a claim for violation of Chapter 93A.

[10] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199

/ s / Judith Gail Dein
_____

Judith Gail Dein
United States Magistrate Judge

F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).