UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:15-CV-12939-LTS

| | | |
|---|---|---|
| METROPOLITAN PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, and | ) | |
| THE COMMERCE INSURANCE COMPANY, | ) | |
| | ) | |
|     Plaintiffs and Counterclaim-Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAVIN HILL FAMILY CHIROPRACTIC, INC., | ) | |
| LOGAN CHIROPRACTIC, INC., and, | ) | |
| LAW OFFICES OF JEFFREY S. GLASSMAN, LLC, | ) | |
| | ) | |
|     Defendants and Counterclaim-Plaintiffs, | ) | |
| | ) | |
| and | ) | **ORAL ARGUMENT** |
| | ) | **REQUESTED** |
| METRO COACH, INC., | ) | |
| JEFFREY S. GLASSMAN, ESQ., | ) | |
| BRANDY SOTO, HEGER ASENJO, | ) | |
| KENNETH RAMOS, TONY RAMOS, | ) | |
| WILLIAM HERNANDEZ, | ) | |
| RICHRAD MCGOVERN, D.C., | ) | |
| MARSELLA IMONTI, D.C., ALLISON ROBIN, D.C., | ) | |
| CHARLES RONCHETTI, D.C., TARA O'DESKY, D.C., | ) | |
| ARISMENDY RAMOS, MAXIMO SOTO, | ) | |
| APRIL STEWART, TANISHA RAMOS, and | ) | |
| KARLA MENDOZA, | ) | |
| | ) | |
|     Defendants. | ) | |

**OBJECTIONS OF THE LAW OFFICES OF JEFFREY S. GLASSMAN, LLC
AND JEFFREY S.  GLASSMAN, ESQ., TO THE MARCH 5, 2018 ORDER**

## Table of Contents

Table of Authorities ....................................................................................................... ii

Preliminary Statement ................................................................................................... 1

Background ...................................................................................................................... 3

Discussion ....................................................................................................................... 7

I.   Rule 72 Contemplates a Plenary Review by this Court to Determine Whether Any
     Remaining Portions of the Bank Subpoenas Are Contrary to Law and Whether Clear
     Error Underlies the Carriers' Position that, Because This is a Civil RICO Case Involving
     Business Dealings, They Can Explore All Bank Records That Belong to Defendants,
     Rather than Tailor the Subpoenas to Relevant Items ........................................................ 7

II.  The March 5, 2018 Order Poses Clear Error by Relaxing the Usual Legal Standards to
     Allow Unlimited Discovery of Bank Records Belonging to the GLO Parties Merely
     Because They Are Defendants in Civil RICO Claims Involving Business Dealings,
     Without Limiting the Facially Overbroad Subpoenas to Specifically Relevant Matters
     or Requiring an Evidentiary Showing that Specifically Supports Discovery of Each
     Broad Category of Demands ............................................................................................. 9

     A.   The Subpoenas Should Have Been Further Quashed to Address Facial
          Overbreadth and Irrelevance Concerning Accounts Belonging to Glassman ...... 18

     B.   The Subpoenas Should Have Been Further Quashed to Address Facial
          Overbreadth and Irrelevance Concerning Accounts Belonging to the GLO ........ 19

Conclusion ..................................................................................................................... 20

## Table of Authorities

**Cases**

*American Seeds, LLC v. Watson*, 2010 WL 3843002 (D.S.D. 2010) ........................................... 15

*Andra Group, LP v. JDA Software Group, Inc*., 312 F.R.D. 444 (N.D. Tex. 2015) ................... 17

*ASKM, LLC v. Fry*, 2009 WL 10692975 (D. Utah 2009) ............................................................. 15

*Botta v. Barnhart*, 475 F. Supp. 2d 174 (E.D.N.Y. 2007) ............................................................ 7

*Catskill Dev., L.L.C. v. Park Place Entrn't Corp.,* 206 F.R.D. 78 (S.D.N.Y. 2002) ...................... 7

*Church Mutual Insurance Company v. Phillip Marshall Coutu*, 2017 WL 4236318
    (D. Colo. 2017) ........................................................................................................................ 16

*Conopco, Inc. v. Wein*, 2007 WL 2119507 (S.D.N.Y. 2007) ................................................. 11, 12

*Constitution Bank v. Levine*, 151 F.R.D. 278 (E.D. Pa. 1993) ..................................................... 15

*Dernier v. Gilbert*, 2017 WL 420118 (D. Kan. 2017) .................................................................. 16

*Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372 (W.D.N.Y. 2006) ......................................... 15

*Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, 2014 WL 2048416 (D. Mass. 2014) . 9, 10

*Everflow Technology Corp. v. Millennium Electronics Inc*., 2008 WL 4962688
    (N.D. Cal.  2008) ...................................................................................................................... 15

*Giuliano v. Fulton*, 399 F.3d 381 (1st Cir. 2005) ....................................................................... 12

*Global Oil Tools, Inc. v. Barnhill*, 2012 WL 6021331 (E.D. La. 2012) ...................................... 17

*In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C*., 2016 WL 1071016
    (E.D. Va. 2016) .................................................................................................................. 15-16

*MedCity Rehabilitation Services, LLC v. State Farm Mut. Auto. Ins. Co*., 2013 WL 1898374
    (E.D. Mich. 2013) ............................................................................................................. 12, 13

*RES-AZ One, LLC v. McAdams*, 2017 WL 6001511 (D. Ariz. 2017) ......................................... 14

*State Farm Mutual Automobile Insurance Company v. Fayda*, 2015 WL 7871037
    (S.D.N.Y. 2015) ....................................................................................................................... 15

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 10572229 (E.D. Mich. 2013) .. 13

*State Farm Mutual Automobile Insurance Company v. Physiomatrix, Inc*., 2013 WL 10936871 (E.D. Mich. 2013) ..................................................................................................... 14

*State Farm Mutual Automobile Insurance Company v. Pointe Physical Therapy, LLC*, 255 F.Supp.3d 700 (E.D. Mich. 2017) ........................................................................... 15

*State Farm Mutual Automobile Insurance Company v. Warren Chiropractic & Rehab Clinic, P.C*., 315 F.R.D. 220 (E.D. Mich. 2016) ................................................................. 15

*Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962 (1st Cir. 1997) ....................................... 7

*Trustees of Boston Univ. v. Everlight Elecs. Co.*, 2015 WL 3407555 (D. Mass. 2015) ................. 7

*U.S. Tobacco Cooperative Inc. v. Big South Wholesale of Virginia, LLC*, 2016 WL 10542367 (E.D.N.C. 2016) ...................................................................................................... 15

## Other Authorities

28 U.S.C. § 36(b)(1)(A) ............................................................................................................ 8
Rules for U.S. Magistrates in the District of Massachusetts, 2(b) ................................................ 8

## Rules

Fed. R. Civ. P. 26 ........................................................................................................... passim
Fed. R. Civ. P. 45 ........................................................................................................... passim
Fed. R. Civ. P. 45(d)(3)(a)(iv) ................................................................................... 3, 19
Fed. R. Civ. P. 72 .............................................................................................................. 7, 9
Fed. R. Civ. P. 72(a) ............................................................................................................... 7

**Preliminary Statement**

The Law Offices of Jeffrey S. Glassman, LLC (the "GLO") and Jeffrey Glassman, Esq. ("Glassman") object to the March 5, 2018 Order, which allowed unlimited discovery spanning a 13-year period into all personal and professional bank accounts of the GLO and Glassman (the "GLO parties"). The March 5 Order focused on the GLO parties being named in a civil RICO matter without connecting the broad scope of records sought by the Subpoenas to the events at issue. Recognizing that all of the Subpoenas were at least somewhat facially overbroad, the March 5 Order correctly quashed portions of each of them to the extent they called for records from accounts of entities known as RainforestMaker and Aspen Lending, which were not named in the action. Though Glassman managed those entities (one a non-profit and the other a private real estate vehicle), Metropolitan Property and Casualty Insurance Company and The Commerce Insurance Company (the "Carriers") failed to connect those entities to the events at issue. The March 5 Order should have imposed a similar burden on the Carriers as they sought 13 years of bank records from personal and professional accounts of the GLO parties. Instead the March 5 Order inferred relevance from the existence of civil RICO allegations against the GLO parties.

In so doing, the March 5 Order allowed unlimited discovery into the GLO parties' personal and professional bank records without requiring an evidentiary showing of a sufficient connection between the pending claims and either Glassman's personal account(s) or the GLO's accounts. Recognizing the unusually broad nature of the Subpoenas, the Magistrate Judge promptly stayed compliance with them upon the filing of an emergency motion by the GLO parties. Even after issuing the March 5 Order, the Magistrate Judge granted another stay, to the extent the Order applied to the GLO parties, pending resolution of their Objections to it.

Based on the record before it, the March 5 Order should have reached the same

conclusion for the accounts of the GLO parties that it did for the accounts belonging to RainforestMaker and Aspen Lending. The Carriers made absolutely <u>no</u> showing of the use of Glassman's personal account(s) in the events at issue. With respect to the GLO, the Carriers pointed to two (legitimate) checks to clinic defendants that, as stated in the accompanying cover letter, paid off medical liens on behalf of clients, as is common practice. At the hearing on the emergency motion, the GLO parties stated they had no objection to discovery seeking bank records showing payments to and from other Defendants and entities possibly connected to them that appeared in the Subpoenas. The Carriers made no showing of relevance for more than that.

Rather than target their demands, the Carriers relied on a limited line of lower court cases from outside the First Circuit for an argument that they were inherently entitled to discovery of all bank records of civil RICO defendants. The March 5, 2018 Order relied on a few allegations in the Complaint and this limited line of cases when adopting the Carriers' position. In their motion papers and hearing, the Carriers argued what else "could," "might" or "possibly" may appear showing payments among Defendants and related entities in the bank records, which are classic words for a fishing expedition. The Carriers failed to show any effort to tailor the requests for records in the Subpoenas to avoid irrelevant items. As explained at the hearing, at most the Carriers should obtain, at least for now, records of payments among the Defendants and entities that the Carriers have named as possibly connected to them. Instead, the March 5 Order allows discovery into mostly irrelevant items involving clients who have <u>no</u> connection to the Carriers.

To be clear, the GLO parties are <u>not</u> seeking any ruling with prejudice. Should discovery entitle the Carriers to additional bank records, they could seek those items then by targeting requests to what they can specifically justify, rather than speculate about possibilities. For now, however, the GLO parties seek a ruling that their personal and professional accounts should not

2

be subject to open discovery merely because the Carriers finally got claims past the pleading stage. Contrary to the Carriers' position, as explained below, courts have shown skepticism about broad discovery in civil RICO cases having a business or professional context, and the interests of clients of the GLO parties (most having no connection to the Carriers) present more reasons for caution than existed in any case on which the Carriers or the March 5 Order relied.

Under Rules 26 and 45(d)(3)(A)(iv), the Subpoenas should either be quashed or at least modified with respect to professional and personal accounts of the GLO parties. The March 5 Order improperly allowed use of facially overbroad Rule 45 Subpoenas that require a production of irrelevant matters. In so doing, the March 5 Order adopted clearly erroneous positions of the Carriers based on improperly relaxed standards for discovery against civil RICO defendants.

## Background

On January 3, 2018, the Carriers served six broad Subpoenas on banks and financial institutions seeking all records related to 14 Defendants and entities possibly connected to them, spanning a period of 13 years, including from the GLO parties' operating, IOLTA and trust accounts holding funds of clients of the GLO. The Subpoenas sought records regardless of whether the pertinent clients had been insured by the Carriers,[1] whether they were treated at the defendant clinics, or whether they have any connection whatsoever to the pending claims. The categories of records demanded included documents and electronically stored information since January 1, 2005, relating to fourteen separate individuals and businesses, as follows:

> 1.      Any and all bank records, documents and ESI, between January 1, 2005 and the present, in any way relating [to] commercial, business, personal, IOLTA or trust accounts held by Glassman, Glassman Law Office, B. Soto, Savin Hill, Logan Chiro, Metro Coach, Aspen Lending, RainforestMaker, H. Asenjo, Hernandez, K. Ramos, T. Ramos,

---

[1] According to public records, combined the Carriers have approximately a 30% share of the auto insurance market. As a result, in automobile accident cases, collectively other carriers would appear more often than the Carriers would in cases handled by the GLO parties or others. Also, the Carriers cannot contest in good faith that automobile accident cases have been but a fraction of the GLO's practice.

Eagle Hill or Polish Beauty.

2.      Any and all bank records, documents and ESI, between January 1, 2005 and the present, in any way relating [to] commercial, business, personal, IOLTA or trust accounts to which Glassman, B. Soto, K. Ramos, T. Ramos, H. Asenjo or Hernandez are authorized signatories.

3.      Any and all bank records, documents and ESI, between January 1, 2005 and the present, in any way relating [to] commercial, business, personal, IOLTA or trust accounts (a) held by Glassman, Glassman Law Office, Soto, Savin Hill, Logan Chiro, Metro Coach, Aspen Lending, RainforestMaker, Asenjo, Hernandez, K. Ramos, T. Ramos, Eagle Hill or Polish Beauty, and/or (b) to which Glassman, B. Soto, K. Ramos, T. Ramos, H. Asenjo or Hernandez are authorized signatories, into which payments from Metropolitan and/or Commerce have been deposited.

Additionally, each of the demands included an additional request for a particular account number(s) that varied by bank, but did not limit the requests to just identified accounts, instead speculating about the existence and involvement of other unknown accounts.

Two days after learning about the Subpoenas, on January 5, 2018, the GLO parties promptly filed an emergency motion to quash [Docket No. 645] directed to the Subpoenas. In their opposition papers, the Carriers claimed that such broad subpoenas for financial records are inherently discoverable in civil RICO cases. The Carriers cited to a limited line of cases from outside this Circuit that superficially supported broad demands. The Carriers also submitted a limited amount of evidentiary material. None of their exhibits reflected any use of Glassman's personal bank account(s) in the pertinent events. With respect to the GLO parties' operating, IOLTA and trust accounts, the Carriers attached two (legitimate and justifiable) checks payable to the defendant clinics accompanying letters indicating the liens that they paid. As the Carriers know, such records exist with respect to virtually all healthcare providers involving all law firms that routinely negotiate lien reimbursements down in correlation with settled claims. At any rate, at the underlying hearing conducted on February 28, 2018, the GLO parties made clear there would be no objection to the production of records showing payments to and from other

4

Defendants and the entities possibly connected to them that had been named in the Subpoenas.

At the February 28, 2018 hearing, the Carriers repeated their position that civil RICO type cases inherently entitle plaintiffs to such broad discovery of financial records. The Carriers also repeated their position that what they sought to find were records of "who's paying who" among the Defendants and certain entities. Exh. 1, Tr. of 2/28/18 at 25:6-23. At the hearing, the Court adopted the Carriers' perspective about the scope of subpoenas in civil "RICO type cases" differing from how Rules 26 and 45 generally apply. Specifically, the Court stated: "And so when you say there's no controlling precedent, I have read a lot of cases and you're right I don't remember there was from Massachusetts about discovery in RICO type cases and every one that I read allowed discovery in similar circumstances to the case here, and I don't remember that you cited any cases that were particular in the RICO context." Exh. 1, Tr. of 2/28/18 at 5:7-13.

The GLO parties focused on the lack of a sufficient evidentiary showing of relevance by the Carriers and the facial overbreadth of the Subpoenas, explained the limited significance of the exhibits that had been submitted, and suggested that at most – at least on the present record – the Carriers would be entitled to records of payments among the Defendants and the entities identified as possibly connected to them (*i.e.*, Eagle Hill Autobody and Polish Beauty). The GLO parties also explained the prejudice to 13 years' worth of clients, whose names appear in memo lines on checks, which would allow the Carriers to learn of investments in pending insurance claims, settlement trends with other carriers, and confidential settlement amounts.

On March 5, 2018, the Magistrate Judge issued an Order [Docket No. 675] quashing the third-party Subpoenas to the extent that they sought bank records or other documents relating to accounts of two entities, RainforestMaker and Aspen Lending, with which Glassman was affiliated. The March 5 Order otherwise denied the motion to quash as to records of other

persons and entities, including the GLO parties. The March 5 Order correctly imposed a burden on the Carriers, which they could not meet, to show the relevance of bank records belonging to RainforestMaker and Aspen Lending. With respect to the GLO parties, however, the March 5 Order cited to a string of cases when applying a different standard to civil RICO defendants themselves. In so doing, the March 5 Order did not explain *why* Glassman's personal bank records were relevant and discoverable, let alone so broadly and without any evidentiary showing of their use in pertinent events. The March 5 Order paraphrased certain allegations in the Second Amended Complaint, which related to solicitation and recruitment of clients that this Court previously found insufficient to state a RICO claim. With respect to the GLO parties' professional accounts, including IOLTA and trust accounts, the March 5 Order did not address any evidentiary basis for such a broad scope or the impact on unrelated clients of the GLO. Also, the March 5 Order did not explain why the Carriers should receive records, at least for now, that go so far beyond what appears at issue. The March 5 Order erroneously adopted the Carriers' position that bank records of defendants in civil RICO cases that involve business dealings are inherently discoverable in such a broad manner even before other meaningful discovery.

Based on preliminary efforts at preparing responses to document requests that are not yet due, it appears the GLO's bank records would include in excess of 50,000 payment items alone over the proposed period set forth in the Subpoenas. Among those payment items, it appears that only a few hundred (fully justifiable and legitimate) payment records would reflect payments to and from other Defendants and the entities possibly connected to them that the Carriers have named. In other words, more than 99% of the requested items appear to be a fishing expedition. Even including claim payments to clients of the GLO parties, likely less than 5% of the payment items sought by the Subpoenas would relate to insurance claims at issue in this case.

As framed with respect to the GLO parties, the Subpoenas amount to a classic fishing expedition. The Subpoenas should either be further quashed or modified to limit records of the GLO parties to those showing payments to or from other Defendants and the entities that have been identified as possibly connected to them. Such a ruling would not have to be with prejudice, but the Carriers should have to make a real showing to justify such a vast exploration into 13 years' worth of financial records of a lawyer and law firm through facially overbroad Subpoenas.

## Discussion

I.     **Rule 72 Contemplates a Plenary Review by this Court to Determine Whether Any Remaining Portions of the Bank Subpoenas Are Contrary to Law and Whether Clear Error Underlies the Carriers' Position that, Because This is a Civil RICO Case Involving Business Dealings, They Can Explore All Bank Records That Belong to Defendants, Rather than Tailor the Subpoenas to Relevant Items.**

This appeal of the March 5 Order is governed by Rule 72(a), which provides that "[t]he district judge ... must ... modify or set aside any part of the [Magistrate Judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "Under the 'contrary to law' standard, the district court's review is plenary." *Trustees of Boston Univ. v. Everlight Elecs. Co.*, Civ. 12-11935-PBS,  2015 WL 3407555, at *2 (D. Mass. May 27, 2015). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) citing *Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 206 F.R.D. 78, 86 (S.D.N.Y. 2002). Discovery rulings, as non-dispositive matters, are subject to such review. *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997), citing 28 U.S.C. § 636(b)(1)(A); *see also*, Rule 2(b), Rules for U.S. Magistrates in the U.S. District Court for the District of Massachusetts.

The GLO parties expect broad discovery in this matter, but this appeal involves an unprecedented exploration without limitation into a lawyer and law firm's bank records over an

excessive 13-year period, including operating, IOLTA and trust fund accounts for mostly

irrelevant clients, and corresponding access to 13 years' worth of its principal's financial history

without a showing that such accounts were used in pertinent transactions or events. As described

further below, the March 5 Order relaxed the Carriers' burden too much and disregarded the facial

overbreadth of the Subpoenas in light of the limited evidentiary record on which the Carriers

relied to support them. Instead, the March 5 Order relied expressly on several allegations that did

not relate at all to bank accounts at issue and erroneously found it legally sufficient that some

relevant materials may exist, without imposing on the Carriers any burden either to tailor the

Subpoenas or justify them with an evidentiary showing specifically supporting their broad scope.

Contrary to the Carriers' position that civil RICO cases offer a relaxed burden for them,

Rules 26 and 45 apply the same standards to this case as in non-RICO cases. While perhaps after

other discovery the Carriers will be able to show a basis for broader discovery of bank records, at

this stage, the Carriers have shown nothing more than an expectation of (legitimate and

justifiable) payments among certain permutations of the Defendants and the entities that the

Carriers have identified as possibly connected to them. The Carriers cannot meet their burden,

however, by speculating about what might be found within otherwise irrelevant records.

Hence, the Subpoenas should either be further quashed or modified by tailoring their reach

to only expectably relevant records. As described in more detail below, with respect to Glassman

himself, the March 5 Order does not adequately consider the utter lack of basis for suggesting he

used his personal account in connection with events at issue. With respect to the law firm, the

March 5 Order also does not adequately address the facial overbreadth, as well as the intrusion

and impact on wholly irrelevant clients and the law firm itself on wholly irrelevant transactions.

Under Rule 72, this Court's plenary review of the Subpoenas should result in them being quashed

8

with respect to the GLO parties or limited to the payments the GLO parties made to other Defendants and the named entities possibly connected to them.

## II.     The March 5, 2018 Order Poses Clear Error by Relaxing the Usual Legal Standards to Allow Unlimited Discovery of Bank Records Belonging to the GLO Parties Merely Because They Are Defendants in Civil RICO Claims Involving Business Dealings, Without Limiting the Facially Overbroad Subpoenas to Specifically Relevant Matters or Requiring an Evidentiary Showing that Specifically Supports Discovery of Each Broad Category of Demands.

It is axiomatic that the usual standards under Rules 26 and 45 do not generally permit plaintiffs to commence discovery with far-reaching subpoenas on banks to explore tens of thousands of irrelevant transactions with a hope of finding some relevant evidence. In civil cases, subpoenas for bank records are usually targeted to reach demonstrably expectable evidence. Otherwise, applying the same logic that underlies the Carriers' position, the mere presence of some emails on a network server could entitle them to obtain the entire network of files.

The usual standards applied to Rule 45 subpoenas for bank records can be found in *Enargy Power (Shenzhen) Co. v. Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 2048416 (D. Mass. May 16, 2014) (Boal, M.J.), which was discussed at the February 28 hearing. In *Enargy Power*, the Magistrate Judge addressed a motion to quash three subpoenas served on Bank of America, two of which sought personal banking records of parties to the case and a third which sought business banking records of an entity apparently formed and managed by a party. There, the Magistrate Judge struck in their entirety as overbroad two of the subpoenas while limiting the scope of the third subpoena seeking personal banking records. *Id.* at *3-4. In a context of complex intentional business torts, the Magistrate Judge described the legal standards for proper Rule 45 discovery as follows:

> A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party

seeking discovery has had ample opportunity by discovery in the action to obtain
the information sought; or (3) the burden or expense of the proposed discovery
outweighs its likely benefit, taking into account the needs of the case, the amount in
controversy, the parties' resources, the importance of the issues at stake in the
litigation, and the importance of the projected discovery in resolving the
issues. *See* Fed.R.Civ.P. 26(b) (2)(C).

A Rule 45 subpoena must fall within the scope of proper discovery under
Fed.R.Civ.P. 26(b)(1). …Thus, the information sought must be: (1) not privileged;
(2) relevant to the claim or defense of any party; and (3) either admissible or
reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P.
26(b)(1). **The party issuing the subpoena has the burden of establishing that
the requested information is relevant to its claims or defenses**.

*Id.* at *2 (emphasis added). Under these standards, non-party subpoenas are routinely

quashed or modified *to target relevant* material and *avoid irrelevant* material. *E.g.*, *id.*

Here, the Carriers argued in their opposition and at the hearing below that broad

subpoenas for bank records are inherently allowed in civil RICO cases because of the complex

financial issues that can be involved. The Carriers cited to a few lower court cases from outside

the First Circuit (discussed further herein in more detail) to portray this dichotomy. At the

hearing, when focused on the Carriers' theory of automatically broad bank record discovery in

civil RICO cases, the Magistrate Judge remarked to defense counsel:

THE COURT: Right. And so when you say there's no controlling precedent, I have
read a lot of cases and you're right I don't remember there was [case law] from
Massachusetts about discovery in RICO type cases and every one that I read
allowed discovery in similar circumstances to the case here, and I don't remember
that you cited any cases that were particular in the RICO context.

Tr. of 2/28/18 Hearing (attached hereto as Exhibit 1) at 5:7-13.

The March 5 Order described the basic RICO allegations against the GLO parties and

cited to four civil RICO opinions by trial courts outside the First Circuit that allowed financial

document discovery in the posture of those cases. The March 5 Order did not analyze the scope

of evidence that the Carriers submitted or omitted. Indeed, the Carriers failed to identify any

10

evidence or allegations that Glassman used his personal bank account(s) for any transaction at issue. Also, the Carriers failed to make a showing that they expected to find relevant evidence from the GLO's account besides payments to clinics to satisfy medical liens. Nevertheless, based on a few allegations about the GLO parties' solicitation of clients and a few lower court cases that allowed financial record discovery in RICO cases, the March 5 Order denied the motion to quash as it related to accounts belonging to the GLO parties.

None of the four RICO cases cited in the March 5 Order remotely justifies a view that the legal standards governing discovery in civil RICO cases are any different than the standards governing discovery in other civil matters. The cases relied upon by the Carriers and found in the March 5 Order are either easily distinguishable, unpersuasive or both:

First, the earliest of the decisions relied upon in the March 5 Order, *Conopco, Inc. v. Wein*, 05-CIV-9899, 2007 WL 2119507 (S.D.N.Y. July 23, 2007), is inapposite. The claims in *Conopco* focused on an individual's use of multiple entities as shells to perpetrate frauds. The evidentiary record in *Conopco* to support the subpoena was specific and substantial with regard to the accounts and records sought. For example, in *Conopco*, the defendant's personal and business accountant had testified that the defendant's "personal accounts were the source of the initial funds used" with others who "Plaintiff contends were defrauded," that the defendant "would transfer money to one of the corporate accounts," then "the money from the sale would go into a different corporate account than the account out of which the purchase money came, and would then be transferred back to [the defendant's] personal account." *Id.* at *2. Also, the record there included "documentary evidence of transfers" that specifically related to transactions at issue and the key theory that the defendant used multiple entities as shells to perpetrate or conceal fraud. *Id.* Also, *Conopco* involved an "open-ended" theory of a pattern of

11

racketeering activity, meaning that fraud was the ordinary way of doing business, rather than just a "closed-ended" theory. *See Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005) ("closed-ended" pattern is established by showing "a series of related predicates extending over a substantial period of time" while an "open-ended" pattern involves the "regular way of doing business"). The Complaint from the *Conopco* case (attached as Exhibit 2) clearly focused on an "open-ended" pattern. *See* Exh. 2, ¶¶ 3, 58 (as its very form of business, defendants used corporate shells to obtain products at discounts from plaintiffs and others under false pretenses that they would be distributed to "thousands of private schools," but then diverted them for sale, while further alleging "[t]hese acts establish that the Enterprise's racketeering activities constitute their ordinary method of doing business"). Here, as alleged, the Carriers would be engaged in a fishing expedition to try to undermine the GLO's wide-ranging legitimate law practice, which involves practice areas and many clients far beyond the automobile accident cases with which the Carriers have involvement. The *Conopco* decision was fact-dependent, and does not support an expansion of discovery into automatic access to all bank records of civil RICO defendants without a specific evidentiary showing of relevance.

Second, the decision relied upon from *MedCity Rehabilitation Services, LLC v. State Farm Mut. Auto. Ins. Co.*, 11-CV-14777, 2013 WL 1898374 (E.D. Mich. May 7, 2013) undermines, rather than supports, the argument that burdens should be relaxed to justify discovery in civil RICO cases. Unlike in the March 5 Order, the trial court in *MedCity Rehabilitation* specifically tested subpoenas for overbreadth and refused to compel the production of personal financial accounts. *Id.* at *7 ("to the extent the subpoenas seek financial information regarding Collins's and Dr. Teklehaimanot's personal bank accounts, such a request is overly broad. Therefore, the Court quashes this aspect of the bank subpoenas"). While one of

12

the parties in the *MedCity Rehabilitation* case was identified as an attorney, as well as an owner

of medical providers, a review of the subpoenas at issue (attached as Exhibit 3) in the *MedCity*

*Rehabilitation* case makes clear that they did not reach law firm accounts. Here, the Carriers seek

to reach IOLTA, trust and operating accounts of the GLO regardless of whether transactions

involved pertinent clients or whether compliance would provide them with a fishing expedition

into tens of thousands of irrelevant transactions. The trial court in the *MedCity Rehabilitation*

case did not address any issues about the disclosure of materials from law firm accounts (such as

IOLTA and trust accounts) that here would harass, embarrass, annoy and oppress the GLO

parties *and their clients.* The information requested here would reveal identities of clients having

nothing to do with the Carriers, confidential settlement payments with non-party carriers and

others, investments in pending cases for both pertinent and unrelated clients, wage information

pertaining to non-party employees, and even payments of lawyers and non-testifying experts in

the present case. Far from supporting unlimited financial discovery in RICO cases, the *MedCity*

*Rehabilitation* decision quashed certain subpoenas and was fact-dependent about others.

Third, the March 5 Order cites to the decision in *State Farm Mut. Auto. Ins. Co. v.*

*Physiomatrix, Inc.*, 12-CV-11500, 2013 WL 10572229 (E.D. Mich. Aug. 3, 2013), which also

fails to support the use of relaxed standards in civil RICO cases for obtaining unlimited bank

records related to defendants. To the contrary, in later proceedings in the very same *Physiomatrix*

case, the Eastern District of Michigan (where *MedCity Rehabilitation*, *supra*, was also decided)

suggested exactly the opposite, namely that civil RICO cases in a business context warrant

caution rather than flexibility when considering broad discovery from lawyers:

> ... ***RICO is not a borderless statute that allows a civil litigant unfettered discovery
> simply because it charges a broad and complicated "conspiracy" that may
> include individuals not party to the suit.*** There must be some outer limit to
> discovery in a civil RICO action, especially as it relates to third parties, to prevent

unnecessary burden and potential harassment to those against whom no claim is alleged and whose information is not necessary to resolving the claims and defenses in the case. ***Indeed, "[t]he need to reasonably limit the scope of discovery is acute for claims brought under the RICO statute.*** The Supreme Court has recognized that the breadth of the RICO language encourages attempts to turn business disputes into federal racketeering charges. ***Thus the risk that a party will attempt to use discovery to conduct a 'fishing expedition' is a significant concern."*** *PMC, Inc. v. Ferro Corp.,* 131 F.R.D. 184, 187 (C.D.Cal.1990) (collecting cases) (citations omitted). ***That concern is especially evident here where State Farm admits that Morse and Weiner act as opposing counsel to State Farm in a large proportion of its litigated insurance claim ca*ses.** ... ***Permitting limitless discovery of these firms' files, even conceding that a protective order exists in this case preventing the misuse of obtained information, could still provide State Farm with a wealth of information not truly relevant to the claims here, but which could bleed over, intentionally or unintentionally, into other cases State Farm handles against these firms.***

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc*., 2013 WL 10936871, at *8 (E.D. Mich. 2013) (emphases added). While the lawyers in *Physiomatrix* had not yet been sued, here the Carriers are engaged in a quintessential fishing expedition of the type the *Physiomatrix* court cautioned against in RICO cases that attempt to elevate business disputes into mob-like activity.

Fourth, in *RES-AZ One, LLC v. McAdams*, CV-16-02392, 2017 WL 6001511 (D. Ariz. Jan. 30, 2017), the court denied a motion to quash a subpoena for the production of bank records in a matter that concerned an alleged conspiracy "to transfer, conceal, and otherwise hide [defendant's] assets for the purpose of ensuring that such assets would not be available to his creditors as part of his bankruptcy or to [plaintiff] individually to satisfy the undisputed judgment," a fact pattern far different from what is alleged by the Carriers here. *Id*. at *1-2, *5. The crux of the case involved fraudulent transfers and hidden assets, not medical billing disputes like the present case. The *only* objection made to the subpoena for bank records in *RES-AZ One* was a "generic reference to the Right to Financial Privacy Act of 1928." *Id*. at *2. Here, the subject of claims is about billing not hiding assets, and the GLO parties have raised additional objections to the facially overbroad Subpoenas through which the Carriers seek irrelevant

materials rather than tailor them to target expectable evidence.[2]

A party serving broad subpoenas must justify each aspect of them as relevant with specific evidence or at least tailor them to avoid irrelevant categories of items. A recent decision in *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, CV-3:16-MC-1, 2016 WL 1071016, at *5-6 (E.D. Va. Mar. 17, 2016) is well-reasoned and instructive, requiring a court to consider not only whether a Rule 45 subpoena seeks some relevant material but also whether it is facially overbroad because it captures significant irrelevant material as well:

> [T]he Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the disclosure or discovery of the material at issue.

---

[2] In their opposition below, the Carriers cited to a few other easily distinguishable or unpersuasive RICO cases in support of their position. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 705-07 (E.D. Mich. 2017) (explaining that medical provider and transportation company defendants had not adequately responded to financial discovery requests to them showing relationships and had "not sufficiently explained how State Farm could or should narrow the subpoenas"); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 223 (E.D. Mich. 2016) (allowing subpoenas for bank records of accounts (of non-lawyer) in which there had been payments to specific parties because "materials already produced during discovery suggests that Defendants made payments to other entities, in furtherance of the alleged scheme, using various intermediaries" and "direct, obvious transactional links between the Whites and Defendants are fewer than one might expect"); *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 2016 WL 10542367, at *1 (E.D.N.C. 2016) (bank subpoena was allowed to evaluate the veracity of defendant's ongoing claim that he received no monetary benefit from the alleged conspiracy); *State Farm Mut.Auto. Ins. Co. v. Fayda*, 2015 WL 7871037, at *4, *5 n.5 (S.D.N.Y. 2015) (party resisting discovery did not contest that the plaintiff "uncovered evidence of complex financial transactions that may have been used 'to conceal assets or income,'" or ask that particular accounts "should be treated any differently from the other accounts"); *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 376 (W.D.N.Y. 2006) (plaintiffs had presented information already obtained in discovery showing millions of dollars of suspect transfers and evidence that "$850,000 remains unaccounted for," while defendants withheld information); *Constitution Bank v. Levine*, 151 F.R.D. 278, 280 (E.D. Pa. 1993) (addressing subpoena that sought only "monthly bank statements from three accounts and the history of a $200,000 certificate of deposit").

The Carriers also cited to three distinguishable non-*RICO* cases that were not discussed at the hearing. *See Everflow Tech. Corp. v. Millennium Elecs. Inc.*, 2008 WL 4962688, at *1 (N.D. Cal. 2008) (allowing bank subpoena after "early discovery reve[a]led that MEI's principals … transferred money out of MEI's account to themselves, and to a number of other entities they owned"); *ASKM, LLC v. Fry*, 2009 WL 10692975, at *1 (D. Utah 2009) (allowing a subpoena in an (indicted) Ponzi scheme case for a bank account that, according to deposition testimony, defendant opened as a co-owner, just a month after suit was filed, to receive loan repayments made for another defendant); *Am. Seeds LLC v. Watson*, 2010 WL 3843002, at *1-2 (D.S.D. 2010) (denying a third-party bank's late and boilerplate motion to quash where customer raised no objection).

Fed.R.Civ.P. 26(c)(1) .... This undue burden category "encompasses situations where the subpoena seeks information irrelevant to the case." *Cook*, 2012 WL 3634451, at \*6 n. 7. Moreover, "[a] subpoena imposes an undue burden on a party when [it] is overbroad." …

*Singletary*, 289 F.R.D. at 241. Put another way, any subpoena that seeks evidence that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, ***or that is so overbroad that compliance with its demands will necessarily require production of irrelevant evidence, seeks evidence outside the scope of Rule 26(b)(1). Such a subpoena creates an undue burden because it necessarily imposes greater hardship than is necessary to obtain proper discovery.*** …[S]cope limitations of Rule 26 apply to all methods for obtaining discovery, including the bases for protective orders under Rule 26(c) and the subpoena powers enumerated in Rule 45. *Cook v. Howard*, 484 Fed.Appx. at 812; *Union First Market Bank*, 2014 WL 66834 at \*3; *Stoney Glen*, 2013 WL 5514293 at \*4. Rule 45(c)(3) requires a Court to quash subpoenas that subject a person to "undue burden," and because "undue burden" is necessarily established where a party proves irrelevance or overbreadth because of the scope limitations of Rule 26, ***Rule 43(c) (3) requires the Court to quash subpoenas which seek irrelevant information or are overbroad.*** *Singletary*, 289 F.R.D. at 241; *AOL*, 550 F. Supp. 2d at 612. The AOL ruling is instructive in this case, and teaches that ***<u>subpoenas must impose parameters explicitly limiting the scope of the subpoena to material relevant to the underlying case</u>***.

... The Court concluded that

State Farm's subpoena must be quashed because it imposes an undue burden on the Rigsbys by being overbroad and requesting 'all' of Cori Rigsby's e-mails for a six-week period ... State Farm's subpoena is overbroad because it does not limit the emails requested to those containing subject matter relevant to the underlying action or sent to or from employees connected to the litigation ...

...***[S]ubpoenas must impose parameters limiting the subpoena's scope to evidence relevant in the underlying litigation***. ***Without such parameters, the subpoena is overbroad or seeks irrelevant information, and imposes an undue burden.***

*Id.* at \*5-6 (emphases added). These rules apply in RICO and non-RICO contexts. *See Church Mutual Ins. Co. v. Phillip Marshall Coutu*, 17-CV-209, 2017 WL 4236318, at \*2, \*7 (D. Colo. Sept. 25, 2017) (quashing subpoena served on law firm when in part overbroad, because court was "disinclined to provide a discussion as to each of the enumerated topics' broadness in an attempt to narrow" it); *Dernier v. Gilbert*, 16-MC-223, 2017 WL 420118, at \*5 (D. Kan. Jan. 31, 2017) (during discovery of business relationships in RICO case, "[b]ecause document requests 1-16 are facially overbroad, Dernier will not be required to produce documents responsive to those

requests—in this respect, his motion is GRANTED"); *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 450 (N.D. Tex. 2015) ("Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests 'seek all documents concerning the parties ... regardless of whether those documents relate to that action and regardless of date'"); *Glob. Oil Tools, Inc. v. Barnhill*, CIV. 12-1507, 2012 WL 6021331, at *4 (E.D. La. Dec. 3, 2012) (granting motion to quash subpoena for business financial records in RICO case, finding it did "not attempt to limit the scope of financial data it seeks … from January 1, 2008 through the present," and quashing the subpoena for personal bank records because, despite a parade of allegations against the individual, the subpoena scope "is not relevant to any of the issues set forth in the litigation").

The March 5 Order effectively found the Subpoenas facially overbroad by quashing them to the extent they sought records belonging to RainforestMaker and Aspen Lending, but similar standards should have applied to the bank records belonging to the GLO parties. To be clear, at the hearing, the GLO parties stated there would be no objection to the production of records showing payments to or from other Defendants and the entities that the Carriers identified as possibly connected to them (Eagle Hill Autobody and Polish Beauty). Rather, such information would be produced by parties anyway without bank subpoenas, but the objections focused on the facially overbroad categories beyond that scope, including tens of thousands of payments from operating, IOLTA and trust accounts, the vast majority of which would involve wholly irrelevant clients. The intrusion into such clients who have nothing to do with the Carriers would naturally harass, embarrass, annoy and oppress them, undermining attorney-client relationships. Applying the same logic that the Carriers use to support their demands (*i.e.*, that the possibility of some relevant bank records supposedly supports a wholesale production of far more than 50,000 bank

records over 13 years, including confidential information related to irrelevant clients and matters), if a few relevant emails existed on a non-party's computer network, a subpoena could be used to obtain all files on that network. That is not remotely the state of the law on discovery.

Also, as detailed in a recent submission [Docket No. 657], the Carriers have attempted to use this case to seek advantages in underlying state court and arbitration matters, which mitigates in favor of quashing or at least narrowing (rather than expanding) the scope of discovery from the GLO parties and their clients. Early on, this Court had to resolve motion practice by confirming that an interim impoundment order here did not somehow prevent the use of a stenographer in an underlying arbitration though the Carriers contended there that it did. Recently, counsel for the Carriers confused a state court into questioning whether this Court limited the scope of expert discovery in underlying actions by insurance claimants, forcing this Court to resolve a motion by confirming that its "Orders govern only discovery produced or not in this case." [Docket No. 665]. Notably, the third-party Subpoenas that are the subject of the March 5, 2018 Order were served by the Carriers three business days after their counsel was sanctioned in a state court action involving an underlying insurance claim because of yet further discovery misconduct on their part there. The Subpoenas thus appeared transparently retaliatory. A copy of the sanctions award and (redacted) check paying it, dated December 28, 2017, were attached as Exhibit C to the Declaration [Docket No. 648] accompanying the GLO parties' emergency motion to quash. Far from a need for broader discovery here than in a typical case, this action calls for the usual reasonable limitations under traditional standards.

## A.  The Subpoenas Should Have Been Further Quashed to Address Facial Overbreadth and Irrelevance Concerning Accounts Belonging to Glassman.

Under Rules 26 and 45, the Subpoenas should be further quashed (or modified) as facially overbroad and irrelevant with respect to any accounts belonging to Glassman. The

above-described case law, *supra* at 9-10, 15-17, makes it clear that facially overbroad subpoenas and any irrelevant material they seek are unduly burdensome within the meaning of Rule 45(d)(3)(a)(iv) and should be quashed. The Carriers submitted nothing below to show the use of Glassman's personal account(s) in the transactions and events at issue.

There is no basis for allowing a fishing expedition into Glassman's personal account(s). The Carriers speculate even about the existence of accounts for him at various banks. None of the allegations against him that appear in the March 5 Order (or otherwise) suggest the relevance of his personal account(s) in the events at issue. The March 5 Order recounts the allegations of improper solicitation of clients to facilitate the purported medical billing scheme. This Court previously held, however, that it was "not persuaded the Law Firm defendants' knowledge of the alleged fraudulent conduct of the Entity and Chiropractic Defendants is a reasonable inference from the [alleged] improper solicitation scheme conducted by B. Soto and Asenjo." *See* 6/15/16 Order on Pending Motions at 17 [Docket No. 295]. Accordingly, the allegations on which the March 5 Order relied about Glassman offer nothing to bring his personal bank account(s) into the scope of relevant discovery. It is also way too early for collection discovery, which Glassman still has significant opportunities to avoid by prevailing in this matter. He does not deny that he is the owner of the GLO and receives its profits, so earnings from his firm are not relevant on any such veracity issues. Hence, the Subpoenas should either be further quashed or modified to limit discovery of Glassman's personal accounts to payments to or from Defendants (other than the GLO parties) and the entities that the Carriers have identified as possibly connected to them.

**B.  The Subpoenas Should Have Been Further Quashed to Address Facial Overbreadth and Irrelevance Concerning Accounts Belonging to the GLO.**

The only material that the Carriers submitted to link the GLO's bank accounts to the alleged scheme were two relatively small checks to a clinic defendant, accompanied by cover

letters explaining that they paid off liens for medical services rendered to the law firm's client. The Carriers are well aware that such checks are commonplace at law firms in this practice area with respect to all sorts of medical providers, representing payments of liens or compromises of them when claims settle for less than full value. Though redacted from the public record, as explained at the hearing, those and (thousands of) other expense checks at the GLO contain client names on memo lines that appear throughout bank records, regardless of any connection to this case. In this regard, the March 5 Order does not take into account that the GLO has represented thousands of clients whose matters are unrelated to this dispute, many involving only other carriers, many in practice areas other than automobile accident claims, and many otherwise remaining entirely private. The bank records would reveal identities, disclose confidential settlement payments, and provide insight into investments and strategy in pending cases. The records would also show payments for legal fees and non-testifying expert fees in the present action, long after the 2016 shutdown of the pertinent clinics. The Carriers even seek records without specified identifiers for accounts that may or may not exist. A hope to find an account, piled on hope of a payment or payee who *might* exist, makes the Subpoenas a fishing expedition.

Hence, the Subpoenas for the GLO parties' records should be quashed or modified as facially overbroad and lacking any effort to tailor them to a relevant scope, such as to payments to or from other Defendants and entities that the Carriers suggest are possibly connected to them. Further speculation by the Carriers about bank records amounts to a classic fishing expedition.

### Conclusion

Based on the foregoing, this Court should quash the Subpoenas concerning the GLO parties' accounts or modify them to limit access to only payments to or from other Defendants and named entities possibly connected to them (*i.e.*, Polish Beauty and Eagle Hill Autobody).

Respectfully submitted,

LAW OFFICES OF JEFFREY S. GLASSMAN
By their attorneys,

/s/ Barry S. Pollack_____
Barry S. Pollack  BBO #642064
Peter J. Duffy  BBO #566682
POLLACK SOLOMON DUFFY LLP
101 Huntington Avenue Suite 530
Boston, MA 02199
617-439-9800 (Tel)
617-960-0490 (Fax)
bpollack@psdfirm.com

JEFFREY S. GLASSMAN
By his attorneys,
Edward C. Cooley BBO #550117
GIARRUSSO, NORTON, COOLEY
  & McGLONE, P.C.
308 Victory Road
Quincy, MA  02171
(617) 770-2900

Dated:  March 15, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2018, a true copy of the above-document, filed through the ECF system, will be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing.

/s/ Barry S. Pollack_____
Barry S. Pollack