UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:15-CV-12939-LTS

| | |
|---|---|
| METROPOLITAN PROPERTY AND | ) |
| CASUALTY INSURANCE COMPANY, and | ) |
| THE COMMERCE INSURANCE COMPANY, | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | ) |
| SAVIN HILL FAMILY CHIROPRACTIC, INC., | ) |
| et als., | ) |
|     Defendants. | ) |

**PLAINTIFFS, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY AND THE COMMERCE INSURANCE COMPANY'S OPPOSITION TO THE DEFENDANTS, LAW OFFICES OF JEFFREY S. GLASSMAN, LLC AND JEFFREY S. GLASSMAN'S MOTION TO COMPEL PLAINTIFFS TO RESPOND FURTHER TO MASTER REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND INTERROGATORIES (DOC. NOS. 752-55)**

## I.     INTRODUCTION

NOW COME the Plaintiffs, Metropolitan Property and Casualty Insurance Company ("Metropolitan") and The Commerce Insurance Company ("Commerce"), and hereby submit their Opposition to Defendants, Law Offices of Jeffrey S. Glassman, LLC and Jeffrey S. Glassman's (collectively, "the Glassman Defendants") Motion to Compel Plaintiffs to Respond Further to Master Requests for the Production of Documents and Interrogatories (Doc. No.752-55) ("Motion to Compel"). Despite ongoing meet and confer efforts and an agreement between the Glassman Defendants and the Plaintiffs to set a briefing schedule on all outstanding discovery issues so as not to flood the Court with multiple related motions, the Glassman Defendants filed the instant Motion to Compel raising several issues related to ongoing meet and confer efforts concerning third-party subpoenas, and seeking to compel production of documents for which the Parties have not yet conferred.  Moreover, the Motion to Compel seeks a Court order on matters that were already resolved during the Parties' meet and confer efforts, without simply waiting for the

Plaintiffs' supplemental discovery responses to ensure that said issues remain outstanding before bringing these issues to the Court's attention.

The Plaintiffs have met their discovery obligations, and have produced discovery responses in accordance with the Federal Rules of Civil Procedure, the Local Rules and the E-Discovery Protocol. To date, the Plaintiffs continue to produce documents responsive to the Defendants' discovery requests in rolling productions, as quickly as those records can be reviewed for responsiveness and privilege.  Any documents withheld from production or redacted by the Plaintiffs were withheld/redacted pursuant to a valid objection, including attorney-client privilege and/or work-product doctrine.  Simply put, and with regard to the actual issues in dispute between the Parties, the Glassman Defendants' Motion to Compel is premature and an effort to obtain documents to which they are either not entitled or have no bearing on the matters at issue in this case, and to impose undue burdens, costs and expenses on the Plaintiffs.  For these reasons, and for those set forth more fully below, the Plaintiffs respectfully request that the Court deny the Glassman Defendants' Motion to Compel.

## II.   <u>BACKGROUND</u>

To date, in accordance with several prior Orders of the Court and in response to the Defendants' Master discovery requests, the Plaintiffs have produced over 944,000 pages of electronic documents, constituting over 191,900 individual documents. <u>See</u> **Exhibit A**, Affidavit of Peter R. Houston, Esq. at ¶8.  The Plaintiffs have electronically produced the entirety of their claim files for the claims ("subject claims") underlying the allegations of the Second Amended Complaint ("SAC" ).  <u>Id.</u> at ¶9. Among the records produced therein are recorded statements, examinations under oath transcripts ("EUOs"), EUO exhibits, independent medical record reviews ("IMRs"), independent medical examinations ("IMEs"), denial letters, claim notes and other non-privileged correspondence, appraisals, photos, medical records, and medical bills. Metropolitan, pursuant to Court Order, also produced their EUO transcripts, EUO exhibits,

recorded statements, IMRs, IMEs and chiropractic records and bills in physical document form, prior to the Court's adoption of the E-Discovery Protocol.  The Plaintiffs have only redacted and withheld those records within their respective claim files over which they assert a privilege. Id.

In addition to their claim file productions, the Plaintiffs have made four (4) rolling productions of documents (totaling approximately 120,975 pages) responsive to the Defendants' discovery requests, based on agreed upon search terms between the Plaintiffs and the Defendants. The Plaintiffs are also still in the process of searching and/or reviewing additional responsive documents pursuant to the E-Discovery Protocol and the agreed upon search terms and will continue to make rolling productions until all non-privileged responsive documents are produced.

Specifically, with respect to expert materials, the Plaintiffs have produced every IMR and IME report conducted in the subject claims, including all IMRs performed by the Plaintiffs' retained experts, Michael Frustaci, D.C. and Richard Cuomo, D.C.  See Exhibit A at ¶¶5 & 13. The Plaintiffs have also produced invoices for payment submitted to either of the Plaintiffs by Drs. Frustaci or Cuomo for IMRs conducted with respect to the subject claims and proof of payments made on said invoices. Id. at ¶13. The Plaintiffs have also produced their communications with Drs. Frustaci and Cuomo to the extent that these communications are not attorney-client privileged and/or attorney work-product protected by Fed. R. Civ. P. 26(b)(4)(C). See Id. at ¶14.

The Plaintiffs have engaged in extensive meet and confer efforts with the Glassman Defendants concerning their responses to the Defendants' Master Requests for Production of Documents and Master Set of Interrogatories, resolving several discovery disputes. (See Doc. Nos. 754-7.) Despite these efforts, however, the Glassman Defendants still attempt to raise in their Motion to Compel issues that were either never raised by the Glassman Defendants in any of the Parties' meet and confer efforts, or which have been resolved.  These issues include: (1) requests to compel the production of communications with other carriers, the Insurance Fraud

Bureau, and any government agency; (2) requests to compel production of documents with or concerning First Boston Billing; (3) an order compelling responses to discovery which the Plaintiffs have already agreed to supplement; and (4) whether the Court should stay discovery on the Glassman Defendants' Amended Counterclaims.

The Glassman Defendants' have continuously taken issue with the Plaintiffs' respective claim file productions.   However, the Plaintiffs' respective claim file productions and rolling document productions have complied with the Court's E-Discovery Protocol, and were produced as the records are maintained in the Plaintiffs' usual course of business.  See **Exhibit B**, Affidavit of Erin Benson, Esq.; **Exhibit C**, Affidavit of Robert Gerdts; **Exhibit D**, Affidavit of Andrew Miller; **Exhibit E**, Affidavit of Jane Zhou; and **Exhibit F**, Affidavit of Jose Flores.   Attorney Pollack falsely claims in the Glassman Defendants' Motion to Compel that the Plaintiffs' entire claim file productions are unsearchable.   However, when asked directly about this issue, Dana Conneally, Esq., a principle from the the Glassman Defendants' e-discovery vendor Evidox, admitted during an April 19, 2018, meet and confer teleconference that claim notes METCFEDP 000001-035 were in fact searchable.   See Exhibit A at ¶¶18-19.  Moreover, the Glassman Defendants' have never provided specific examples of any claims of non-searchability in Commerce's claim file production. See Exhibit A at ¶16; see also Exhibit C at ¶17.  Thus, the Glassman Defendants are merely attempting to force the Plaintiffs to incur further costs and expenses to convert already searchable documents, which in many instances they already have in multiple formats, into another format.

## III.   <u>ARGUMENT</u>

The Plaintiffs respectfully request that the Court deny the Glassman Defendants' Motion to Compel in its entirety.  In their Motion to Compel, the Glassman Defendants raise several requests which are not even at issue, or which have not yet even been conferenced between the Parties, thus violating Local Rules 7.1 and 37.1.  Moreover, as to those issues actually in dispute,

the Glassman Defendants' positions find no support in the substantial case-law on point,

including, but not limited to, work-product protection for insurance carrier's SIU documents,

what constitutes a "percipient" witness, or whether joint defense agreements are privileged.  For

these reasons, and for those set forth more fully below, the Plaintiffs respectfully request that the

Court deny the Glassman Defendants' Motion to Compel.

### A. Issues Raised by the Glassman Defendants Which Are Either Already Resolved or Which Have Not Been Conferenced

#### i. *Plaintiffs Have Agreed to Produce Relevant Communications with Other Carriers, the Insurance Fraud Bureau and any Government Agency*

The Glassman Defendants request that the Court order the Plaintiffs to produce documents

in response to Requests Nos. 10 and 11 of the Master Requests for Production of Documents,

which seek the production of communications with other insurance carriers, the Insurance Fraud

Bureau and other governmental and/or quasi-governmental agencies. (See Doc. No. 753 at 18.)

However, and as the Defendants well know, the Plaintiffs have already agreed to produce these

documents.  With respect to Request No. 10, the Plaintiffs responded to the Glassman

Defendants' meet and confer requests in correspondence dated July 12, 2018, stating that "the

Plaintiffs will supplement their responses to Requests No. 10 and No. 52 to produce responsive,

non-privileged communications." (Doc. No. 754-7 at 5.)  Moreover, contrary to the Glassman

Defendants statements that the Plaintiffs merely pointed the Glassman Defendants to their claim

file production in response to Request No. 11, the full response makes clear that the Plaintiffs are

continuing to produce documents that are responsive to Request No. 11. (See Doc. No. 754-1 at

Response No. 11)("Pursuant to Fed.R.Civ.P. 34(b)(2), the Plaintiffs refer the Defendants to claim

file productions of February 15, 2018, and the Cross-Referenced Reports for the Plaintiffs'

respective claim file productions of February 15, 2018, which are organized by the Plaintiffs'

claim number and assigned Bates Stamped Numbers. **Additionally, the Plaintiffs will produce**

**supplemental documents, during their second rolling production April 6, 2018, or third**

**rolling production on April 27, 2018, and on the earliest date such documents are**

**reasonably accessible."**)(emphasis supplied.)

It is therefore obvious that there is no dispute for the Court to resolve as to Request Nos.

10 and 11, and therefore, the Court should deny the Glassman Defendants' request to order the

production of documents responsive to Requests Nos. 10 and 11 of the Defendants' Master

Requests for Production of Documents.

> ii. *The Plaintiffs are Already Producing Documents with or Concerning First Boston Billing*

Likewise, the Court should deny the Glassman Defendants' request that the Court order

the Plaintiffs to produce documents with or concerning First Boston Billing, as said records were

produced in the Plaintiffs' claim file production.  See Exhibit A at ¶15.  It must also be noted that

the Glassman Defendants never conferenced their request that the Plaintiffs use First Boston

Billing as a search term, in clear violation of Local Rule 7.1 and 37.1, as illustrated by a simple

review of the correspondence attached the Glassman Defendants' Motion to Compel reveals.

(Doc. Nos. 754-3 – 754-8.)  The Glassman Defendants' assertions that the Plaintiffs' "hid" First

Boston's involvement in the allegations of the SAC are without support.  Whatever relevance the

Glassman Defendants believe documents concerning First Boston Billing may have is completely

undermined by their co-Defendants, the Clinic Defendants' Answers to Interrogatories, where the

Clinic Defendants assert under oath that their Chiropractors were the parties responsible for

assigning CPT codes for billing purposes.  See **Exhibit G**, Objections and Responses of

Defendants Savin Hill Family Chiropractic, Inc., Logan Chiropractic, Inc., Metro Coach, Inc.,

Kenneth Ramos, and Tony Ramos to Plaintiffs' Master Set of Interrogatories, at Answer No. 9.

Additionally, the Chiropractor Defendants signed all HICF forms certifying the accuracy of the

bills submitted by the Clinic Defendants. First Boston's only actions in this case were taking the

CPT codes billed by Clinic Defendants and Chiropractor Defendants on a limited number of

claims in which First Boston was actually involved and then sending the invoice, which limits

their relevance herein. Accordingly, the Court should deny the Glassman Defendants' request that the Court compel the Plaintiffs to produce documents with or concerning First Boston Billing.

> ### iii.   The Glassman Defendants Seek an Order to Compel Without Awaiting the Plaintiffs' Supplementation of their Answers

The Glassman Defendants also inappropriately seek a Court Order compelling response to Requests for Production Nos. 1, 2, 3, 4, 9, 10, 24, 26, 51, 52, 58, 59, 60, 61, 73, 89, 90 & 93 and Interrogatory Nos. 7, 8, 9, 13, 20 & 22, without first waiting for the Plaintiffs' supplementation of these requests, which the Plaintiffs have agreed to do.  The Glassman Defendants' request fails to comport with the tenets of Local Rule 7.1 and 37.1 which require the parties to narrow the scope of any dispute to its furthest extent before seeking the Court's intervention, and therefore, should be denied as there is nothing to compel.

> ### iv.   The Court Should Stay Discovery as to the Glassman Defendants' Amended Counterclaims

The Glassman Defendants raise the Plaintiffs' intentions to seek a stay of discovery as a significant portion of their Motion to Compel seeks documents and information that may lead to admissible evidence in regard to their counterclaims which are currently the subject of a pending Motion to Dismiss (Doc. Nos. 623-24 and 641).  While it is certainly the intention of the Plaintiffs' to seek this stay, discovery regarding the Glassman Defendants' Amended Counterclaims is likely premature given the meritorious bases for the Plaintiffs' Motion to Dismiss.

## B.  Remaining Discovery Disputes

> ### i.   The Plaintiffs' Response to Interrogatory No. 15 Is Appropriate

The Glassman Defendants' attempts to compel a further response to Interrogatory No. 15, seeking a listing of the non-Glassman attorneys by claimant, are without merit, as the Plaintiffs' Answer complies with the clear tenets of Fed. R. Civ. P. 33(d). "Rule 33(d) of the Federal Rules of Civil Procedure provides an option for a party to produce business records in lieu of answering

interrogatories where the answer may be derived or ascertained from such records . . . ." <u>Licensed 2 Thrill v. Rakuten, Inc.</u>, 2015 WL 13376540, at *3 (D. Mass. Oct. 13, 2015).  To properly invoke Rule 33(d), a party must: (1) affirm that the information sought by the interrogatory is in fact available in the specified records; (2) specify the actual documents where the information will be found; (3) show that answering the interrogatory in the traditional way would impose a burden on it; and (4) that the burden of deriving the information would be substantially the same for the opposing party in finding the information in the business records.  <u>Id.</u> (citations omitted).

In Answer No. 15, the Plaintiffs' refer the Glassman Defendants to their claim file production of February 15, 2015, and inform the Glassman Defendants that the information sought could be found in the claims files.  (Doc. No. 754-2 at Answer No. 15.)  Furthermore, in their July 12, 2018, correspondence the Plaintiffs further inform the Glassman Defendants' that in order to answer the interrogatory, the Plaintiffs would be required to perform the same review of their claim files that the Glassman Defendants would in order to obtain the information sought. (Doc. No. 754-7 at 7.

As is clear, the Plaintiffs' Answer to Interrogatory No. 15 complies with Fed. R. Civ. P. 33(d), and the Court should deny the Glassman Defendants' request that Court order the Plaintiffs to supplement their answer.

### ii.  The Glassman Defendants Misrepresent the Dispute over Search Terms

Contrary to the Glassman Defendants' assertions, the Plaintiffs did not refuse to run searches on the additional terms listed in their Motion to Compel (Doc. No. 753), including 97110, "well leg," "leg raise," assistant and (chiro or chiropractor or delegate or delegated or delegation).  The Parties' meet and confer focused on the use of 97110, as the Plaintiffs informed the Glassman Defendants' that running such a search by itself would produce an excessive number of hits, as it would hit on every HICF form, medical record and bills for every physical therapist and chiropractor, even those unrelated to Logan Chiropractic and Savin Hill, where the

procedure was allegedly performed. As stated *supra*, those medical records and bills relevant to

Logan Chiropractic and Savin Hill have already been produced.  This position was outlined in the

Plaintiffs' July 12, 2018, letter. (<u>See</u> Doc. 754-7 at 5)(under Request 61 heading).  It was the

Plaintiffs' understanding that the Glassman Defendants would propose additional search terms to

run in conjunction with 97110 to make the search more focused.  This simply did not happen.

(<u>Id.</u>)

 Regardless, the Plaintiffs have performed a search for 97110 in the custodian email

accounts and have already produced non-privileged responsive records in their rolling

productions, and will continue to produce non-privileged responsive documents.

> ### iii. The Glassman Defendants Have Not Established the Relevance of the Personnel Files of the Plaintiffs' Lead SIU Investigators to Warrant Their Production

 The Glassman Defendants seek for the Court to compel the production of performance

reviews and complaints of and about the Plaintiffs' lead SIU investigators, which the Glassman

Defendants sought in Request Nos. 77 and 92 of the Defendants' Master Requests for Production

of Documents.  The Glassman Defendants fail to present any argument concerning the relevance

of these documents as to the allegations of the SAC or their proposed Counterclaims sufficient to

overcome the privacy interests of the Plaintiffs' employees, who are not parties to this litigation.

"[P]ersonnel files contain perhaps the most private information about an employee within the

possession of an employer."  <u>Wittingham v. Amherst College</u>, 164 F.R.D. 124, 127 (D. Mass.

1995).  A party seeking the production of personnel files must demonstrate that the relevance of

the discovery sought outweighs the privacy interests of the individuals whose personnel records

the party seeks.  <u>Id.</u> at 127-128 (citing cases in support).

 Instead of attempting to demonstrate the relevance of this discovery to any claims or

defenses in this litigation, the Glassman Defendants argue that they expect to show that the SIU

investigators intimidated witnesses and "pressured them into shaping statements in favor of the

Plaintiffs," and in support of this argument, rely upon two sworn statements from witnesses, neither of which even attest to the fact that they even filed complaints with either of the Plaintiffs based on the investigators' alleged conduct.  Obtaining these two sworn statements by the Glassman Defendants, demonstrates that they can obtain this information from other sources, not protected by the privacy interest which attaches to a personnel file.

Not only have the Glassman Defendants failed to establish the relevance of the SIU investigator's personnel records, but the Glassman Defendants Request Nos. 77 and 92 are overly broad as to scope and time, and not reasonably tailored to lead to the discovery of admissible evidence.  The Glassman Defendants' proffered explanation for seeking these records is that the records are relevant as rebuttal evidence concerning statements obtained by the SIU investigators. It is simply inconceivable that this evidence would be located in a personnel file. The requests themselves are not even limited to performance reviews or complaints related to the subject claims, or to any temporal scope.  It is hard to imagine how a complaint about an SIU investigator in 1995 may be even remotely relevant to this litigation.

Additionally, the Glassman Defendants' request as to Request No. 77 is entirely without merit, as the Plaintiffs responded to Request No. 77 stating that they did not have any responsive documents.  (Doc. No. 754-1 at 36)(Response to Request No. 77.)  The Court cannot compel records which do not exist. See Moulton Bane v. Moulton, 2015 WL 12990224, at *2 (D.N.H. Nov. 10, 2015)("The court cannot compel a party to produce documents that do not exist . . . .")(citations omitted).  Accordingly, the Court should deny the Glassman Defendants' request to compel the production of the records sought in Request Nos. 77 and 92.

### iv.  The Plaintiffs have already Produced All EUO Transcripts with Exhibits

The Glassman Defendants seek to again compel records that have already been produced, by asking the Court to compel the Plaintiffs to produce EUO transcripts and Exhibits. Metropolitan has produced every EUO transcript in both physical and electronic form.  Both

Metropolitan and Commerce have produced their EUO transcripts, and exhibits where available, electronically.  See Exhibit A at ¶11. Additionally, to the extent that EUO exhibits exist, the Plaintiffs have produced those records in the form in which they exist. Id. at ¶12. The Glassman Defendants rely upon speculation to assert that the Plaintiffs have not produced some electronic versions of their EUO transcripts and EUO exhibits, and complain that said records are not produced together.  The Plaintiffs, however, have produced these records as they are maintained in their ordinary course of business, as required by the E-Discovery Protocol and by Fed. R. Civ. P. 34.  See Exhibit F at ¶¶7-8; and Exhibit E at ¶6; and Exhibit D at ¶4.  Any attempt by the Glassman Defendants to force the Plaintiffs to seek records from their numerous respective counsels on the subject claims is not proportional to the needs of the case.  As alleged in the SAC, the Glassman Defendants' represented no less than 81% percent of claimants between 2008-2011 from Logan Chiropractic presenting claims with either Plaintiff, and no less than 57% of all claimants treating at Logan Chiropractic or Savin Hill that presented claims to the Plaintiffs between 2008 and 2015.   (See Doc. No. 304 at ¶¶290 & 296.) As such, the Glassman Defendants are already in possession of much of the records they seek, as they received a copy of the EUO transcripts for the claimants they represented.  It is disproportional to the needs of the case to force the Plaintiffs to track down records (including electronic copies of EUO transcripts and EUO exhibits), which the Glassman Defendants have not proven exist, and which the Glassman Defendants themselves possess in large portion.  This is especially true where the Glassman Defendants have already received copies of each EUO in electronic form, and with respect to Metropolitan, also in physical copy.  Accordingly, the Court should deny the Glassman Defendants' request to compel the production of these records.

       *v.*   *The Plaintiffs Have Produced Searchable Claim Files Which Preserve Metadata*

Contrary to the Glassman Defendants' assertions, the Plaintiffs' claim file production is searchable and preserves all relevant metadata in compliance with the E-Discovery Protocol. The

Plaintiffs' claim file production complies with the E-Discovery Protocol, as the Plaintiffs have produced these records as they are maintained in their usual course of business. <u>See</u> Exhibits B, C, D, E, and F. To the extent that the Glassman Defendants raise searchability of the Plaintiffs' claim file production, the Plaintiffs are only aware of complaints concerning Metropolitan's claim file production, not Commerce's, as the Glassman Defendants have never raised a specific concern regarding Commerce's claim file production despite repeated requests for examples. <u>See</u> Exhibit A at ¶16; <u>and</u> Exhibit F at ¶9.   The issues presented to the Plaintiffs by the Glassman Defendants related to searchability of the claim file production were solely with regard to a small subset of records, which are received from third-parties and scanned into Metropolitan's Trexo or Charlie Woodstock systems.  <u>See</u> Exhibits D and E.  To create the claim file production, Metropolitan exported the individual files from Trexo and Charlie Woodstock in their native format and in the same manner they are maintained internally by Metropolitan in its usual course of business.  <u>See</u> Exhibits D and E.  Metropolitan's production at all times conformed to the E-Discovery Protocol, and the small subset of records concerning which the Glassman Defendants' complain have also been produced in physical form.

It must also be noted that the Glassman Defendants rely solely on the Declaration of Dana Conneally, Esq. (Doc. No. 755) to support their contentions with respect to the searchability of the Plaintiffs' claim file production.  Dana Conneally's declaration is incompetent evidence as it fails to comply with the requirements of unsworn declarations in federal court, found in 28 U.S.C. §1746.  Section 1746 of Chapter 28 of the U.S. Code provides that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person

which is subscribed by him, **as true under penalty of perjury**,
and dated . . . .

(emphasis supplied).  Attorney Conneally's affidavit, however, is **not** sworn to under penalty of

perjury, and therefore cannot be relied upon as evidence in a motion.  See In re World Trade

Center Disaster Site Litigation, 722 F.3d 483, 487-88 (2d Cir. 2013)(affirming dismissal of

Complaint for failure to prosecute finding certification of answers to interrogatories did not

conform to 28 U.S.C. §1746 finding that "[i]nclusion of the language 'under penalty of perjury' is

an integral requirement of the statute for the very reason that it impresses upon the declarant the

specific punishment to which he or she is subjected for certifying to false statements."); see also

Jose E. Rios Colon v. United States, 928 F. Supp. 2d 388, at 391-92 (D.P.R. 2012)(finding that

declarations were inadmissible as testimonial evidence on motion for summary judgment as the

declarations were not made under penalty of perjury).  Accordingly, the Court should strike

Attorney Conneally's Affidavit (Doc. No. 755).  More concerning, however, is the fact that the

statements in Attorney Conneally's Affidavit conflict with statements Attorney Conneally made

during a meet and confer telephone call, where he acknowledged that Metropolitan's claim file

production was text searchable, which is perhaps why Attorney Conneally's Declaration is not

sworn to under pains and penalties of perjury.  See Exhibit A at ¶¶18-19.

As is clear from the affidavits of Erin Benson, Esq., Andrew Miller, Jane Zhou and Jose

Flores, the Plaintiffs have produced their claim files as they are maintained in their ordinary

course of business, and maintained all metadata from their document retention systems.  The

Plaintiffs have complied with the Court's E-Discovery Protocol and Fed. R. Civ. P. 34 and

therefore, the Court should deny the Glassman Defendants' request to compel the Plaintiffs to

produce any additional metadata.

### vi. The Glassman Defendants are Not Entitled to the Plaintiffs' SIU Work-Product as It is Protected from Disclosure Pursuant to Fed. R. Civ. P. 26(b)(3)

#### a. The Plaintiffs' SIU files constitute work-product within the meaning of Fed. R. Civ. P. 26(b)(3)

The Glassman Defendants assert that the Plaintiffs' claim files should be produced without redactions for SIU material, mistakenly asserting that SIU notes are not work-product as contemplated by Fed. R. Civ. P. 26(b)(3). This argument, however, ignores not only the factual circumstances which led to the initiation of the SIU investigation into a specific claim, but also the ample case-law finding that SIU investigatory materials are protected by the privilege afforded by the work-product doctrine. Moreover, the facts and evidence upon which the SIU investigators relied including EUOs, recorded statements, IMRs and denial letters to counsel have already been produced.

The work-product doctrine "protects (1) documents or other things, (2) prepared in anticipation of litigation, (3) by or for a party or a party's representative." Bingham v. Supervalu Inc., 2014 WL 12792917, at *5 (D. Mass. May 28, 2014)(citing Fed. R. Civ. P. 26(b)(3) and Hickman v. Taylor, 329 U.S. 495 (1947)). "'While the attorney-client privilege shields communications between attorney and client (and in some circumstances third parties), the work product doctrine protects an attorney's written materials and 'mental impressions.'" Wade v. Touchdown Realty Group, LLC, 2018 WL 575848, at *3 (D. Mass. Jan. 26, 2018)(quoting Comm'r of Revenue v. Comcast Corp., 453 Mass. 293, 311-12 (2009)). The doctrine, however, "is not limited to attorneys, but also applies to 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, **insurer**, or agent).'" Id. (quoting Fed. R. Civ. P. 26(b)(3))(emphasis supplied). "'Most courts distinguish between 'opinion' work product, which includes 'materials that contain the mental impressions, conclusions, opinions, or legal theories of an attorney,' and 'ordinary' [or fact] work product, which includes everything else that

is eligible for protection as work product, and accord greater protection to the former.'" Bryan

Corp. v. Chemworth, Inc., 296 F.R.D. 31, 42 (D. Mass. 2013)(quoting In re Grand Jury Subpoena,

220 F.R.D. 130, 144 (D. Mass. 2004)). The work product doctrine protects mental impressions,

but does not protect the facts underlying those mental impressions.  See Bingham, 2014 WL

12792917 at *5.  The party asserting work product protection bears the burden of demonstrating

the doctrine's applicability.  Id.

      Under M.G.L. c. 175, §113H(C), all automobile insurers in Massachusetts are obligated to

maintain a SIU "to investigate suspicious or questionable motor vehicle insurance claims for the

purpose of eliminating fraud."  Id.  Courts have routinely held that information compiled by an

insurer's SIU during an investigation into a suspicious claim is not subject to discovery, as it

constitutes work-product prepared in anticipation of litigation. See Stampley v. State Farm Fire

and Casualty Company, 23 Fed.Appx. 467, 2001 WL 1518787 (6th Cir. 2001) ("State Farm or its

representatives reasonably could have anticipated the prospect of litigation because of the

allegedly 'suspicious nature' of the fire and the Michigan Fire Incident Report by the Detroit Fire

Department."); Lear v. IDS Property Causualty Insurance Company, 2016 WL 3033499, at *7-8

(W.D. Wash. May 27, 2016)(granting defendant protective order finding SIU materials protected

by work-product doctrine and attorney-client privilege); Mosley v. American Home Assurance

Company, 2013 WL 6190746, at *4 (S.D. Fla. Nov. 26, 2013)(finding entire SIU file protected by

work-product doctrine, subject to waiver analysis); Welle v. Provident Life and Accident

Insurance Company, 2013 WL 6020763, at *3 (N.D. Cal. Jul. 31, 2013)("Many, if not all, of the

documents in the SIU file are indeed entitled to work-product protection, as the SIU only

conducts investigations in anticipation of litigation."); Marshall v. Safeco Ins. Co. of Ind., 2013

WL 12180600, at *4-6 (S.D. Ga. May 14, 2013)(finding SIU materials protected by work-product

doctrine explaining that "the determinative event for assessing when an insurance company

anticipates litigation is when the investigation is assigned to SIU."); State Farm Mut. Automobile

Ins. Co. v. Physicians Injury Care Center, Inc., 2008 WL 11334591, *4 (M.D. Fla. Nov. 13, 2008)(explaining that Defendants are prohibited from obtaining discovery as it relates to the Plaintiff's SIU as the information has been established to have been developed in anticipation of litigation); Provident Life & Accident Ins. Co., 1998 WL 800323, at *1 (E.D. Pa. Nov. 17, 1998)(finding that SIU materials memoranda were protected from disclosure under work-product doctrine as when read as a whole the memoranda "demonstrate a comprehensive pre-litigation approach."); Garvey v. National Grange Mutual Insurance Company, 167 F.R.D. 391, 394 (E.D. Pa. 1996) ("At some point in its investigation, however, an insurance company's activity shifts from their claims evaluation to an anticipation of litigation."); and Lett v. State Farm Fire and Casualty Company, 115 F.R.D. 501, 503 (N.D. Ga. 1987) (holding that once a case is flagged as suspicious for fraud and referred to the SIU, the information and materials developed by the insurance company are in anticipation of litigation and not subject to discovery).

The case-law cited by the Glassman Defendants does not hold to the contrary. In fact, the Court in State Farm Mut. Auto. Ins. Co. v. Eastern Medical, P.C., 2008 WL 3200256 (E.D.N.Y. 2008) recognized the work-product nature of SIU materials and does not order the production of materials that are work-product. Id. at *5-6. While the Court in Lewis v. Ameriprise Ins. Co., 2017 WL 890101 (S.D. Ala. Mar. 6, 2017) seemingly orders the disclosure of materials created after the file was transferred to SIU, this case runs contrary to the substantial case-law cited supra.

The Plaintiffs consider the following factors in determining whether a file should be transferred to their SIU units:

> liability issues, coverage issues; underwriting information; the facts and circumstances of the reported loss; physical damage; the cause and the extent of the claimant's injuries; the date injuries are first reported; the claimant's first date of treatment; the frequency and duration of treatment; inconsistent reports of facts surrounding the accident; inconsistent reports of injuries by the claimant(s)' prior loss history; the notice of loss date; the claimant's prior medical history; and, indications of a medical provider billing for

> treatment not rendered, unauthorized practice, improper pattern
> and practice treatment protocols, overutilization of practice, as well
> as any other suspect or unusual circumstances warranting further
> investigation of the claim.

(Doc. No. 754-2 at Answer No. 10.)  Once a file is referred to SIU, the SIU investigator may take

several investigatory steps beyond the usual claims handling process.  (See Doc. No.  754-2 at

Answer No. 11.) SIU investigations are not part of the Plaintiffs' routine claims handling process,

and in fact, only a fraction of the subject claims were investigated by the Plaintiffs' respective

SIU. Indeed, based on the complexity of the fraudulent scheme, the Defendants' conduct went

undetected for a significant period of time. For instance, Metropolitan's SIU investigated only

approximately 130 patient files of the 312 patient files which form their portion of the subject

claims.  Commerce's SIU investigated only approximately 470 of the subject claims.[1] The vast

majority of Metropolitan's SIU investigations into individual patient files occurred after

Metropolitan started their independent major case review of the Clinic Defendants' treatment of

claimants in or around January 2013. Each Plaintiff independently initiated major case reviews of

the Clinic Defendants' treatments of claimants after obtaining a critical mass of evidence

concerning the Clinic Defendants' fraudulent scheme. (See Doc. No. 754-2 at Answer No. 11.) It

makes no difference, however, whether the SIU investigated a given file for this specific

litigation, or in anticipation of litigation on the underlying claim, as both are afforded work-

product protection herein.  See F.T.C. v. Grolier 462 U.S. 19, 25 (1983)("Rule 26(b)(3) does not

in so many words address the temporal scope of the work-product doctrine immunity and a

review of the Advisory Committee's comments reveals no express concern for that issue. [ . . . ]

But the literal language of the Rule protects material prepared for *any* litigation or trial as long as

they were prepared by or for a party to the subsequent litigation.")(citation omitted)(emphasis

original); see also Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, PA.,

---

[1] Several claims may arise from the same accident.

1994 WL 510043, at *5 (S.D.N.Y. Sept. 16, 1994)("The [work-product] doctrine does, however, protect documents prepared in an earlier litigation from discovery in a subsequent suit, particularly where the two cases are related.")(citations omitted).  Here, the Plaintiffs have not withheld the facts underlying their SIU investigation.  The Plaintiffs have produced every EUO transcript with exhibits, every IME, every IMR, every denial letter sent to opposing counsel detailing the basis for the denial of a given claim, and every recorded statement.  The Plaintiffs have also disclosed to the Defendants the name and address of every witness interviewed by the Plaintiffs' SIU, the vast majority of whom are former employees of the Defendants.  (Doc. No. 754-2 at Answer No. 6.)  The only information withheld include SIU claim notes and confidential memoranda prepared by the Plaintiffs' SIU investigators, both of which reveal the SIU investigator's strategy and mental impressions and therefore are privileged.

As the evidence demonstrates, once the Plaintiffs have accepted a claim into their SIU department, litigation is reasonably anticipated and the Plaintiffs investigate the claim in anticipation of subsequent litigation.  Accordingly, the Plaintiffs' SIU materials are protected by the privilege afforded by the work-product doctrine.

### b.   The Plaintiffs Have Not Placed Their SIU Work-Product at Issue

The Plaintiffs have not placed their SIU investigators' mental impressions "at issue" and therefore, there has been no "at issue" waiver of work-product protection afforded the Plaintiffs' opinion work-product.  "An 'at issue' waiver occurs when a party injects certain claims or defenses into the case which implicate, i.e. put 'at issue' the communications of counsel."  Bacchi v. Massachusetts Mut. Life Ins. Co., 110 F. Supp. 3d 270, 275 (D. Mass. 2015)(citing Clair v. Clair, 464 Mass. 205, 219 (2013)). To determine whether there is an "at issue" waiver of privileged materials, the Court must weigh the following factors: "1) whether the proponent of the privilege took some affirmative step such as filing a pleading; 2) whether the affirmative act put privileged information at issue by making it relevant to the case; and 3) whether upholding the

privilege would deny the opposing party access to information vital to its case." Id. at 276 (citing

Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975).  Additionally, Courts within the District of

Massachusetts have adopted the additional requirements enunciated in In re County of Erie, 546

F.3d 222, 228 (2d Cir. 2008), which further requires, that in order to constitute a waiver of the

privilege, that the privileged information "be not only relevant, but also actually relied upon by

the privilege holder to support a claim or defense in the case."  Id. (citing In re County of Erie,

546 F.3d at 228; see also Trustees of Boston University v. Everlight Electronics Co., Ltd., 2014

WL 5786532, at *4-5 (D. Mass. 2014)(Boal, MJ)(citing In re County of Erie with approval), aff'd

in relevant part and rev'd in part by Trustees of Boston University v. Everlight Electronics Co.,

Ltd., 2015 WL 3407555 (D. Mass. May 27, 2015). As the Court in Trustees of Boston University

explained:

> ' … Relevance is not the standard for determining whether or not
> evidence should be protected from disclosure as privileged, and that
> remains the case even if one might conclude the facts to be
> disclosed are vital, highly probative, directly relevant or even go to
> the heart of an issue.'

Id. (quoting Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co., 32 F.3d 851, 864 (3d Cir. 1994)).

The same principals apply to work-product.  See Windsor Securities, LLC v. Arent Fox LLP, 273

F. Supp. 3d 512, 517-18 (S.D.N.Y. 2017).

The Glassman Defendants argue that the Plaintiffs have waived work-product protection

for SIU materials by referencing SIU in the SAC and by listing the documentary evidence

obtained by SIU in its investigation in Paragraphs 337 and 559 of the SAC, i.e. EUOs, IMRs,

recorded statements, medical records and bills, claim materials from other insurance carriers, and

Dr. Frustaci's pattern, and practice review.  To the extent that the Court could find that the mere

referencing of these documents in the SAC, and to the extent that the Plaintiffs intend to rely upon

them, constitutes an "at issue" waiver of SIU work-product as it relates to these items, the issue is

moot, as the Plaintiffs have already produced what documents it has in its possession, custody or

control.  It is the Plaintiffs' position that no waiver of the privilege afforded the opinions and

mental impressions of their SIU investigators in conducting their investigations into the subject

claims, has occurred.  "At issue" waiver requires that the Plaintiffs intend to rely upon said work-

product to support their claims.  The Plaintiffs do not intend to introduce into evidence the actual

SIU claim notes or internal SIU memoranda prepared during the course of their respective

investigations into the subject claims.

Moreover, the Plaintiffs have not placed their SIU opinion work-product "at issue" by

pleading fraud.  "Even where a party's state of knowledge is particularly at issue, such as in a case

involving claims of laches or justifiable reliance, waiver of the privilege should not be implied

because the relevant question is not what legal advice was given or what information was

conveyed, but what facts the party knew and when."  Arkwright Mut. Ins. Co. v. Nat'l Union Fire

Ins. Co. of Pittsburgh, PA., 1994 WL 510043, at *12 (S.D.N.Y. Sept. 16, 1994)(citing Allen v.

West Point-Pepperell Inc., 848 F. Supp. 423, 431 (S.D.N.Y. 1986)).  The Glassman Defendants

are correct in that the Plaintiffs will have to prove that they justifiably relied on the fraudulent

bills of the Clinic Defendants to prove their RICO claims.  Because of that, the Glassman

Defendants are entitled to know what facts the Plaintiffs knew and when, which is why the

Plaintiffs have already produced, or are producing, all documents within their possession, custody

and control containing those facts, which do not also contain the Plaintiffs' SIU investigators'

own mental impressions.  The Glassman Defendants are also free to inquire at any deposition of

the Plaintiffs and their SIU investigators as to what facts the Plaintiffs had and when.  However,

the Glassman Defendants are not entitled to the Plaintiffs' opinion work-product.

### c.   *The Glassman Defendants Cannot Establish a Substantial Need for the Plaintiffs' Opinion Work-Product*

The Glassman Defendants have failed to carry their burden of demonstrating a

"substantial need" requiring the Plaintiffs to produce their SIU opinion work-product.  "'[T]he

protection [for work product] is qualified and can be overcome if the party seeking the discovery

demonstrates 'substantial need of the materials' and that it is 'unable without undue hardship to obtain the substantial equivalent of the materials by other means.'" Wade v. Touchdown Realty Group, LLC, 2018 WL 575848, at *3 (D. Mass. Jan. 26, 2018)(quoting DaRosa v. City of New Bedford, 471 Mass. 446, 458-59 (Mass. 2015)). "'Generally, courts deny the discovery of an adversary's work-product on the basis of substantial need where a party may obtain information through other means.'"  Bryan Corp., 296 F.R.D. at 42 (quoting Clark v. Edison, 2010 WL 3245428, at *2 (D. Mass. Aug. 16, 2010)). "Complaints of cost and inconvenience do not constitute a showing of substantial need and undue hardship." Clark, 2010 WL 3245428 at *2)(citing Colonial Gas Co. v. Aetna Cas. & Sur. Co., 139 F.R.D. 269, 275 (D. Mass. 1991)). Courts in this jurisdiction have routinely found that where the same information may be obtained through a deposition, the requesting party has failed to demonstrate substantial need.  See Id. at *2; Wade, 2018 WL 575848, at *3; and Bryan Corp., 296 F.R.D. at 42 ("'Discovery of work product will therefore be denied where the party seeking discovery can obtain the information by taking the deposition of witnesses.'")(quoting Colonial Gas Co., 139 F.R.D. at 275).

Here, the Glassman Defendants claim a substantial need for the Plaintiffs' SIU investigatory materials arguing that the Glassman Defendants do not have any other means to obtain factual information that the SIU found during its surveillance and investigation.  As to the Plaintiffs' surveillance of the Clinic Defendants, the Plaintiffs have already produced all photographs and videos taken during their surveillance.  Moreover, the Glassman Defendants are already in possession of all of the factual evidence underlying SIU's investigation of the subject claims, including EUOs, IMRs, recorded statements etc.  As to other facts learned during the SIU surveillance of the Defendants, the Glassman Defendants have not established substantial need since they can obtain the equivalent information through deposing the Plaintiffs, their SIU investigators, or the witnesses interviewed by SIU.  The Glassman Defendants contention that "[t]he reconstruction of up to decade-old witness statements made to SIU investigators is not

possible" is without any merit.  First, the Plaintiffs have disclosed the identities of all witnesses interviewed by their respective SIU.  Second, the Glassman Defendants' contention is undermined by the very fact that they attach two (2) sworn statements from two (2) of the witnesses interviewed by Plaintiffs' SIU to support their Motion to Compel.  (See Doc. Nos. 754-10, Declaration of Samir Dkaidek; and Doc. No. 754-11, Declaration of Isaura Beltre.)  The Glassman Defendants provide no information as to what efforts they have made to interview any of the witnesses interviewed by the Plaintiffs' SIU investigators, or why they cannot depose these individuals, especially given that the vast majority of the individuals interviewed are former employees of the Defendants and/or have known connections to the Defendants.  Furthermore, the Glassman Defendants' contention that somehow the age of the interviews plays some bearing on whether they should be entitled to the production of the Plaintiffs' work-product is unavailing, as the Glassman Defendants have made no showing that the contemporaneous nature of the interviews bears any importance on the statements made themselves.  See Clark, 2010 WL 3245428 at *3 (finding that while a party may show substantial need for production of a witness statement by demonstrating that the contemporaneous nature of the statement contains immediate impressions of fact, "substantial need does not exist where the statements obtained by an adversary were simply taken closer in time to an incident than a party could have taken statements.")

The Glassman Defendants have failed to support their position that they have a substantial need for the Plaintiffs' SIU work-product, and therefore, the Court should deny their Motion to Compel on this basis.

> ### vii. Drs. Frustaci and Cuomo are Not Percipient Witnesses, and As Experts Their Work is Afforded Work-Product Protection

The Glassman Defendants grossly misrepresent the dispute concerning the records of Drs. Frustaci and Cuomo falsely arguing as if the Plaintiffs have produced no records from either doctor.  Such is not the case. As noted *supra*, the Plaintiffs have already produced each of Drs.

Frustaci and Cuomo's IMRs, curriculum vitae, every invoice concerning payments for their services and have even produced non-work-product communications between the Plaintiffs, their counsel, and Drs. Frustaci and Cuomo. Additionally, Drs. Frustaci and Cuomo's IMRs contain the information required of expert disclosures including the information relied upon and assumptions used by the expert. The Plaintiffs' point of contention, however, as to Requests Nos. 1-6, 15, 16 and 19 of the Defendants' Master Requests for Production are that they blatantly seek documents protected from disclosure pursuant to the work-product doctrine. The Glassman Defendants' attempt to limit the scope of their requests, to documents before the inception of this action does not help their argument. Nor does their mantra that Drs. Frustaci and Cuomo are "percipient" witnesses hold any weight, or have any support in case-law.

Drs. Frustaci and Cuomo are not percipient witnesses to this case. "A percipient witness is an individual who, though an expert, derives an opinion by virtue of the witness's role as either an 'actor[] or viewer[] of the transaction[] or occurrence[] giving rise to the litigation.'" Robertson v. Red Rock Canyon School, LLC, 2008 WL 2989245, at *2 (D. Utah Jul. 31, 2008)(quoting Nowak v. Nierthaler, 1999 WL 24804337, at *1 (D. Kan. Sept. 3, 1999)). Thus, treating physicians are percipient witnesses because they have first-hand knowledge of the facts obtained during their own examination of the patient. Id. In contrast, a doctor who has not observed a patient's loss, and has based his opinion on his review of medical records is not a percipient witness. See Coker v. United States, 2016 WL 7242727, at *6 (W.D. Ky. Dec. 14, 2016). Here, neither Drs. Frustaci and Cuomo were ever witnesses to a specific patient's loss on the underlying claim files, as the Glassman Defendants themselves routinely point out, and instead, were retained on individual subject claims to perform IMRs based on reviews of the patient's medical records and other documentary evidence which is listed in each IMR report. Drs. Frustaci and Cuomo took no part in the underlying SIU investigation except for the fact that they were retained as experts in some of the subject claims, and later they were retained as the

Plaintiffs' trial experts. Their work as experts in the subject claims does not make them percipient witnesses, and in fact, only further supports the Plaintiffs' position that much of the information sought by the Defendants' Requests for Production Nos. 1-6, 15, 16 and 19 are documents protected by the work-product doctrine.

Rule 26(b) of the Federal Rules of Civil Procedure provides work-product protection for draft reports (Rule 26(b)(4)(B)) and communications between a party's attorney and the expert witness, insofar as the communication does not: (a) relate to the expert's compensation, (b) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed, or (c) identifies assumptions that the party supplied to the expert and that the expert relied upon in forming the opinion to be expressed (Rule 26(b)(4)(C)).  For instance, Requests 1 and 3 seek documents concerning agreements between the Plaintiffs and Drs. Frustaci and Cuomo.  To the extent these documents are communications between the Plaintiffs, their counsel and Drs. Frustaci and Cuomo, they are protected from disclosure subject to the limitations of Fed. R. Civ. P. 26(b)(4)(C). Furthermore, Requests Nos. 5 and 6 seek "draft reports" and communications not limited in scope to communications found not to be privileged by Rule 26(b)(4)(C).  Likewise, Requests Nos. 15, 16 and 19 each seek communications and are not limited in scope to communications which fall outside the protection of the work-product doctrine.  Drs. Frustaci and Cuomo were retained experts in the subject claims.  Their work and communications between them, the Plaintiffs and their counsel did not lose work-product status merely because the Plaintiffs filed the instant lawsuit, especially since Drs. Frustaci and Cuomo's work on the subject claims was in anticipation of litigation. See Grolier 462 U.S. at 25 ("Rule 26(b)(3) does not in so many words address the temporal scope of the work-product doctrine immunity and a review of the Advisory Committee's comments reveals no express concern for that issue. [ . . . ]  But the literal language of the Rule protects material prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation.")(citation

omitted)(emphasis original); see also Arkwright Mut. Ins. Co., 1994 WL 510043, at *5 ("The [work-product] doctrine does, however, protect documents prepared in an earlier litigation from discovery in a subsequent suit, particularly where the two cases are related.")(citations omitted).

Moreover, none of the case law cited by the Glassman Defendants holds otherwise. In United States v. Sierra Pac. Indus., 2011 WL 2119078 (E.D. Cal. 2011), the "percipient" witnesses at issue were two (2) individuals who were retained by the United States to express a cause and origin opinion as to the cause of a wildfire. However, the report prepared by the two (2) individuals was a report that they jointly prepared during their time employed by the United States Forest Service and the California Department of Forestry and Fire Protection. Id. at *1. During their employment, and before the subject litigation, the "percipient" witnesses were employees of their respective agencies that investigated the fire in question and created their report in the course of their usual employment. Id. ("At the time of the fire, White was a CDF employee and Reynolds was an employee of the United States Forest Service. [ . . . ] They investigated the fire and prepared an Origin and Cause Report documenting their findings. [ . . . ] In 2010, the United States disclosed them as testifying expert witnesses. [ . . . ]  White and Reynolds were not retained experts, and they did not prepare expert reports for this litigation for purposes of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure [ . . .].")  Cleary, the circumstances as presented by Sierra Pac. Indus. is vastly different than the present matter. Additionally, in Cadence Education, LLC v. Vore, 2018 WL 2926442 (D. Kan. Jun. 7, 2018), the proposed expert had a longstanding pre-existing relationship with the Defendant in that case, outside of his retention as an expert.  Unlike the expert in Vore, Drs. Frustaci and Cuomo's relationship with the Plaintiffs, and their counsel, has never been anything other than as an expert witness, whether it be as an expert witness on a subject claim, or with respect to the current litigation.  Regardless, work-product as to both types of retentions is still afforded the privilege found in Fed. R. Civ. P. 26(b)(4).

Accordingly, the Plaintiffs respectfully request that the Court deny the Glassman Defendants' Motion to Compel as it relates to Request Nos. 1-6, 15, 16 and 19 of the Defendants' Master Requests for Production of Documents.

> viii.   *The Plaintiffs' Joint Privilege and Cost Sharing Agreement is Privileged and Not Relevant to Any Claims or Defenses in this Litigation*

The Plaintiffs Joint Privilege and Cost Sharing Agreement ("Joint Privilege Agreement") is privileged, and not relevant to any claims or defenses in the present litigation, and therefore, the Glassman Defendants are not entitled to its production.  The Plaintiffs rightfully asserted this privilege in response to the Glassman Defendants' Request for Production No. 19, which sought "[a]ll documents concerning communications between Metropolitan or any of its attorneys or agents and Commerce or any of its attorneys or agents concerning any of the Defendants, Michael Frustaci, Rick Cuomo, and/or any of the Insurance Claims, through and including the date on which they entered, if at all, into a written joint defense agreement, including any such the agreement itself."  The Plaintiffs' Joint Privilege Agreement was executed by the Plaintiffs and their counsel herein on November 20, 2015, after Metropolitan filed the current lawsuit, but before the filing of the SAC.  The Plaintiffs started negotiations concerning the Joint Privilege Agreement in August 18, 2015. Besides specific provisions regarding cost sharing, the Joint Privilege Agreement consists primarily of boilerplate language found in most joint privilege agreements.  Upon the Court's request, the Plaintiffs will make their Joint Privilege Agreement available for *in camera* inspection.

Without any support for their assertion, the Glassman Defendants boldly state that New York law provides the relevant backdrop for an analysis of the law governing joint defense agreements, and then quote a single New York lower appellate court opinion which found that a joint defense agreement is neither attorney-client privileged or protected by the work-product doctrine.  (See Doc. No. 753 at 17-18.)  However, federal courts have found that joint defense

26

agreements are attorney-client privileged and/or work-product[2] within the protection of Fed. R. Civ. P. 26(b)(3).  See Falana v. Kent State Univ., 2012 WL 6084630, at *4 (N.D. Ohio Dec. 6, 2012)(finding that joint defense agreement not subject to disclosure as "defense materials"); AMEC Civil, LLC v. DMJM Harris, Inc., 2008 WL 8171059, at *4 (D.N.J. Jul. 11, 2008)("Generally, joint defense agreements are protected by work product privilege, and are therefore not discoverable without showing substantial need."); R.F.M.A.S., Inc. v. So, 2008 W: 465113, at *1 (S.D.N.Y. Feb. 15, 2008)(finding joint defense agreement to be protected work-product); DataTreasury Corp. v. Wells Fargo & Co., 2007 WL 9636837, at *3 (E.D. Tex. Jun. 26, 2007)(finding joint defense agreement to be protected work-product); McNally Tunneling Corp. v. City of Evanston, Ill., 2001 WL 1246630, at *4 (N.D. Ill. Oct. 18, 2001)(finding joint defense agreement to be work-product as it was prepared in anticipation of litigation and revealed the mental processes of party's attorney).  Furthermore, communications between the parties reflecting a negotiation of the terms of a joint defense agreement are likewise privileged.  See SIG Swiss Indust. Co. v. Fres-Co System, USA, Inc., 1993 WL 82286, at *1 (E.D. Pa. Mar. 17, 1993). Here, the Plaintiffs' Joint Privilege Agreement was clearly executed in anticipation of litigation, as Metropolitan had already filed a lawsuit against the Defendants, and Commerce was subsequently added to the lawsuit as a Plaintiff.  Moreover, the Plaintiffs' counsel is a party to the Joint Privilege Agreement further establishing the fact that the document was created in anticipation of litigation and therefore, privileged.

Even where Courts have found that joint defense agreement are not privileged, the Courts have found that they generally are not relevant to the claims or defenses in the subject litigation where they contain boilerplate language. See Ford Motor Company v. Edgewood Properties, Inc.,

---

[2]Federal courts follow federal law when analyzing the work-product doctrine, not the law of the state in which the Court is sitting. See Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 11 (D. Mass. 1997)("The work product doctrine, however, is a federal right derived from the Federal Rules of Civil Procedure and therefore 'resolved according to federal law.'")(citations omitted).

257 F.R.D. 418, 428 (D.N.J. 2009)("After an *in* camera review of the document, the Court finds that the agreement contains standard and boilerplate language is not discoverable because it is not relevant to any claims or defenses in this case."); and Warren Distributing Co. v. InBev USA L.L.C., 2008 WL 4371763 (D.N.J. Sept. 18, 2008)(finding joint defense agreement not relevant to claims or defenses in litigation, citing litany of cases in support and not reaching issue of privilege). The Glassman Defendants make only a cursory attempt to establish the relevance of the Plaintiffs' Joint Privilege Agreement.  What is clear, however, is that the Glassman Defendants are unable to link the Joint Privilege Agreement to any of the actual allegations of the SAC or their Counterclaims to demonstrate its relevance, nor are they able to establish substantial need for the Joint Privilege Agreement to overcome the Plaintiffs' assertion of work-product privilege.  Therefore, the Court should deny the Glassman Defendants' Motion to Compel in so far as it seeks the production of documents related to the Plaintiffs' Joint Privilege Agreement.

## IV.    CONCLUSION

Based on the foregoing analysis, the Plaintiffs respectfully request that the Court deny the Glassman Defendants' Motion to Compel in its entirety.  The Plaintiffs also request any further relief that the Court deems just and appropriate.

Respectfully submitted,
By the Plaintiffs,
Metropolitan Property and Casualty
Insurance Company, and
The Commerce Insurance Company,
By their attorneys,


/s/ Nicholas J. Pompeo
Glenda H. Ganem
BBO No. 564374
gganem@mhg-pc.com
Peter R. Houston
phouston@mhg-pc.com
BBO No. 681915
Nicholas J. Pompeo
npompeo@mhg-pc.com
BBO No. 682361
McGovern, Houston & Ganem, P.C.
21 Merchants Row, 4th Floor
Boston, MA 02109
(617) 723-1444

Dated: August 7, 2018


## CERTIFICATE OF SERVICE

I, Nicholas J. Pompeo, Esq., attorney for the Plaintiffs, Metropolitan Property and Casualty Insurance Company and The Commerce Insurance Company, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and/or served in compliance with the Fed.R.Civ.P.

/s/ Nicholas J. Pompeo
Nicholas J. Pompeo, Esq.


Dated: August 7, 2018