UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:15-CV-12939-LTS

| | |
|---|---|
| METROPOLITAN PROPERTY AND | ) |
| CASUALTY INSURANCE COMPANY, and | ) |
| THE COMMERCE INSURANCE COMPANY, | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| SAVIN HILL FAMILY CHIROPRACTIC, INC., | ) |
| et als., | ) |
| Defendants, | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY AND THE COMMERCE INSURANCE COMPANY'S MOTION TO COMPEL COMPLETE RESPONSES TO MASTER REQUESTS FOR PRODUCTION OF DOCUMENTS FROM THE GLASSMAN DEFENDANTS**

## I.      INTRODUCTION

NOW COME the Plaintiffs/Defendants-in-Counterclaim, Metropolitan Property and

Casualty Insurance Company ("Metropolitan") and The Commerce Insurance Company

("Commerce")(collectively "the Plaintiffs"), and, pursuant to Fed. R. Civ. P. 26 and 37, hereby

submit their Memorandum of Law in support of their Motion to Compel Complete Responses to

the Plaintiffs' Master Requests for Production of Documents from the Defendant, Jeffrey S.

Glassman, Esq. ("Glassman") and the Defendant/Plaintiff-in-Counterclaim, Law Office of Jeffrey

S. Glassman, LLC ("the Glassman Law Office") (collectively "the Glassman Defendants")

("Motion to Compel").  As reason therefore, the Glassman Defendants' Responses and Document

Productions to the Plaintiffs' Master Requests for the Production of Documents ("Master RPDs")

are admittedly deficient, fail to comply with the tenets of Fed. R. Civ. P. 34, improperly impose

unreasonable limitations on relevant discovery, and assert privilege protection for items which are

clearly not privileged.  Moreover, it is clear from other Defendants' Master document productions,

that the Glassman Defendants have intentionally withheld relevant, non-privileged, documents, and that their Privilege Log is incomplete and deficient.

## II.    **BACKGROUND**

By their Second Amended Complaint ("SAC")[Doc. No. 304], and supporting Exhibits A through H [Doc. No. 304-1 – 304-8], the Plaintiffs have alleged a widespread conspiracy and coordinated fraudulent scheme designed to wrongfully obtain insurance benefits from the Plaintiffs by submitting and prosecuting fraudulent claims based upon the Clinic Defendants' fraudulent chiropractic records and bills.  The SAC further alleges that the Glassman Defendants and its employee-paralegal Defendants, Brandy Soto and Heger Asenjo, intentionally, knowingly and willingly participated in the Defendants' conspiratorial scheme to defraud the Plaintiffs through their illicit and illegal solicitation and recruitment of Metropolitan and Commerce patients and/or claimants.  The Plaintiffs' SAC further alleges that the Defendants intentionally and knowingly conducted and/or participated, directly and/or indirectly, in the conduct and affairs of the Defendants' own "association-in-fact" enterprise, by exploiting the strictures of the statutory framework for Massachusetts automobile personal injury claims, and that the fraudulent conduct of all Defendants constitutes a pattern of racketeering activity and attempts to collect an unlawful debt in violation of 18 U.S.C. §1962(c), as well as a conspiracy to commit a violation of §1962(c), pursuant to 18 U.S.C. §1962(d).  The Plaintiffs have also alleged causes of action for civil and coercive conspiracy and violations of M.G.L. c. 93A.

On February 20, 2018, the Plaintiffs served their Master RPDs based on the allegations in the SAC and the Glassman Law Office's Counterclaims.  See **Exhibit A**, Plaintiffs' Master RPDs. On April 5, 2018, the Glassman Defendants' provided the Plaintiffs with their proposed e-discovery search terms and custodians.  See **Exhibit B**, April 5, 2018 letter from Attorney Pollack, at 8-10.  On April 17, 2018, the Plaintiffs sent correspondence to the Glassman Defendants requesting additional custodians and search terms be added to search logistics and requested a

meet and confer.  <u>See</u> **Exhibit C**, April 17, 2018, Letter, at 11-13.  On May 29, 2018, the Plaintiffs provided 12 additional custodians they requested be added to 57 employee-custodians the Plaintiffs had already requested be added to the 8 employee-custodians proposed by Glassman Defendants.  <u>See</u> **Exhibit D**, May 29, 2015, Email.  During the meet and confer later that day, the Glassman Defendants agreed to expand their list of employee-custodians to 10 mailboxes, however, they refused to include all employees that work on Savin Hill/Logan clients' claims and/or the 69 employees identified and requested by the Plaintiffs to be added to the Glassman Defendants' custodians list for their e-discovery searches based on their position that the 536 pages of documents they had choose to produce on May 25, 2018, did not identify these employees. They also refused to further conference the Plaintiffs' discovery requests until conferences with regard to their own discovery requests were completed.  As a result, the disagreement over custodians was not again conferenced until August 3, 2018.

The Glassman Defendants served their Responses to the Plaintiffs' Master RPDs on May 25, 2018.  <u>See</u> **Exhibit E**.  In conjunction with their Responses to the Master RPDs, the Glassman Defendants made document productions on May 25, 2018 (536 pages), June 15, 2018 (46 pages), June 19, 2018 (2,913 pages), July 12, 2018 (6,445 pages), August 3, 2018 (7,182 pages), and September 16, 2018 (27,568 pages).  On July 25, 2018, the Plaintiffs sent correspondence to the Glassman Defendants regarding specific deficiencies in their Responses to the Master RPDs.  <u>See</u> **Exhibit F**.  The Parties held their first meet and confer with respect to the deficiencies in the Glassman Defendants' Responses on August 3, 2018.  That meet and confer was derailed by the Glassman Defendants' insistence that the Plaintiffs' conference their own deficiency letter in the Glassman Defendants' preferred order.  <u>See</u> **Exhibit G & H**, Letters dated August 7, 2018 and August 10, 2018, respectively.  After the August 3, 2018, the Plaintiffs requested the Glassman Defendants' availability for a further meet and confer on the deficiencies in their Responses, but received no response from the Glassman Defendants.  <u>See</u> **Exhibit H**. The Plaintiffs ultimately

sent further correspondence to the Glassman Defendants on September 12, 2018, demanding a

further meet and confer conference, or the Plaintiffs would have no alternative but to file a Motion

to Compel pursuant to LR 37.1.[1]  See **Exhibit I**.  The Parties conferred again on September 27,

2018, after which the Parties were unable to reach agreement on the majority of the deficiencies in

the Glassman Defendants' Responses to the Master RPDs.  See **Exhibit J**. October 12, 2018,

Letter; and **Exhibit K**, November 6, 2018 Letter from the Plaintiffs.  During a meet and confer on

November 12, 2018, the Glassman Defendants would only agree to consider adding 2 employee-

custodians that the Plaintiffs provided by as examples of employees involved in their underlying

claims because they attended examinations under oath of Savin/Logan clients. Despite these

productions, the Glassman Defendants confirmed on November 12, 2018, that they have yet to

produce the all relevant documents, and further, that no inspection of paper documents stored

outside of their office. See **Exhibit L**, November 12, Email from the Plaintiffs.

## III.   **STATEMENT OF LAW**

Federal Rule of Procedure 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that
> is relevant to any party's claim or defense and proportional to the
> needs of the case, considering the importance of the issues at stake in
> the action, the amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense
> of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "The purpose of discovery is to enable the parties 'to obtain []the fullest

possible knowledge of the issues and facts before trial.'"  Diaz v. Devlin, 2018 WL 1610541, at *2

(D. Mass. Apr. 3, 2018)(quoting LeBarron v. Haverhill Coop. Sch. Dist., 127 F.R.D. 38, 40

(D.N.H. 1989)). It is the moving party's initial burden to demonstrate that the request seeks

relevant discovery when moving to compel discovery responses pursuant to Fed. R. Civ. P. 37.

---

[1] LR 37.1 requires that a meet and confer occur within 14 days of a request for a conference, or else the requesting party may file their discovery motion without a conference.

See First Niagara Risk Management, Inc. v. Folino, 317 F.R.D. 23, 25 (E.D. Pa. 2016)(citing

Morrison v. Philadelphia Housing Authority, 203 F.R.D. 195, 196 (E.D. Pa. 2001)).  Once the

moving party meets its initial burden, the burden then shifts to the opposing party to demonstrate

why the motion should be denied.  Id. at 27.

**IV.   LEGAL ARGUMENT**

   **A.   The Glassman Defendants Have Intentionally Withheld Documents and Failed
   to Complete Their Production of Documents**

   As an initial matter, throughout their Responses to the Master RPDs, the Glassman

Defendants failed to complete their document production, even where they agreed to produce

responsive documents.  Despite repeated statements that they would complete their production, to

date, the Glassman Defendants have failed to produce the majority of responsive documents within

their care, custody or control, specifically including documents they agreed to produce in response

to Request Nos. 1, 3, 5, 7, 9, 11, 12, 13, 18, 20, 25, 27, 28, 29, 32, 33, 34, 36, 38, 39, 40, 41, 43,

44, 45, 46, 49, 50, 52, 55, 57, 58, 61, 63, 64, 66, 67, 68, 69, 70, 71, 77, 78, 80, 81, 83, 84, 88, 89,

94, 97, 99, and 100.  In light of the fact that the Glassman Defendants have failed to produce all

agreed upon responsive documents for the aforementioned Requests and written discovery ends on

November 15, 2018, this Honorable Court should compel the Glassman Defendants to

immediately complete their production of records, and grant the Plaintiffs the right to file a further

Motion to Compel with regard to any further document supplementation.

   Moreover, the Glassman Defendants have intentionally withheld responsive, non-

privileged documents from their productions, which is established through a review of documents

produced by their co-Defendants.  By way of example only, co-Defendant, Richard McGovern,

D.C. ("Dr. McGovern"), who served as the Chiropractor of Record for both Savin Hill and Logan

Chiro, produced 17 pages of emails by and between him, Glassman, an attorney from the law firm

representing Glassman in this litigation, an attorney of the Glassman Law Office and others

regarding revisions and attorney changes to rebuttal medical report that Dr. McGovern certified under M.G.L. c. 233, §79G, and was submitted in response to an IMR prepared by one of the Plaintiffs' experts, Dr. Rick C. Cuomo, on behalf of Metropolitan in connection with two (2) claimants that treated at Savin Hill and were represented by the Glassman Defendants.  <u>See</u> **Exhibit M**, Emails produced by Defendant, Dr. McGovern.  Although the Arbitrator's Decisions and Orders in connection with these Glassman Defendants represented claimants' UM claims likely explains why these materials have been withheld from the Glassman Defendants' document productions, the knowing exclusion of these materials calls into question what other types of communications by and between the co-Defendants have been improperly withheld from the Plaintiffs.  <u>See</u> **Exhibit N**[2].

Paralegal Defendant, Brandy Soto ("Soto") has also produced highly relevant emails and documents which the Glassman Defendants have not produced, but that sent directly to Glassman. The emails and documents produced by Soto, but that the Glassman Defendants intentionally withheld from their productions include: email communications regarding client lists and client referrals (<u>see</u> **Exhibit O**); emails regarding the Plaintiffs' investigation into their fraudulent scheme and potential witnesses (<u>see</u> **Exhibits P**); an email that Soto forwarded to Glassman from Terron Worrell, an individual the Plaintiffs have alleged to be a referral source for the Glassman Law Office at the Boston Medical Center [Doc. No. 304 at p.53] (<u>see</u> **Exhibit Q**); an email concerning travel sales from Soto to Glassman, which support the Plaintiffs' allegations that Glassman paid Soto bonuses in the form of paid travel [<u>see also</u> Doc. No. 304 at ¶199.] (<u>see</u> **Exhibit R**); and, emails regarding Soto's lease agreement and parking dispute for Soto and/or co-Defendants' residence at The Victor Apartments in Boston, MA, where a vehicle owned by the

---

[2] **Exhibit N** is the relevant portion of the Arbitrator's Decisions and Orders, in which she found that the evidence "raises a question of formulaic treatment [by Savin Hill] that may be driven by an agenda other than the needs of the patient," and admissions of billing errors by Dr. McGovern to attorney from the law firm representing Glassman, personally, in this matter.

Glassman Defendants was parked (see **Exhibit S**).  The aforementioned emails and documents that Soto sent to Glassman, but were withheld by the Glassman Defendants demonstrate Glassman's personal knowledge of referral sources at the center of this action, potential forms of compensation given by the Glassman Defendants to Soto for the improper and illicit solicitation, recruitment and/or referrals of Savin/Logan claimants, and the unique relationship between Soto, the alleged owner of chiropractic clinics and a purported paralegal of the law firm.  These documents and emails are directly at issue in this litigation and provide evidentiary support of the fraudulent scheme as alleged by the Plaintiffs in the SAC, yet the Glassman Defendants have not produced any of them, despite Glassman being the recipient of these materials directly from Soto.  The exclusion of these materials from the Glassman Defendants' production calls into question whether the Glassman Defendants' are actually gathering and producing all responsive and relevant documents in this matter.

Furthermore, the Glassman Defendants' refusal to expand their employee-custodian list to all employees who worked on Savin/Logan clients' claims and/or personally interacted with Soto, combined with the limited number of documents and emails they have produced, to date, further demonstrates that relevant documents have intentionally been withheld from the Plaintiffs.  By way of example only, the Glassman Defendants have produced less than thirty (30) emails sent directly between Glassman and Soto directly, from January 1, 2006 and the present; and, less than sixty (60) emails sent directly between Glassman and the 11-other custodian-employees' the Glassman Defendants would agree to designate, from January 1, 2006, and the present.

Additionally, the Glassman Defendants' own production demonstrates that relevant documents have clearly not been produced.  The Glassman Defendants have produced alerts and tracking reports from a NexTraq system that was placed on the company vehicles of both Paralegal Defendants, Soto and Asenjo, tracking their locations, similar to a LoJack system starting as early as February 11, 2012.  See **Exhibit T**.  It is the Plaintiffs' understanding that these reports and

alerts were created and sent to Glassman on a daily basis from the NexTraq system. Despite this, and though the NexTraq system was in place for well over 3 years, the Glassman Defendants have only produced 426 reports or notifications. On January 9, 2013, Glassman created a specific alert to be sent to his email when either Asenjo or Soto were at Logan Chiropractic or Savin Hill.  <u>See</u> <b>Exhibit T</b>.  Notably, the last such notifications and reports produced by the Glassman Defendants are dated July 11, 2015, only two (2) days before the filing of the original Complaint in this matter. <u>Id.</u>  Not only does such evidence establishes notice as Glassman sought to curtails his paralegals' presence at the clinics, but the failure to produce particular dates relevant to this action illustrates a willful failure to disclose such materials from the Plaintiffs during the 10 months they have had to produce documents responsive to the Master RPDs.  Moreover, the information contained within these NexTraq reports and notifications is relevant to the Plaintiffs' claims in this litigation as it demonstrates Soto and Asenjo's locations with law firm vehicles at all times, which may reveal visits to other locations relevant to the allegations in the SAC, including other Defendants' homes, Enterprise Rent-A-Car, the BMS, Eagle Hill Autobody, and other referral sources.

     **B.**    **The Glassman Defendants' Discovery Responses Do Not Comply with Either Fed. R. Civ. P. 34 and are Non-Responsive**

The Glassman Defendant Responses to the Master RPDs do not comply with the requirements of Fed. R. Civ. P. 34.  Rule 34 requires that "[a]n objection must state whether responsive materials are being withheld on the basis of that objection."  <u>See</u> Fed. R. Civ. P. 34(b)(2)(C).  As the 2015 Advisory Committee Note explains, the purpose behind this requirement is "to end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections."  <u>See also</u> <u>Guariello v. Family Endowment Partners, LP</u>, 2015 WL 12953233, at *2 (D. Mass. Dec. 21, 2015).  In Response Nos. 8, 10, 14, 15, 19, 30, 31, 42, 46, 48, 50, 58, 79, 82, 85, 86, 87, 93, 95 and 96, the

Glassman Defendants assert objections without any statement as to whether any responsive documents are being withheld, forcing the Plaintiffs to file a Motion to Compel without full knowledge whether these documents even exist.  Moreover, with respect to Response Nos. 18, 27, 28, 44, 45, 46 and 77, which each seek the production of a list of various types of documents, the Glassman Defendants assert an objection, and then agree to produce a limited subset of records without identifying whether any of the other types of documents are being withheld.  By way of example only, Request No. 28 seeks the production of, "documents and ESI concerning templates used for the creation of client in-take forms, powers of attorney, demand letters, complaints, correspondence, and other documents at the Glassman Law Office for the submission and/or prosecution of the subject claims."  See Exhibit D.  The Glassman Defendants response, however, leaves the Plaintiffs to only guess at whether templates of demand letters, complaints or correspondence exist which the Glassman Defendants are withholding.

   C.    **The Glassman Defendants Improperly Limited Employee-Custodian Mailboxes for E-Discovery Searches**

   Under the E-Discovery Protocol [Doc. No. 632] entered by this Court, the parties were required to, "meet and confer promptly about pertinent custodians whose information should be searched, search terms that should be used and other search logistics for pertinent discovery requests." [Doc. No. 632 at ¶14.]  The Plaintiffs made numerous efforts to timely confer with the Glassman Defendants about pertinent custodians for the Glassman Defendants' e-discovery searches as detailed *supra*.  See **Exhibits C, D and L**.  The Glassman Defendants refused to search the mailboxes of every employee that worked on Savin/Logan clients' claims or that interacted with Soto at the law firm. See **Exhibit F**.  The Plaintiffs have credible information that it was common knowledge within the law firm that Brandy Soto was the owner of Savin Hill and Logan Chiropractic.  [See Doc. No. 527 at 13-14.]  Moreover, the Glassman Defendants' own Privilege Log has entries for communications from at least 20 employees whom the Glassman Law Office

has refused to add to their custodian list, demonstrating that these individuals have relevant information within their mailboxes which should be searched.  Compare **Exhibit C**; **Exhibit H**; with **Exhibit L**.  Accordingly, the Court should compel the Glassman Defendants to add all present and former employees of the law firm that worked on Savin/Logan clients' claims or who interacted with Soto as custodians for purposes of performing proper e-discovery searches to identify and produce relevant, non-privileged, documents and ESI.

> **D.**    **The Glassman Defendants Should Be Compelled to Produce Complete Client Lists, White Pads and "O/S Lists"**

A significant part of the allegations against the Glassman Defendants in the SAC concern improper Savin/Logan client solicitation, and whether the Glassman Defendants' employ illegal runners and/or improperly pay for referral of clients from non-attorneys.  The Plaintiffs have requested that the Glassman Defendants produce several types of records which include "Client Lists," "White Pads" and "O/S Lists" which contain a list of the clients represented by the Glassman Law Office, as well as the referral sources for these clients.  Several documents have been produced in discovery already demonstrating the relevance of these documents including email communications from Jeffrey Glassman to his legal assistant requesting a "white pad" to keep track of Soto's referrals (see **Exhibit U**), and also "O/S lists" produced by Soto listing the referral sources of clients (**Exhibit O**).  The Glassman Defendants have improperly attempted to limit the production of these records by requesting that the Plaintiffs accept "representative samples" instead of producing all such documents (**Exhibit H** at 3). The Glassman Defendants assertion that these records contain information regarding "irrelevant clients" and "extensive privileged information" are unsupported especially given the information found in the "O/S list" produced by Soto.  Given the relevance of the Glassman Defendants' client solicitation as a whole, not just with respect to clients whose claims underlie the SAC, these records also demonstrate the Glassman Defendants' knowledge of the scheme and a pattern of behavior within the Glassman

Law Office.  Therefore, the Court should compel the Glassman Defendants to produce the entirety of their client lists, white pads and "O/S lists" for the relevant time period of 2006 to the present.

      E.      **Payroll Documents, Wage Information and Limited Employment Documents Are Relevant and Should be Produced**

Through Request Nos. 3, 13, 16, 20, 29, 35, 99 and 100, the Plaintiffs sought the production of employment records related to all employees of the Glassman Law Office.  Request Nos. 13, 16, 20 and 100 specifically relate to records regarding compensation and financial incentives provided to employees of the Glassman Law Office during the relevant time period of 2006 to the present.  Request Nos. 3, 29, 35, and 99 seek employment documents and/or records of employees of the Glassman Law Office between 2006 to the present.  Both the wage and certain employment records are relevant to the allegations in the Plaintiffs' SAC as well as the Glassman Defendants' Amended Counterclaims, and therefore, the Court should compel the Glassman Defendants to produce said records.

Relevance under Rule 26 is, "'construed broadly'" "[b]ecause 'discovery itself is designed to help define and clarify the issues….'" <u>Rockstar Consortium US LP</u>, 2015 WL 5972422, at *4 (D. Mass. Oct. 14, 2015)(quoting <u>Oppenheimer Funds, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)). Through third-party discovery, the Plaintiffs have obtained some evidence demonstrating that Defendant, Soto was compensated at a higher rate than even attorneys at the Glassman Law Office and received incentive bonuses more frequently and at a higher rate than other employees of the Glassman Law Office. <u>See</u> **Exhibits V**.  However, the importance of this evidence is even more evident when viewed in comparison to the other employees of the Glassman Law Office, which reveals how integral Soto was to the Glassman Defendants' operations and that Soto was being paid for exactly what the Glassman Law Office wanted him to do, i.e. improper solicitation of clients, directly rebutting the Glassman Law Office's claims of ignorance.  Moreover, evidence of wages may demonstrate that the Glassman Law Office is compensating employees for recruitment

of claimants, as the Glassman Defendants have already produced some records in discovery which demonstrate as much, and may demonstrate other forms of compensation including, travel and bonuses[3].  See **Exhibit W** Email from Kelly Neumann.

Additionally, the Glassman Law Office has already produced records within Soto and Asenjo's personnel files which reveals that it had direct knowledge concerning Soto's actions. In 2012 and 2013, the Glassman Law Office had Soto and Asenjo execute several agreements with regard to solicitation of clients and Soto's relationship with Savin Hill and Logan. See **Exhibit X** The production of these records calls into question whether other employees of the law firm were required to execute similar documents or were tracked by the office to Savin/Logan.  Soto was apparently required to execute an Employee Certification in 2012, when he had been employed with the law firm since 2004.  In this "Employee Certification," Soto certifies that he "will not solicit, accept or give anything of value to any potential client, referral source, medical or other provider of services or any other person or firm while in the employment of the firm." Soto also certifies that, "he will not suggest, urge or persuade any client or potential client that he or she should or must seek medical care for the purpose of making a claim with an insurance company where there is not a basis for doing so that is not frivolous . . .."  Soto further certifies that, "the wages paid to me by the Firm are my sole compensation for work performed by me on behalf of the Firm and its clients and that my income is not contingent in any way on any action, result or event."  Notably, the document is executed after 8 years of employment is likely in response to some conduct which the Plaintiffs are entitled to discover.  If the Glassman Law Office did not have knowledge of Soto's actions, why only have him and Asenjo execute the "Employee Certification".  But more importantly, did the Glassman Law Office have other employees other than Soto and Asenjo execute these agreements, the absence of which is also a material fact.

---

[3] Glassman Law Office's Responses to the Plaintiffs' Requests for Admissions dated November 14, 2018, acknowledge for the first time that Soto and Asenjo's compensated for client development, despite both of them holding paralegal positions at the law firm.  See **Exhibit Z**.

Other documents that may be maintained within the personnel files of employees of the Glassman Defendants' are also relevant herein, and should be produced. They include: (1) referral/fee sharing agreements, (2) documents relating to Savin Hill and/or Logan Chiropractic, (3) recommendations of medical providers, (4) termination notices for improper conduct, and (5) records related to appearances at either Savin Hill or Logan Chiropractic. The Glassman Defendants should be compelled to produce responsive materials for Request Nos. 3, 13, 16, 20, 29, 35, 99 and 100.

Any privacy concerns regarding the disclosure of records from the personnel files of the Glassman Law Office's employees do not outweigh the relevance of this evidence, and should not provide a basis for withholding this relevant discovery, especially considering there is a Protective Order [Doc. No. 700] in place in this matter. See Guarriello v. Family Endowment Partners, LP, 2015 WL 13694425 (D. Mass. Oct. 30, 2015)(finding that protective order was sufficient to cure any privacy concerns regarding disclosure of relevant employee personnel files); Barella v. Village of Freeport, 296 F.R.D. 102, 106 (E.D.N.Y. 2013) (explaining that "in most cases, a protective order can 'appropriately remedy privacy concerns arising from discovery of personnel records.'")(quoting Duck v. Port Jefferson Sch. Dist., 2008 WL 20179916, at *4 (E.D.N.Y. 2008));and Najjar v. U.S. Dept. of Treasury, 2003 WL 21254772, at *2 (S.D. Ind. Apr. 11, 2003)

**F.     The Glassman Defendants Improperly Attempt to Limit the Scope of Relevant Discovery by Time Period and to the Underlying Claims Underlying**

The Glassman Defendants have improperly limited the time scope of their Responses to the Master RPDs, running contrary to prior orders of this Court with respect to discovery. For the majority of the Plaintiffs' Master RPDs, the Plaintiffs employed a time period for their requests from 2006 to the present, a period of time well within that established by the Court's prior Orders [Doc. Nos. 675 and 692] on discovery, which include years 2005 to the present. The Glassman Defendants assert that they are refusing to produce documents outside the 2008-2016 time period.

<u>See</u> **Exhibit D** at 2. While they have now stated that the searches for e-discovery were not limited to any specific time period, the Glassman Defendants have also indicated it has not searched hard files in storage or searched for records related to requests for documents concerning the Glassman Law Office's routine business practices,[4] which predate the allegations of this action.  Moreover, the Plaintiffs cannot determine if any documents were produced or withheld as their privilege log does not contain a single communication predating 2008, the cutoff date provided in their responses, and the Glassman Defendants have yet to produce the bulk of their documents in this matter.

Regardless, the Court should compel the Glassman Defendants to supplement its overdue Responses and produce responsive documents prior to 2008, where requested, especially where the Glassman Defendants have already recognized the relevance of the category of documents, and have produced limited responsive materials. The Glassman Defendants already litigated the time range of discovery in their Motion to Quash Third-Party Subpoenas [Doc. Nos. 645-46], and where the Court found that the Plaintiffs were entitled to take obtain discovery concerning the inception of the alleged fraudulent conspiracy/RICO enterprise, after the Plaintiffs submitted evidence supporting the inception of the enterprise pre-dated 2008.  [<u>See</u> Doc. No. 675.]  The Glassman Defendants cannot provide any compelling reason why the remainder of discovery should not follow the same time period set by the Court in its prior Order, and any argument that requiring the production of said records would be disproportionate to the needs of the case is completely without merit where the records are within the Glassman Defendants' care, custody or control, and the Glassman Defendants have significant resources at their disposal.

With respect to requests that seek records concerning the Glassman Law Office's routine business practices related to hiring runners to solicit clients, i.e. Request Nos. 42, 43, 46, 50, 52

---

[4] Request Nos. 42, 43, 46, 50, 52 and 65.

and 65, said requests seek relevant information concerning an issue of fact put in dispute by the Glassman Law Office.  The Glassman Defendants have denied any knowledge concerning Soto's alleged actions while employed at the Glassman Law Office.  [Compare Doc. No. 304 at ¶¶43-62; with Doc. No. 633 at ¶¶43-62.]  The Plaintiffs intend to demonstrate the Glassman Defendants' knowledge, in part, by demonstrating that the Glassman Defendants have a long history of paying runners to solicit clients on their behalf, in violation Massachusetts' Law. See M.G.L. c. 266, §111C; and M.G.L. c. 221, §43.

The Glassman Defendants have also attempted to limit discovery to the insurance claims which underlie the allegations of the Plaintiffs' SAC. See Exhibit D at Response Nos. 24, 28, 32, 40, 41, 44, 49, 50, 66, 73, 77, 78, 83, 89, 94, 97 and 98. Though the Glassman Defendants have agreed to produce any record that hits within a record for the searches they will run, even if it is not from an insurance claim underlying the allegations of the SAC, the Plaintiffs have yet to see this put into practice, as the Glassman Defendants have yet to complete their production and their incomplete Privilege Log lacks the detail necessary to make that determination.

The Plaintiffs are entitled to the client files for all claims where the Glassman Defendants represented claimants who treated at Savin Hill or Logan, as these files are relevant.  Evidence that the Glassman Defendants represented a significant amount of claimants of other insurance companies who also treated at Savin Hill and Logan Chiropractic is also evidence of the civil RICO enterprise alleged in the Plaintiffs' SAC.  In fact, the Plaintiffs can only determine the full scope of the RICO enterprise when discovery is had as to all of the cases/insurance claims where the Glassman Defendants represented Savin/Logan claimants.  The Glassman Defendants objections that these records are not relevant since they do not, "impact any material issue in this case or advance any claim" is without merit.  As the Court explained in Thompson v. Dep't of Housing & Urban Development, 199 F.R.D. 168 (D. Md. 2001), "[c]ounsel should be forewarned against taking an overly rigid view of the narrowed scope of discovery.  While the pleadings will

be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer." Id. at 172.  These records are not only relevant but are critical for the Plaintiffs' ability to demonstrate the full scope of the Defendants' fraudulent scheme, and therefore, the Court should compel the Glassman Defendants' to produce all client files for claimants who they represented and who also treated at Savin Hill and Logan.

G.     **The Glassman Law Office's Financial and Tax Records are Relevant and Should Be Produced**

In a number of Requests including Requests Nos. 8, 10, 11, 18, 19, 30, 31, 32, 48 and 93, the Plaintiffs sought the financial records of the Glassman Defendants, including tax returns, bank records and other financial statements.  The Glassman Defendants have objected to producing any of these records, despite the fact that the Court has already Ordered that the Glassman Defendants' finances are directly at issue in this case.  [See Doc. No. 675.]  The Glassman Defendants' objections to producing these records, primarily on the grounds that financial records have been sought and obtained from other sources, including financial institutions are without merit.  The Plaintiffs are entitled to obtain these records directly from the Glassman Defendants, as these records are within the Glassman Defendants' care, custody or control.  See Amoah v. Mckinney, 2016 WL 1698267, at *3 (D. Mass. Apr. 27, 2016)("'The term 'control' includes the legal right of the producing party to obtain documents from other sources upon demand.'")(quoting Quinones v. Univ. of Puerto Rico, 2015 WL 3604152, at *5 n.4 (D.P.R. June 8, 2015)).  The Plaintiffs have incomplete information concerning whether they have the entirety of the Glassman Defendants' financial records, as that knowledge rests solely on the Glassman Defendants.  The fact that the Plaintiffs have obtained some of these records, i.e. those that they know about, from third-party banks should not preclude the Glassman Defendants' from being required to produce their financial records.

The Plaintiffs are also entitled the Glassman Defendants' tax records.  Like their bank information, the Glassman Defendants' tax records are relevant to the allegations in the Plaintiffs' SAC, and the Glassman Defendants' own Amended Counterclaims, which may demonstrate sources of income, interrelatedness of the parties and financial motive for committing the fraud alleged in this action.  See Halperin v. Berlandi, 114 F.R.D. 8, 11 (D. Mass. 1986)(finding tax returns relevant in civil RICO action where records would show full range of payments involved in defendants' wrongdoing); and State Farm Mutual Automobile Insurance Company v. Fayda, 2015 WL 7871037, at *3-5 (S.D.N.Y. Dec. 3, 2015)(finding tax records relevant in Civil RICO action where medical provider allegedly provided medical treatments which were not medically necessary).  The Court in Fayda found the tax returns discoverable even though the tax returns were, "quasi privileged" because a "court will order tax returns and other sensitive financial information produced where it is relevant to the action and there is a compelling need for the documents because the information is not otherwise readily available."  Id. at *4 (citing Rahman v. Smith & Wollensky Restaurant Group, 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007)).  Here, the Glassman Defendants' tax returns are relevant for the same reasons their bank records are relevant, as it may show sources of income, interrelatedness between the parties, determine income amounts by source, may show significant increases in income around the time the RICO enterprise formed, and significant asset purchases.  As such, the Plaintiffs request that the Court compel the production of the Glassman Defendants' financial records, including tax returns.

**H.     The Plaintiffs' are Entitled to Insurance Documents**

The Glassman Defendants have also refused to produce the entirety of the insurance policy identified in their Initial Discovery Disclosures, which they were required to produce without awaiting any request, as well as insurance claim documents.  As such, the Plaintiffs were forced to request the entirety of the Glassman Defendants' insurance policy with Imperium Insurance in Request No. 90. The case-law concerning initial discovery disclosures is clear.  The Plaintiffs are

entitled to the entire insurance policy.  See Robin v. Weeks Marine, Inc., 2017 WL 3311243, at *2-3 (E.D. La. Aug. 3, 2017)(finding that Rule 26(a) requires production of entire insurance policy without redaction);  and Capozzi v. Atwood Oceanics, Inc., 2009 WL 3055321, at *2 (W.D. La. Sept. 20, 2009)("Aramark has cited no authority for its position that it need only disclose the portions of its insurance policy it deems relevant.  Therefore, under the clear mandate of Fed. R. Civ. P. 26(a)(1)(A)(IV), Aramark will be ordered to produce any applicable insurance policies, in whole, immediately.")  In this instance, the Glassman Defendants have failed to produce the entire insurance policy, much less claim documents sought in Request Nos. 90 and 91.  Accordingly, the Court should compel the production of these documents.

I.    **The Glassman Defendants Have Asserted Improper Privilege and Work-Product Objections**

1.    *Inadequate Privilege Log*

Throughout their discovery responses, the Glassman Defendants have asserted improper attorney-client privilege and work-product objections.  Rule 26(b)(5) provides that claims of privilege must be "expressly" made and must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.  On November 1, 2018, the Glassman Defendants' produced a Privilege Log, which is incomplete and lacks the requisite detail described in Rule 26(b)(5).  See **Exhibit Y**.  Notably, after page 48 of 242, the Glassman Defendants provide no information concerning the date, author, sender/recipient, cc or file types in order for there to be any assessment of whether the records contained within the Privilege Log are actually privileged or work-product.  In some instances, the Glassman Defendants give only a file name, and a designation as work-product, but provide no context from which it can actually be determined whether the document was created in anticipation of litigation.  Given the deficiencies in the Glassman Defendants' Privilege Log, the Court should

find that the Glassman Defendants have waived any attorney-client privilege or work-product doctrine protection for those documents the Glassman Defendants have provided insufficient information in order for the Court or the Plaintiffs to make any reasonable determination whether the documents listed in the privilege log are entitled to privilege or work-product protection.  The Court should complete the Glassman Defendants to produce a completed Privilege Log immediately.

> **2.**      ***The Glassman Defendants Have Failed to Affirmatively State a Privilege***

With respect to several of the Plaintiffs' Requests for Production of Documents, including Request Nos. 3, 5, 12, 25, 49, 51, 52, 57, 75, and 77, the Glassman Defendants failed to affirmatively assert any privilege, yet state that they are only producing "non-privileged responsive documents."  The failure of the Glassman Defendants to "expressly" state an objection to these requests on the grounds of privilege should operate as a waiver of any claim of privilege or work-product protection for documents responsive to these requests.  As such, the Plaintiffs respectfully request that the Court order the Glassman Defendants to produce any documents withheld on the basis of privilege or work-product protection with respect to Request Nos. 3, 5, 12, 25, 49, 51, 52, 57, 75 and 77.

> **3.**      ***The Glassman Defendants Have Improperly Asserted Attorney-Client Privilege Throughout their Discovery Responses***

In their Responses to the Master RPDs, the Glassman Defendants have asserted attorney-client privilege over documents and information which are clearly not privileged.  In Massachusetts, the attorney-client privilege is appropriate "'(1) [w]here legal advice of any kind is sought (2) from  a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.'")  Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 97 (D.

Mass. 2002)(quoting United States v. Mass. Inst. Of Tech., 129 F.3d 681, 684 (1ˢᵗ Cir. 1997)).

Request Nos. 27, 33, 34, 38, 74, 82, 83, and 85 all seek documents which cannot by definition fall

within the scope of the attorney-client privilege, yet the Glassman Defendants have asserted said

privilege in response thereto.  The Plaintiffs request that the Court compel the Glassman

Defendants to produce any records withheld from their production based on these improper

assertions of attorney-client privilege.

### 4. *The Glassman Defendants Have Improperly Asserted Work-Product Protection*

In Response Nos. 27, 28, and 78 to the Plaintiffs' Master RPDs, the Glassman Defendants

have also improperly asserted work-product protection for documents which do not fall within the

protections provided by Rule 34.  Internal policies and procedures by definition are not work-

product since they are not prepared in anticipation of any litigation.  It is clear that the Glassman

Defendants have instead used attorney-client privilege and work-product objections in an attempt

to shield documents which the Glassman Defendants' merely wish to withhold from discovery.

Since there is no basis for the work-product objections asserted *supra*, the Plaintiffs request that

the Court compel the Glassman Defendants to produce all responsive documents in response to

Request Nos. 27, 28, and 78.

## V.   CONCLUSION

For the above-state reasons, the Plaintiffs/Defendants-in-Counterclaim, Metropolitan

Property and Casualty Insurance Company and The Commerce Insurance Company respectfully

request that this Honorable Court compel the Glassman Defendants to provide complete responses

to the Plaintiffs' Master RPDs as set forth *supra*.  The Plaintiffs request any further relief the Court

deems just and appropriate.[5]

---

[5] Should the Court Order the Glassman Defendants to produce outstanding documents and supplemental documentation past the Court's written discovery deadline, the Plaintiffs respectfully reserve their right to seek leave from this Honorable Court to modify the Scheduling Order to expand the time period for fact discovery.

Respectfully submitted,
By the Plaintiffs/
Defendants-in-Counterclaim,
Metropolitan Property and Casualty
Insurance Company, and
The Commerce Insurance Company,
By their attorneys,

/s/ Nicholas J. Pompeo
Glenda H. Ganem
BBO No. 564374
gganem@mhg-pc.com
Peter R. Houston
phouston@mhg-pc.com
BBO No. 681915
Nicholas J. Pompeo
npompeo@mhg-pc.com
BBO No. 682361
McGovern, Houston & Ganem, P.C.
21 Merchants Row, 4th Floor
Boston, MA 02109
(617) 723-1444

Date:   November 15, 2018

## CERTIFICATE PURSUANT TO LOCAL RULES 7.1 and 37.1

I, Nicholas J. Pompeo, Esq., attorney for the Plaintiffs/Defendants-in-Counterclaim, Metropolitan Property and Casualty Insurance Company and the Commerce Insurance Company, certify that the Plaintiffs have conferred with counsel for the Defendant/Plaintiff-in-Counterclaim, Law Office of Jeffrey S. Glassman, LLC, and Defendant, Jeffrey S. Glassman, extensively over numerous months in good faith effort to resolve or narrow the issues in dispute, and the Parties have narrowed the issues in dispute to the furthest possible extent, but have been unable to reach an agreement to the issues set forth in this Memorandum of Law.

/s/ Nicholas J. Pompeo
Date:   November 15, 2018                Nicholas J. Pompeo, Esq.

**CERTIFICATE OF SERVICE**

I, Nicholas J. Pompeo, Esq., attorney for the Plaintiffs/Defendants-in-Counterclaim, Metropolitan Property and Casualty Insurance Company and The Commerce Insurance Company, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and/or served in compliance with the Fed.R.Civ.P. The Plaintiffs have served the following individuals who are not ECF filers via first-class mail, postage pre-paid.

Mr. Tony Ramos                                           Mr. Kenneth Ramos
22 Childs Street, Apt. 2                                  2132 Crane Brook Way
Lynn, MA 01905                                           Peabody, MA 01960

Metro Coach, Inc.
c/o Mr. Tony Ramos
22 Childs Street, Apt. 2
Lynn, MA 01905

Date:   November 15, 2018                    /s/ Nicholas J. Pompeo_____
                                             Nicholas J. Pompeo, Esq.