UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:15-CV-12939-LTS

| | |
|---|---|
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, and THE COMMERCE INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Plaintiffs and Counterclaim-Defendants, | )<br>) |
| v. | )<br>) |
| SAVIN HILL FAMILY CHIROPRACTIC, INC., LOGAN CHIROPRACTIC, INC., and, LAW OFFICES OF JEFFREY S. GLASSMAN, LLC, | )<br>)<br>)<br>) |
| Defendants and Counterclaim-Plaintiffs, | )<br>) |
| and | )<br>) |
| METRO COACH, INC., JEFFREY S. GLASSMAN, ESQ., BRANDY SOTO, HEGER ASENJO, KENNETH RAMOS, TONY RAMOS, WILLIAM HERNANDEZ, RICHRAD MCGOVERN, D.C., MARSELLA IMONTI, D.C., ALLISON ROBIN, D.C., CHARLES RONCHETTI, D.C., TARA O'DESKY, D.C., ARISMENDY RAMOS, MAXIMO SOTO, APRIL STEWART, TANISHA RAMOS, and KARLA MENDOZA, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**OPPOSITION BY DEFENDANT LAW OFFICES OF JEFFREY S. GLASSMAN, LLC TO THE MOTION BY WITNESS MCGOVERN, HOUSTON & GANEM, P.C. (D.E. 928) TO QUASH THE SUBPOENA DATED MAY 14, 2018, AND CROSS-MOTION TO ENFORCE COMPLIANCE WITH THE SUBPOENA**

Defendant Law Offices of Jeffrey S. Glassman, LLC (the "GLO") respectfully submits

this opposition to the motion by the McGovern, Houston & Ganem ("MHG") firm to quash the

subpoena dated May 14, 2018 (D.E. 928-1) (the "Subpoena") and cross-moves to enforce the Subpoena. In support of this opposition and cross-motion, the GLO states as follows:

1. Previously, Plaintiffs sought bifurcation of their claims from the GLO's counterclaim, asserting that MHG's lawyers are witnesses to many of the underlying claims and to the "cooperation"/"non-cooperation" agreements that are the subject of the counterclaim. (D.E. 839, 840 (Plaintiffs' memorandum in support of bifurcation) at 12-15 ("…[E]very defendant would be entitled to the Plaintiffs' attorney-client privileged and work-product material if this litigation were to proceed without Count V being bifurcated and stayed.") & 17 ("Any discovery on the Plaintiffs' defense of 'advice of counsel' would necessarily require that these legal opinions be disclosed, and presumably, that the undersigned testify at a deposition, if not trial.") Plaintiffs have thus indicated that, unlike the typical case, here their counsel of record may testify at trial because they played an active role in many of the underlying events.

2. Even putting aside privilege waiver issues, as described in more detail below, the GLO seeks to enforce the Subpoena, *as narrowed during discussions and then later in writing on December 10, 2018*, in part because MHG is expected to possess relevant evidence that is not in the Plaintiffs' files and in part because Plaintiffs' document productions have been untimely and unreliable. *See*, *infra*, ¶ 9.

3. MHG's motion ignores the GLO's written position narrowing the three categories in the Subpoena consistent with this Court's rulings in the Order dated November 28, 2018 (D.E. 891). Instead, MHG devotes 19 pages in its memorandum, in support of its motion to quash, addressing the original, broader version of the Subpoena.

4. Paragraph 9 of the Declaration of Peter R. Houston, Esq. ("Houston Declaration") acknowledges receipt of an email dated December 10, 2018, from the GLO's counsel but

describes it only as follows:

> GPC and counsel for the Glassman Law Office never conference (sic) any Motion to Enforce the Subpoena served on MHG PC. However, on December 10, 2018, at 6:51 p.m., I receive (sic) an email from its counsel indicating that they intended to file a Motion to Enforce the Subpoena (See Exhibit F)

The Houston Declaration and MHG's memorandum ignore several prior discussions and the remainder of the content of the December 10th email from the GLO's counsel that appears as Exhibit F to that Declaration.

     5.     The December 10th email at Exhibit F to the Houston Declaration actually confirmed prior discussions in which the GLO agreed to narrow the Subpoena, consistent with this Court's rulings in an Order granting in part and denying in part a motion to compel following its *in camera* inspection of certain claim files (D.E. 891). Consistent with that Order, the December 10th email from the GLO's counsel (D.E. 928-2 at 32) stated:

> As we discussed last week, we intend to seek to enforce the subpoena that was served on your firm. You informed me that your firm has not searched its own emails and obviously has not produced anything.
> Based on the Court rulings to date (subject to rulings that could increase the scope of discovery), we need from your firm:
>
>   1)    All bills and time entries related to work on the (900+) claim files that we have identified at issue involving Savin or Logan patients and Met or Commerce as a relevant carrier (which amounts to a subset of the information that you communicated with your clients);
>   2)    All communications with opposing counsel in those cases; and
>   3)    All documents concerning payments, agreements or terms of engagement with Frustaci and Cuomo, in any cases that you have had involving them.
>
> I know you have taken the position that you do not need to produce any of these materials (and have still not produced any of them despite months having passed since service of the subpoena), but we still disagree with your position. This issue is ripe. Obviously if the Court grants reconsideration on at-issue waiver issues, we may expand the scope of what we seek.
> We plan to file the motion to compel your firm either tomorrow or Wednesday.

Rather than reply or ask for another opportunity to address these narrowed categories, MHG filed its present motion to quash.

6. Oddly, MHG's motion to quash entirely ignores how the Subpoena was narrowed. Contemplating an at-issue waiver argument, the original scope of the Subpoena broadly sought (1) communications between MHG and either of the Plaintiffs about claim files; (2) communications with opposing counsel; and (3) documents concerning Frustaci or Cuomo. Because a portion of these categories gave rise to privilege waiver issues, the parties agreed to hold off on motion practice concerning them until the Court's ruling on at-issue waiver.

7. Given the ruling by the Court that the allegations in this case did not warrant (at least by themselves) a finding of at-issue waiver, the GLO offered a much narrower scope of these categories, at least for now. The GLO narrowed communications with clients to bills and time entries (showing timekeeper and hours, while presumably redacting privileged information about the legal services performed or legal advice to the client). The GLO narrowed communications with opposing counsel to those related to the Savin or Logan claims at issue. The GLO further narrowed the documents concerning Frustaci or Cuomo to those involving the terms of their engagements (or the engagements of their companies) and payments to them.

8. The narrowed categories, as reflected above, are clearly relevant and non-privileged, consistent with prior rulings of the Court. MHG has failed to show any specific burdens they face gathering and producing these categories *as narrowed in writing*. Indeed, any such objection really goes to how MHG conducts its search, not to whether it conduct a search at all. In this sense, MHG's memorandum in support of its motion is virtually a nullity because it did not address what is actually at issue.

9. As this Court is aware, the GLO has diligently sought a usable production of

claim file information from Plaintiffs, but has been stymied in several ways. First, Plaintiffs attempted to produce a paper copy of certain claim files that they printed out for this litigation. Second, they tried to incorporate in the e-discovery protocol an exception that would have prevented them from having to produce such information electronically. Third, they produced claim files filled with pages out of sequence and missing document boundaries, making them unusable. Fourth, they argued that a solution was not available and refused to allow their vendor to participate in meet and confer efforts to solve the issues. Fifth, after Court-ordered meet and confer efforts revealed a relatively inexpensive partial fix by unitizing the documents, they claimed they could not perform the fix because doing so would somehow violate the e-discovery protocol (even though the limited metadata that would have been lost from the other production would remain preserved within the earlier production). Sixth, they argued that the GLO's vendor should perform the unitization fix, even though that vendor lacked access to original sources of the data and its manipulation of files could have created evidentiary issues. Seventh, Plaintiffs offered and then withdrew the offer of access through a Trexo terminal to original claim files to supplement the partial unitization fix, and since then have tried to avoid and delay implementation of this form of access. Eighth, as this Court observed in one of its most recent rulings based on recent email exchanges: "Despite several orders requiring the production of claim files since July 2017, the Plaintiffs still have not completed their production of such files, *which they have unilaterally limited to what they deem to be the 'subject claims' in this case*." (D.E. 911 at 1) (emphasis added).

10.    With this backdrop, the GLO wants to obtain discovery of the items contemplated by the November 28, 2018 Order, but which might reside with Plaintiffs' law firms rather than in claim files. There are efficient and reasonable ways for MHG to comply with the Subpoena as

narrowed by agreement:

    a) With respect to bills and time entries, MHG can review its list of claim files and the list of files that the GLO provided, and then run electronic searches in its accounting records for the bills and entries that it sent to Plaintiffs.

    b) With respect to emails with opposing counsel (other than the GLO, which the GLO presumably possesses), Plaintiffs already have the list of several dozen attorneys or law firms other than the GLO who worked on pertinent insurance disputes related to Plaintiffs' claim or on the "cooperation"/"non-cooperation" agreements related to the GLO's counterclaim. Simple electronic searches of mailboxes would reveal these (relatively informal) communications with these opposing counsel, which may not have made it into claim files and which are certainly not privileged.

    c) With respect to communications with Frustaci and Cuomo concerning the terms of their engagement and/or payments made to them, simple electronic searches in accounting records and pertinent mailboxes would be expected. Obviously, Plaintiffs possess the pertinent company names and email addresses for these witnesses to facilitate such a search.

11. MHG has not demonstrated any significant burden, let alone an undue burden, proceeding in such a reasonable manner to respond to the Subpoena and, as appropriate, expanding its search reasonably depending on what it finds when doing so. There is a certain irony in the recitation of burdens in the Houston Declaration: "MHG PC estimates that it will require two (2) attorneys, working eight (8) hour days, for no less than two (2) months, to complete a review of approximately 4,800 files." (D.E. 928-2 at 5 ¶ 33). Yet Plaintiffs have imposed such burdens and seek to impose multiples of such burdens on the GLO.

12. The GLO has targeted its requests by narrowing them consistent with the Court's rulings. Each of the narrowed categories of materials consists of relevant and critical information. At trial, the GLO expects to show that MHG and Plaintiffs possessed more information than did the GLO concerning possible flags about billing problems at Savin and Logan, yet MHG helped Plaintiffs resolve many insurance claims for which they now seek damages. The early involvement of MHG, reflected in its bills and time entries, relate to this

theory of defense, as well as to statute of limitations issues and defenses based on Plaintiffs' burden on their claims to show "reliance" and "reasonable reliance" on the bills at issue. Likewise, communications with opposing counsel concerning the cases and allegedly wrongful agreements in which MHG participated are relevant to these defenses and the GLO's counterclaim. Also, the communications with Frustaci and Cuomo about the terms of their engagement and payments to them bear on their bias, as key witnesses.

13. Indeed, the Court has found each of these items relevant and discoverable within claim files (D.E. 891). Through the Subpoena, the GLO merely seeks to gather these relevant materials to the extent they can be found at the law firm instead of within claim files.

14. The case law cited by MHG is inapposite because the legal principles are relied upon to address the broad language of the Subpoena before the narrowing of it following this Court's rulings in the November 28, 2018 Order, which should amount to law of the case (subject to the pending motion for reconsideration or other developments that may constitute an express or at-issue waiver of privilege by Plaintiffs).

**Conclusion**

Based on the foregoing, this Court should deny MHG's motion to quash and, instead, grant the GLO's cross-motion to enforce the Subpoena as narrowed above.

Dated:  December 12, 2018

Respectfully submitted,
LAW OFFICES OF JEFFREY S. GLASSMAN
By: /s/ *Barry S. Pollack*
Barry S. Pollack  BBO #642064
Peter J. Duffy  BBO #566682
POLLACK SOLOMON DUFFY LLP
133 Federal Street, Suite 902
Boston, MA 02110
617-439-9800 (Tel)
617-960-0490 (Fax)
bpollack@psdfirm.com

## CERTIFICATE OF SERVICE

      I hereby certify that on December 12, 2018, a true copy of the above-document, filed through the ECF system, will be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing.

                                                /s/ *Barry S. Pollack*
                                                Barry S. Pollack