UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:15-CV-12939-LTS

| | |
|---|---|
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, and THE COMMERCE INSURANCE COMPANY, </br></br>Plaintiffs and Counterclaim-Defendants, </br></br>v. </br></br>SAVIN HILL FAMILY CHIROPRACTIC, INC., LOGAN CHIROPRACTIC, INC., and, LAW OFFICES OF JEFFREY S. GLASSMAN, LLC, </br></br>Defendants and Counterclaim-Plaintiffs, et al. | **LEAVE TO FILE GRANTED ON AUGUST 29, 2018 (D.E. 779)** |

**REPLY BY DEFENDANT LAW OFFICES OF JEFFREY S. GLASSMAN, LLC AND JEFFREY S. GLASSMAN, LLC, IN SUPPORT OF THEIR MOTION TO COMPEL**

Defendants Jeffrey S. Glassman and Law Offices of Jeffrey S. Glassman, LLC (collectively the "GLO") respectfully submit this reply in support of their motion to compel.

**A.    Missing Claim Files**

1.    Plaintiffs continue to make inconsistent statements about the scope of claim files that they have produced. They argue they have supplemented claim files this past week or so, and supposedly now have completed their production. *See* Pl. Opp. (D.E. 924) at 2. Without addressing the missing categories, Plaintiffs conclude in their opposition that, as to this ground, the GLO's motion is therefore moot. Separate from their opposition, Plaintiffs' counsel has acknowledged that this recent supplement consisted only of claim files that have arisen *after* the filing of this action, not files within the missing categories.

2.    Specifically, Plaintiffs' counsel has admitted in emails and during meet-and-confer efforts that, unless Plaintiffs were also PIP carriers on the same claims, they did not

produce bodily injury claim files for those claimants, even if they treated at Savin or Logan, if they incurred more than $2,000 in medical bills from other providers (thereby meeting the statutory tort threshold for bringing bodily injury claims in court). Plaintiffs attempted to justify withholding these files because they sought no damages concerning those bodily injury claims.

3. Plaintiffs have also withheld claim files related to subrogation claims by them against other insurance carriers, in which Plaintiffs treated Savin and/or Logan bills as valid. Counsel for Plaintiffs has stated that they produced checks received on such subrogation claims and have credited those in their damages calculation. Plaintiffs' counsel has further stated that there is not much supporting material for those claims. None of these responses excuses withholding this information. These files are obviously not just relevant to damages, and therefore not just covered by the production of checks, because it is critically relevant that Plaintiffs treated Savin and Logan bills as valid despite their internal investigations. These items are relevant as, among other things, potential admissions of the validity of bills, the appearance of validity of bills, and to show that a party such as the GLO, lacking awareness of what Plaintiffs saw as flags, could reasonably treat them as valid.

4. As set forth in the moving papers, the GLO specifically requested all the claim files involving patients who treated at Savin or Logan. *See* GLO Mem. (D.E. 880) at 2. The GLO requested all such files in Request Nos. 53 and 54 of the Master Set of Document Requests. In their opposition, Plaintiffs cannot point to pertinent objections by them on these requests. Plaintiffs' opposition does not try to label these files irrelevant. Instead, they engage in semantics exercises and make inconsistent statements in support of arguments that they have done enough. In no way, however, did these requests carve out exceptions either for those claim files in which providers other than Savin and Logan charged more than $2,000 or for subrogation claims in

which Plaintiffs treated Savin or Logan bills as valid. Plaintiffs try to downplay the significance of this issue by arguing that the GLO "raised the issue with respect to *a few* claim files they believed remained outstanding that are not within the scope of" Plaintiffs' definition of "Subject Claims." Pl. Opp. (D.E. 924) at 2 (emphasis added).

5.     Plaintiffs are inaccurate when they argue that only *a few* claim files have been withheld. This Court ordered Plaintiffs to identify, for each claimant, any lawyer or law firm who represented them. In a supplemental, verified response Plaintiffs provided a list that included, in total for both of them, 658 files in which the GLO was listed as a law firm. In response to interrogatories, the GLO provided a list of its total cases involving patients who treated at Savin or Logan who made claims against one or both of the Plaintiffs, which contained over 1,000 unique client names. The real disparity, of far more than 300 clients/claimants, consists of more than just a few missing files.

6.     Plaintiffs' obfuscation of claim files delayed the discovery of this disparity and might still hide the categories of missing information. As this Court is aware, the GLO has diligently sought a usable production of claim file information from Plaintiffs but has been stymied in several ways. First, Plaintiffs attempted to produce a paper copy of certain claim files that they printed out for this litigation. Second, they tried to incorporate in the e-discovery protocol an exception that would have prevented them from having to produce such information electronically. Third, they produced claim files filled with pages out of sequence and missing document boundaries, making them unusable. Fourth, they argued that a solution was not available and refused to allow their vendor to participate in meet and confer efforts to solve the issues. Fifth, after Court-ordered meet and confer efforts revealed a relatively inexpensive partial fix by unitizing the documents, they claimed they could not perform the fix because doing so

would somehow violate the e-discovery protocol (even though any limited metadata that would have been lost would remain preserved within the earlier production). Sixth, they argued that the GLO's vendor should perform the unitization fix, even though that vendor lacked access to original sources of the data and its manipulation of files could have created evidentiary issues. Seventh, Plaintiffs offered and then withdrew the offer of access through a Trexo terminal to original claim files to supplement the partial unitization fix, and since then have tried to avoid and delay implementation of this form of access.

7. As this Court observed in a recent ruling: "Despite several orders requiring the production of claim files since July 2017, the Plaintiffs still have not completed their production of such files, *which they have unilaterally limited to what they deem to be the 'subject claims' in this case*." (D.E. 911 at 1) (emphasis added). At this late stage of the case, this Court should compel the full production of all responsive claim files, in a unitized form, regardless of Plaintiffs' unilateral limitation on what they deem to be the "subject claims" in this case.

**First Boston Billing**

8. Plaintiffs seek another bite at the apple to limit what they produce in terms of documents concerning First Boston Billing. They argue repeatedly how irrelevant First Boston Billing is in this case, yet they demanded that the GLO search for "First Boston" and "FBB" (before the GLO even briefed any defense based on the outside billing company's role in the matter). Obviously documents about the billing company are relevant. This Court already found as much when ordering that Plaintiffs use those same search terms that they demanded.

9. Plaintiffs' semantics games on this topic involve their effort to limit their production by merely responding with what they deem "responsive, non-privileged documents related to Request for Production Nos. 14, 20 and 32, which called for documents, concerning

First Boston Billing, pursuant to this Court's Order on the Glassman Defendants' first Motion to Compel. [Doc. No. 796 at 5-6]," Pl. Mem. at 5.

    10.    As detailed in the GLO's opening papers, when Plaintiffs interpreted this Court's ruling narrowly, and continued to claim that documents about problems with First Boston Billing was generally irrelevant, the GLO served supplemental requests seeking as follows:

> REQUEST FOR PRODUCTION NO. 3
> All documents concerning SIU transfer or assignment lists concerning in whole or in part First Boston Billing and/or any of the defendants.
> REQUEST FOR PRODUCTION NO. 4
> All documents concerning inaccurate or otherwise improper billing by or involving First Boston Billing, including but not limited to correspondence, emails, notices, arbitration filings, and/or pleadings.
> REQUEST FOR PRODUCTION NO. 13
> All documents concerning communications by Metropolitan and/or Commerce with each other before their entry into a joint defense agreement in this action or with other insurance carriers concerning any of the defendants in this matter and/or First Boston Billing.

GLO Mem. (D.E. 880) at 3. Plaintiffs argue that portions of these items contain privileged matters, but they have not produced non-privileged portions unless they referred to one of their "Subject Claims." As a result, the GLO has been deprived of those non-privileged documents describing or criticizing First Boston Billing. In other words, Plaintiffs conducted requisite searches, but did not make adequate productions because of the screening that they used to determine what they viewed as responsive.

    11.    Plaintiffs' renewed factual arguments about First Boston Billing are red herrings. The GLO agrees that, as it turns out, First Boston Billing may not have performed the quality control function that would have been expected. That chiropractors may have, at least at times, selected billing codes is, however, irrelevant at the discovery stage. One critical point is that the GLO did not select billing codes. Plaintiffs cannot even show that the GLO knew First Boston Billing may have suffered from deficiencies

5

in their work or performed less quality control functions than is typical for outside billing companies. Indeed, the email they attach suggests nothing more than the GLO commenting politely about someone at First Boston. This is at best a classic fact issue about the significance of First Boston Billing's role, particularly since lawyers at the GLO would have known little if anything about First Boston Billing's quality of performance. There is no reason to revisit the finding of relevance about First Boston Billing documents. This Court should compel a complete production of them.

**Missing IMEs and IMRs**

12.     Plaintiffs have represented that they supplemented their production recently with missing IMEs and IMRs of several doctors. Despite having previously represented that they possessed IMEs or IMRs for Dr. Vincent Cristiani, they have not represented making such a supplement, nor has the GLO been able to find any IMEs or IMRs by him. Significantly, in nearly their entirety, the late-produced IMEs and IMRs substantiated Savin's and Logan's treatments and bills. This Court should compel a complete supplementation of IMEs and IMRs, with no subjective exceptions.

**Case Evaluation Worksheets and IME Worksheets**

13.     Plaintiffs admit that they have withheld the entirety of Case Evaluation Worksheets and IME worksheets, rather than identifying aspects of them reflecting privileged material or work product. Plaintiffs' descriptions of these documents make clear that they are not entirely, if at all, privileged. Plaintiffs have not even represented that any, let alone all, Case Evaluation Worksheets and IME/IMR Worksheets were prepared after referrals to SIU or a decision to deny a claim. Despite a conclusory suggestion to the contrary in their papers, as described by Plaintiffs, the Case Evaluation

Worksheets appear much more like the Explanations of Review that this Court ordered produced, than like SIU notes or reports that this Court allowed Plaintiffs to withhold (at least for now). After all, just as with other insurance claims, when faced with bodily injury claims, insurance carriers must perform a routine investigation, under Chapter 176D and otherwise, pay claims promptly when liability is reasonably clear. Again as described by Plaintiffs, injury analyses, IMEs and IMRs would inherently occur in claim reviews regardless of whether the claim would be disputed or an SIU referral made. This sort of information can be routinely uncovered in state court insurance coverage litigations, as reflected in Exhibit A, which contains such an evaluation worksheet (redacted of the claimant's identifiers) and a response to requests served by Commerce (redacted of case name and docket number identifiers). Hence, this Court should compel the production of these materials because Plaintiffs have fallen far shy of meeting their burden of establishing any privilege.

**Missing Alerts**

14. Plaintiffs assert that they "have produced all alerts," which contradicts what they stated during meet-and-confer efforts. Prior to this motion, Plaintiffs argued that there were no such alerts. The documents within their claim files merely refer to "alerts," but are not the "alerts" themselves. In essence, Plaintiffs are hiding what the "alerts" are or what form they take that led to remarks about them in documents that have been found. Plaintiffs should be forced to transparently identify and produce these alerts.

**Canceled Policies and Collection of Premiums**

15. Plaintiffs make speculative factual arguments about what might have occurred for some policy-holders who could be moved to the Massachusetts Insurance

Risk Pool. Then, they make various arguments about why premium collection in those cases would be irrelevant in their view. Now is not the stage for resolving disputed factual arguments. The veracity of Plaintiffs' views about fraud can be reflected in the absence of terminations and, instead, the maintenance of policies. Likewise, the unreasonableness of responses to what they claim were flags can be reflected in the absence of terminations. The GLO is also entitled to present mitigation issues and amounts, which Plaintiffs ignore entirely in their opposition. Paying claims, sometimes in extremely small amounts, rather than terminating policies for suspected fraud, may have made Plaintiffs money in additional premium rather than cost them money by ending the relationship without paying the claim. Plaintiffs have failed to show any burden, let alone an undue one, in producing these relevant materials, nor any basis to withhold them.

**Refusal to Respond to Supplemental Interrogatories 1, 2, 4 and 5**

16. Plaintiffs argue the irrelevance of four interrogatories as a justification for their refusal to respond at all to them. With respect to Interrogatory 1, they repeat their argument, which has failed before, that First Boston Billing is irrelevant in this case. They claim anew they do not know exactly what "involvement" means and, if broadly construed, reaches events with doctors they do not know. Plaintiffs should be required to provide, however, the available answers from knowledgeable people working for them.

17. With respect to Interrogatory 2, they withhold information about the past use by them of Frustaci and Cuomo in particular litigations and arbitrations, even though they have played roles beyond their roles as expert witnesses in this case. This interrogatory does not seek expert discovery. Even if they were not called upon as expert witnesses in this case, Plaintiffs' reliance on them before this litigation to justify the

denial of insurance claims makes them relevant witnesses. The information sought is neither privileged nor work product. Plaintiffs do not argue that responding would be unduly burdensome. This Court has already ordered the production of payment information pertaining to Frustaci and Cuomo. This interrogatory seeks similar probative information. Plaintiffs should therefore be compelled to respond to Interrogatory 2.

18. With respect to Interrogatory 4, Plaintiffs argue it is irrelevant whether chiropractors other than the Chiropractic Defendants used billing code 97110 the same way as the bills at issue did here, charging for therapeutic exercises or the like by an unlicensed assistant. It is difficult to understand how that could be irrelevant. The GLO expects the evidence at trial will show routine use in the industry of 97110 the way the bills used it here. The fact that Plaintiffs have access to such information can tend to show that the most frequent billing dispute in this case is just that, a billing dispute, not a large-scale racketeering fraud. The information is neither privileged nor work product. Plaintiffs have not identified any burden let alone an undue burden. To the extent they argue about the lack of a time period limitation, the interrogatory can be imposed for information about the same period Plaintiffs placed at issue in this case about the use of that billing code. Accordingly, this Court should compel a response.

19. With respect to Interrogatory 5, Plaintiffs add a privilege objection to the mere request for an identification of "each lawyer on which Metropolitan and/or Commerce relied for any advice concerning the approval, denial and/or settlement of a claim" at issue. Again, it is difficult to understand how such information could be irrelevant. It is equally difficult to understand how the identity of lawyers could be privileged. Plaintiffs argue that the actual advice would be privileged and/or work

product, but the interrogatory does not seek disclosure of that advice. The requested information is of the nature that would appear on a privilege log. This non-privileged information appears particularly relevant given Plaintiffs' representations in filings about their intention to waive attorney-client privilege. (D.E. 839, 840 (Plaintiffs' brief in support of bifurcation) at 12-15 ("…[E]very defendant would be entitled to the Plaintiffs' attorney-client privileged and work-product material if this litigation were to proceed without Count V being bifurcated and stayed.") & 17 ("Any discovery on the Plaintiffs' defense of 'advice of counsel' would necessarily require that these legal opinions be disclosed, and presumably, that the undersigned testify at a deposition, if not trial.")

20.     Even without such a waiver, however, the information helps place professionals in the mix who had more information about the ongoing SIU investigations yet still went ahead and participated in the settlement of claims. Each of these lawyers would have participated in relevant, non-privileged communications with the dozens of lawyers who worked on "Subject Claims," and therefore possess further discoverable information. This Court should compel Plaintiffs to respond.

## Conclusion

Based on the foregoing, this Court should grant the GLO's motion to compel.

| | |
|---|---|
| Dated:  December 17, 2018 | Respectfully submitted,<br>LAW OFFICES OF JEFFREY S. GLASSMAN<br>By: /s/ *Barry S. Pollack*<br>Barry S. Pollack  BBO #642064<br>Peter J. Duffy  BBO #566682<br>POLLACK SOLOMON DUFFY LLP<br>133 Federal Street, Suite 902<br>Boston, MA 02110<br>617-439-9800 (Tel)<br>617-960-0490 (Fax)<br>bpollack@psdfirm.com |

**CERTIFICATE OF SERVICE**

   I hereby certify that on December 17, 2018, a true copy of the above-document, filed through the ECF system, will be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing.

              /s/ *Barry S. Pollack*
              Barry S. Pollack