UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:15-CV-12939-LTS

| | |
|---|---|
| METROPOLITAN PROPERTY AND | ) |
| CASUALTY INSURANCE COMPANY, and | ) |
| THE COMMERCE INSURANCE COMPANY, | ) |
|     Plaintiffs and Counterclaim-Defendants, | ) |
|        v. | ) |
| SAVIN HILL FAMILY CHIROPRACTIC, INC., | ) |
| LOGAN CHIROPRACTIC, INC., and, | ) |
| LAW OFFICES OF JEFFREY S. GLASSMAN, LLC, | ) |
|     Defendants and Counterclaim-Plaintiffs, | ) |
|     and | ) |
| METRO COACH, INC., | ) |
| JEFFREY S. GLASSMAN, ESQ., | ) |
| BRANDY SOTO, HEGER ASENJO, | ) |
| KENNETH RAMOS, TONY RAMOS, | ) |
| WILLIAM HERNANDEZ, | ) |
| RICHRAD MCGOVERN, D.C., | ) |
| MARSELLA IMONTI, D.C., ALLISON ROBIN, D.C., | ) |
| CHARLES RONCHETTI, D.C., TARA O'DESKY, D.C., | ) |
| ARISMENDY RAMOS, MAXIMO SOTO, | ) |
| APRIL STEWART, TANISHA RAMOS, and | ) |
| KARLA MENDOZA, | ) |
|     Defendants. | ) |

**OPPOSITION BY THE LAW OFFICES OF JEFFREY S. GLASSMAN, LLC TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY IN FURTHER
OPPOSITION TO THE LAW FIRM'S MOTION FOR PARTIAL RECONSIDERATION**

Defendants Law Offices of Jeffrey S. Glassman, LLC (the "GLO") respectfully submits

this opposition to Plaintiffs' motion for leave to file a sur-reply in further opposition to the

GLO's motion for partial reconsideration of the Order dated November 28, 2018 (D.E. 891), and

states in support of this opposition as follows:

1.      Despite the volume of entries on the docket, recently Plaintiffs have been seeking

to file second replies and sur-replies outside of normal practice in this jurisdiction. Here,

Plaintiffs seek a sur-reply by raising a meritless argument that ignores the waiver of privilege

when parties submit otherwise privileged material to third parties, including government or

quasi-government agencies. Apparently, Plaintiffs did not even attempt to research this issue

before filing this motion, let alone to distinguish controlling precedent when filing their motion.

2.      For some time, there was an apparent split in the Circuits about whether limited

disclosures of privileged material to government or quasi-government agencies could be deemed

a waiver. The First Circuit has rejected the "limited waiver rule" and discounted the possibility

that any genuine split still exists.

3.      As this Court has explained:

> As the court stated in the March 17 Order, it considered the "limited waiver rule"
> issue settled in this Circuit by *United States v. Massachusetts Institute of
> Technology*, 129 F.3d 681 (1st Cir.1997) (MIT ). In *MIT*, the University made
> disclosures to the Defense Contract Audit Agency (DCAA), a potential adversary,
> and then objected when some or all of the same documents were sought by the
> Internal Revenue Service (IRS). In rejecting the University's claim of a selective
> waiver of the attorney-client privilege, the First Circuit observed that the law had
> carved out only a small "magic circle" of others with whom information may be
> shared without the loss of the privilege, specifically those persons who are
> necessary to facilitate the consultation between lawyer and client, such as
> secretaries, interpreters and counsel for co-defendants, and persons closely related
> to the client whose presence is appropriate, if perhaps not vital. But, "where the
> client chooses to share communications outside this magic circle, the courts have
> usually refused to extend the privilege." *Id*. at 684.

*In re Lupron Marketing and Sales Practices Litigation*, 313 F.Supp.2d 8, 9–10 (D. Mass. 2004).

4.      Courts have further confirmed than any apparent split among the Circuits has

fallen by the wayside:

> All of this might be besides the point if there were, as TAP suggests, a blazing
> split among the Circuits as to the proper answer to the question. *Rodriguez v.
> Banco Central*, 917 F.2d 664, 665 (1st Cir. 1990). Despite TAP's best efforts, it is
> simply unable to manufacture one. As the Court of Appeals in *MIT* observed,
> every Circuit but the Eighth that has addressed the issue has ruled that voluntary
> disclosures to the government in an enforcement context destroy the attorney-
> client privilege. *MIT*, 129 F.3d at 685. *See In re Columbia/HCA Healthcare Corp.
> Billing Practices Litig*., 293 F.3d 289, 304 (6th Cir. 2002); *Genentech, Inc. v.
> United States Internat'l Trade Comm'n*, 122 F.3d 1409, 1417 (Fed.Cir.1997); *In*

*re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993); *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424–1426 (3d Cir.1991); *In re Martin Marietta Corp.*, 856 F.2d 619, 623–624 (4th Cir.1988); *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C.Cir.1981). TAP consequently is left with the seemly support of a "celebrated and controversial" twenty-five year old opinion, *Diversified Indus. v. Meredith*, 572 F.2d 596, 611 (8th Cir.1977) (en banc), bringing forth a doctrine which, as the First Circuit observed in *MIT*, 129 F.3d at 685, has but a paragraph of analysis as its birthright, no Circuit siblings, and moreover, is probably an orphan in its own home. *See Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846–847 (8th Cir. 1988).

*In re Lupron Marketing and Sales Practices Litigation*, 313 F.Supp.2d 8, 12–13 (D. Mass. 2004)

5.      Besides, at most Plaintiffs had a duty to report the existence of a fraud to the Insurance Fraud Bureau ("IFB"), not a statutory duty to submit otherwise legal opinions. Of course, doing so served Plaintiffs purpose of trying to generate interest in a grander pursuit of a "97110" fraud prosecution, but that did not happen because the 97110 topic reflects a complex controversy between chiropractors and insurance companies, not a fraud. As one court in another state has explained with a comparable backdrop:

> Assisting in therapeutic exercise, meanwhile, may fall under either category. While some forms of assistance, such as supplying equipment or monitoring repetitions, would be innocuous, other forms of assistance, such as monitoring form or recommending equipment, may require formal education or training. … Upon remand, the trial court should make more specialized findings and determine whether any of the procedures allegedly performed by unlicensed personnel required formal chiropractic education or training, including further inquiry by the court as to the scope of those procedures.
>
> We emphasize, however, our holding that chiropractors may delegate certain non-specialized aspects of performing adjunctive procedures to unlicensed support personnel.
>
> \*      \*      \*      \*
>
> Accordingly, we conclude that the primary impact of the trial court's declaratory-judgment order is correct, that is, unlicensed, chiropractic-support personnel may perform aspects of adjunctive procedures that do not require specialized, chiropractic education or training.

*State Farm Mut. Auto. Ins. Co. v. Cavoto*, 34 A.3d 123, 133, 135 (Pa. Super. 2011).

6.      Interestingly, the motion for leave to file a sur-reply contains as one exhibit a

December 20, 2018 letter from Plaintiffs' counsel stating that Plaintiffs have a right to invoke privilege despite their intentional decision to submit a legal opinion letter to the IFB. A second exhibit is a December 21, 2018 letter from the IFB (obviously prompted by Plaintiffs as constituents of the IFB) stating that the IFB produced documents that "***may*** be protected from disclosure…." (Emphasis added). Those letters miss the point. The waiver did not occur when the IFB sent the legal opinion letter to the GLO. The waiver occurred, under the long line of precedent set forth above, when one of the Plaintiffs chose to submit the legal opinion letter to the IFB.

7.      In a way that could confuse matters, Plaintiffs submitted the two letter exhibits out of order. They make Exhibit A the December 21, 2018 letter from the IFB. They make Exhibit B the December 20, 2018, the letter from Plaintiffs' counsel first raising this issue. After reviewing the correspondence, it is clear that Plaintiffs failed to research this issue yet have obstructed discovery and the use of discoverable materials received from a third party. Plaintiffs prompted the IFB to state that "it cannot specify" which documents should or should not be available and therefore requests that no use be made of any materials that it produced.

8.      At any rate, by prompting the IFB's letter the way it did, Plaintiffs reveal that they did not inadvertently produce the legal opinion letter to the IFB. After all, Plaintiffs have not claimed they mistakenly sent the material to the IFB, let alone that they timely sought a return of the purportedly protected material from the IFB. Instead, Plaintiffs have convinced the IFB to slow down the process and eventually make its own determination (along with Plaintiffs) about whether it mistakenly forwarded the materials to the GLO in response to a subpoena. This is simply too little too late to unring the bell of waiver.

**Conclusion**

Based on the foregoing, this Court should deny Plaintiffs' request for leave to file a sur-reply and instead rule that Plaintiffs' waiver occurred under *MIT* and its progeny, as described above, when Plaintiffs chose to submit a legal opinion letter to the IFB with the hope of generating interest against parties in this matter.

Respectfully submitted,

LAW OFFICES OF JEFFREY S. GLASSMAN, LLC

/s/ *Barry S. Pollack*
Barry S. Pollack  BBO #642064
Peter J. Duffy  BBO #566682
POLLACK SOLOMON DUFFY LLP
101 Huntington Avenue Suite 530
Boston, MA 02199
617-439-9800 (Tel)
bpollack@psdfirm.com

JEFFREY S. GLASSMAN
By his attorneys,
Edward C. Cooley BBO #550117
GIARRUSSO, NORTON, COOLEY
  & McGLONE, P.C.
308 Victory Road
Quincy, MA  02171
(617) 770-2900

Dated:  December 21, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2018, a true copy of the above-document, filed through the ECF system, will be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing.

/s/ *Barry S. Pollack*
Barry S. Pollack