UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY and THE COMMERCE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>SAVIN HILL FAMILY CHIROPRACTIC, INC. et al.,<br><br>Defendants. | Civil Action No. 15-12939-LTS |

FURTHER AMENDED CASE MANAGEMENT ORDER

March 19, 2019

SOROKIN, J.

The context of this case as well as the relevant issues are summarized in the Court's January 31, 2019, Order, Doc. No. 1102. Plaintiffs and Defendants each ask the Court to enlarge the governing schedule and permit more than ten depositions per side. Doc. Nos. 1141, 1145. Plaintiffs and Defendants each oppose the other side's proposed schedule. Doc. Nos. 1168, 1169. Plaintiffs oppose Defendants' request for more than ten depositions. Doc. No. 1168. Defendants partially oppose Plaintiffs' request for more than ten depositions. Doc. No. 1169.

The Court held a hearing on March 14, 2019. The Court required all parties (later excusing certain defendants on their motion) or, in the case of each Plaintiff, its general counsel[1]

---

[1] Metropolitan elected to ignore the plain and unequivocal terms of the Court's Order requiring its "general counsel" to appear. See Doc. No. 1173. Rather, without receiving or even seeking leave of the Court, it arrogated to itself the determination as to the proper person to appear at the hearing and concluded that the Assistant General Counsel responsible for the case, who reports

to attend so that the Court could explain to the parties directly some of the considerations that bear on the scheduling of this case. See Doc. No. 1173. The Court does not here rehash the history of this lawsuit. That history and the Court's prior findings are amply explained in the Court's prior written Orders, including the Order, Doc. No. 1102, that led to this Order.

Written discovery commenced in this case even prior to rulings on motions to dismiss. On February 4, 2016, the Court, inter alia, ordered Plaintiffs to disclose certain claim and expert information on which the Court had relied in making rulings in the case. Doc. No. 223. Although Metropolitan "refused" to comply, the Court subsequently ordered it to comply. Doc. No. 295 at 21. On July 27, 2017, with challenges to the operative complaint still pending, the Court entered the first scheduling order permitting discovery to proceed. Doc. No. 507. Specifically, the Court established a deadline for initial disclosures, required that Plaintiffs produce the claim file for each claim at issue by October 1, 2017, required the relevant defendants to produce the clinic files or medical records pertaining to the relevant patients by the same date, authorized the commencement of written discovery generally, and allowed all but one of the preservation subpoenas sought by the Plaintiffs. Id. at 3–4. It also deferred third party discovery and depositions pending further filings in September 2017 regarding the scope of discovery, which the parties disputed. Id.

---

directly to a lawyer within the in-house counsel office of Metropolitan's parent, was the appropriate person to appear in response to the Court's Order. The Court further notes that this is not isolated conduct. See, e.g., Doc. No. 1199 (conceding that the Court ordered Metropolitan to make certain disclosures by February 25, 2019, that Metropolitan did not timely comply with the Order, that Metropolitan has not obtained an extension in the February 25 deadline, that Metropolitan did not seek leave in advance of that deadline for an extension, and that Metropolitan neither obtained nor sought reconsideration prior to the deadline). No sanction for disobedience of this Court Order issues for this action, but the Court warns Metropolitan that any continuation of its practice of deciding for itself whether to comply with the plain terms of particular orders will result in sanctions. See, e.g., infra at 8.

In the summer and fall of 2017, the two sides hotly disputed the schedule for discovery. Plaintiffs proposed that discovery proceed in one phase as to all issues, including all of the almost 2,000 claims at issue in the Amended Complaint, Doc. No. 304. <u>See</u> Doc. No. 562. Defendants proposed a phased discovery schedule under which discovery would initially be limited to certain discrete topics and/or a limited set of exemplar claims. <u>Id.</u> The Court adopted the approach proposed by Plaintiffs and established a period for all fact discovery ending on October 26, 2018. Doc. No. 591. This twelve-month period for fact discovery on all claims was longer than the period requested by Plaintiffs, who sought ten months from the Court's ruling on the motion to dismiss the counterclaims, Doc. No. 562 at 2—even though that motion had not stayed discovery, which the Court's scheduling order allowed to commence. Of course, at the time of this scheduling order, the Court had already required disclosure of the critical underlying documents—the claim files from Plaintiffs and the medical records from the relevant Defendants. Written discovery between the parties had also been underway for three months at this point. In the scheduling order, the Court also established limits on the number of depositions—25 for plaintiffs and 20 for all defendants—and a schedule for expert discovery following fact discovery. Doc. No. 591 at 2–3.

Although the Court authorized written discovery as to the parties beginning on July 27, 2017, Plaintiffs did not serve their master document requests until seven months later, on February 20, 2018, and their master interrogatories until June 25, 2018 (or June 29, 2018, as to one group of defendants). Doc. No. 801 at 11, 13, 16. Through the summer of 2018, the parties engaged in significant motion practice about the production of the patient and claim files of clinic defendants Savin Hill Family Chiropractic, Inc. ("Savin Hill") and Logan Chiropractic, Inc. ("Logan"). <u>See, e.g.</u>, Doc. No. 739 (finding that the clinics were "just now searching for

relevant documents and information that they should have searched for, at the latest, at the outset of the discovery process"). In any event, by late summer 2018, it was apparent that the parties were unlikely to complete fact discovery by the October 26, 2018, deadline. After receiving submissions from the parties and holding a hearing, the Court revised the schedule. Doc. No. 806. As revised, the Court extended the deadline for completing all written discovery, other than third party discovery, to November 15, 2018; the deadline for completing all third party written discovery to December 31, 2018; and the deadline for completing all fact depositions to March 10, 2019. Id. at 1. The Court also established deadlines of November 26, 2018, for motions to compel arising out of the written discovery and January 7, 2019, for third party discovery. Id.

In the same revised scheduling order, the Court also established deadlines for expert discovery, summary judgment motions, and trial. Id. at 2. As to the trial date, the Court established a "definite" trial date and reserved its trial calendar for the four weeks the parties predicted the trial would require. Id.

Thereafter, the parties filed eight motions to compel on November 26, 2018. Doc. Nos. 873, 875, 878, 879, 882, 884, 885, 886. The parties then filed nineteen motions to compel production from third parties on January 7, 2019. Doc. Nos. 988, 990, 992, 994, 996, 998, 1000, 1002, 1004, 1005, 1007, 1009, 1011, 1013, 1015, 1017, 1019, 1020, 1022. Along the way, the parties have also filed at least five motions for reconsideration of rulings made by Judge Boal, Doc. Nos. 709, 713, 904, 1161, 1199, four appeals from discovery rulings made by Judge Boal, Doc. Nos. 929, 981, 984, 1149, and numerous other discovery motions, see, e.g., Doc. Nos. 1132, 1161.

The time for written discovery has now passed. The extended period ended on November 15, 2018.[2] The deadline to file motions to compel has also passed. The Court has been resolving all of the motions already filed promptly. As of the date of this Order, all of the discovery motions have been resolved, with the exception of one motion, Doc. No. 992, which is the subject of negotiations that appear likely to result in resolution without a ruling, and two Rule 45 motions filed in the Southern District of New York, one of which has been transferred to this Court, see Law Offices of Jeffrey S. Glassman, LLC v. Frustaci et al, No. 19-MC-00109-GBD (S.D.N.Y. filed Mar. 7, 2019); Law Offices of Jeffrey S. Glassman, LLC v. Auto Injury Solutions, Inc., No. 19-MC-00114-ALC (S.D.N.Y. filed Mar. 11, 2019). If the second motion is also transferred to this Court, the Court will address a briefing schedule at that time. One other discovery related motion remains pending before the Court: Metropolitan's motion for an

---

[2] Plaintiffs' opposition discusses taking further written discovery from the Defendants who recently re-entered this matter from bankruptcy. Doc. No. 1168 at 4. But the time for such written discovery has long passed. The previously stayed Defendants entered bankruptcy on August 15, 2018, Doc. Nos. 771, 772, and exited bankruptcy on January 29, 2019, see Doc. No. 1103 at 2. No party sought to extend written discovery with respect to those parties at any point before written discovery ended. Plaintiffs' motion to extend the schedule, Doc. No. 1043, which the Court denied without prejudice because it lacked a reasonable plan for the remainder of discovery, included no mention of additional written discovery from the then-bankrupt defendants, who had, before their bankruptcies, been subject to discovery requests. See, e.g., Doc. No. 699 (compelling production from the Defendants before their bankruptcies). Even after the Court ordered supplemental briefing on that motion, no such request was made. See Doc. No. 1082. When Plaintiffs renewed that motion after its denial without prejudice, the renewed motion which is the motion considered in this Order still included no such request or proposal. See Doc. No. 1141. Similarly, at the hearing, counsel for the Plaintiffs advised the Court of certain discovery not received from Savin or Logan, but Plaintiffs have filed no motion seeking relief, have included no specific period for such discovery in their various proposals filed with the Court, nor proposed any plan, let alone a proportional or reasonable plan, to pursue documents, servers, or anything else from or formerly possessed by Savin or Logan. Indeed, though the Savin and Logan documents have been at a third-party repository for over two months, Plaintiffs have not inspected or reviewed those items. To the extent that plaintiffs' oblique one-sentence reference to further written discovery from the formerly bankrupt parties is a request to reopen such discovery, it is DENIED.

extension of time, Doc. No. 1199. Defendants' response is due March 20, 2019, see Doc. No. 1202, after which the Court will rule promptly.

Various rulings by the Court ordered further disclosures. Each of those rulings has established specific deadlines for compliance.[3] Almost all of those compliance deadlines have passed with the remainder requiring compliance no later than March 25, 2019. See Doc. Nos. 1156, 1157 (March 22, 2019), 1205 (March 25, 2019).[4]

Against this backdrop, on January 17, 2019, Plaintiffs sought an enlargement of the time period for depositions with a commensurate extension (but not enlargement) of all subsequent deadlines. Doc. No. 1043. As of that date, although the Court had authorized a total of 45 depositions—25 for Plaintiffs and 20 in total for all Defendants—no party had taken or scheduled a single deposition. See Doc. No. 1078 at 2. Plaintiffs predicated the motion on the undisputed unavailability of their co-lead counsel due to a serious personal matter. Doc. No. 1043 at 1–2.

Nonetheless, the motion fell well short. Its request was not limited to the amount of time necessary to compensate for the unforeseen personal matter. The motion was not properly discussed with the defendants; indeed, with respect to some defendants, no conferral occurred at

---

[3] See Doc. No. 739 (setting deadline of August 6, 2018); Doc. No. 796 (setting deadlines of September 21, 2018, and October 5, 2018); Doc. No. 838 (setting deadline of December 7, 2018, later modified); Doc. No. 891 (setting deadline of December 28, 2018); Doc. No. 966 (setting deadline of January 15, 2019); Doc. Nos. 969, 970 (setting deadlines of January 18, 2019); Doc. Nos. 974, 975 (setting deadlines of January 31, 2019); Doc. Nos. 927, 1086, 1092 (setting deadlines of February 15, 2019); Doc. No. 1117 (setting deadline of February 19, 2019); Doc. No. 1136 (setting deadline of February 25, 2019); Doc. No. 1146 (setting deadline of March 1, 2019); Doc. No. 1150 (setting deadline of March 7, 2019); Doc. No. 1179 (setting deadline of March 15, 2019); Doc. Nos. 1156, 1157 (setting deadlines of March 22, 2019); Doc. No. 1205 (setting deadline of March 25, 2019).
[4] In addition, third party Hanover Insurance Company voluntarily agreed to make certain productions by May 2, 2019. See Doc. No. 1209.

all. Reasonable and meaningful questions posed by defense counsel were unanswered. Moreover, the motion failed to present a realistic proposal for a revised schedule. See Doc. No. 1102 at 3. The Court ordered supplemental submissions, Doc. No. 1057, reviewed those filings, Doc. Nos. 1078, 1079, 1081, 1082, held a hearing, Doc. No. 1087, and ultimately denied the motion, Doc. No. 1102. In denying the motion, the Court, for reasons explained in its Order, (1) reduced the total number of depositions to ten per side—the presumptive limit under Fed. R. Civ. P. 30(a)—and (2) established a deadline in the event any party wished to file a renewed motion to extend the deadlines or enlarge the number of depositions. Doc. No. 1102 at 2–3. Each side has now requested more time and more depositions.

Fed. R. Civ. P. 26(b)(1) establishes principles to guide discovery, mandating that discovery shall be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy," and "the parties' resources," among other things. With that in mind, essentially three questions require resolution: (1) how many depositions each side may take, (2) how much more time, if any, the Court should allocate for taking these depositions, and (3) when trial of this matter should occur, in light of the deposition schedule, the anticipated expert discovery, and the possibility of summary judgment motions. As sometimes occurs, the two sides' discovery needs differ. Thus, the Court addresses each side's request separately.

Depositions by Plaintiffs

Originally, the Court permitted Plaintiffs to take the deposition of each defendant plus five more depositions. Doc. No. 591 at 5. Recently, the Court reduced that to the presumptive limit of ten depositions. Doc. No. 1102 at 2. Plaintiffs now seek more than the ten depositions, and more than the 25 depositions originally authorized. See Doc. No. 1141 at 4–12. Prior to the

most recent filings, at no time during the lengthy duration of this case had Plaintiffs come to the Court with new information to seek reconsideration of the 25-deposition limit or even an unsupported request to increase the number of authorized depositions.

Over the past several weeks, the Court has comprehensively reviewed the filings, rulings, and docket in this case. This review persuades the Court that the presumptive limit of ten depositions is the correct starting point. Nothing in the filing before the Court asserts that Plaintiffs' need for the 28 depositions sought[5] results from newly acquired information or otherwise explains why the Plaintiffs now seek 28, rather than the originally authorized 25, depositions.

In light of the all the circumstances of the case, the request to increase the number of depositions above the presumptive limit of ten is unwarranted, unreasonable, and disproportional to the needs of the case. While Plaintiffs explain the relevance of the discovery they seek from each witness, relevance is not the only requirement for obtaining discovery. They have not explained the relative importance of the deponents, how they fit into the plan for trial of this matter, or why, beyond relevance, the depositions they seek are necessary or proportional to the needs of the case. In addition, three of their ten depositions as of right are relatively pointless— depositions pursuant to Fed. R. Civ. P. 30(b)(6) of three presently unrepresented entity defendants facing pending motions for default and who appear to have few, if any, assets or even present existence. Accordingly, the request by the Plaintiffs to exceed the presumptive limit of

---

[5] Because the Plaintiffs' motion lists only 28 persons to depose, the Court assumes Plaintiffs seek only 28 depositions. Doc. No. 1141 at 4–12. However, at one point, the filing does state that Plaintiffs intend to seek leave for "thirty-six (36) depositions by the Plaintiffs." Id. at 3.

ten depositions is DENIED.[6] Plaintiffs are authorized, only, to take the depositions of the ten

persons identified in their papers as their ten depositions as of right. See Doc. No. 1141 at 4–5.

     Further, Plaintiffs have disproportionately litigated this case, repeatedly demonstrated an

unwillingness to resolve cooperatively even straightforward matters, squandered months of the

discovery period before serving their master requests without justifiable reason, arrogated to

themselves the decision as to whether discovery objections give rise to a stay of compliance,

sought repeatedly to delay or extend the adjudication of the case they themselves brought, and

flaunted the terms of clear Orders of the Court. See, e.g., Doc. Nos. 794 (noting failure to

cooperate with discovery), 801 (requesting to extend discovery), 896 (describing failure to

comply with a Court Order), 911 (describing Plaintiffs' "unilateral[] limit[ing]" of discovery

production), 1174 (denying a motion that lacked a certificate of conferral). Plaintiffs have been

admonished for conducting a discovery "fishing expedition," Doc. No. 863 at 2, filing a

"frivolous" appeal, Doc. No. 1024 at 2, and advancing a "wildly unreasonable" emergency

motion, Doc. No. 951.

     These circumstances raise the serious concern that the Plaintiffs brought this case, not to

vindicate the legal claims expressed in the Amended Complaint, but merely to harass the

Defendants. These litigation tactics run the risk of more serious sanction to be imposed on

Metropolitan, Commerce, or its counsel. Such sanctions could include dismissal of this action

with prejudice, an award of Defendants' reasonable fees and costs, referral to the

Commonwealth's Division of Insurance, or other appropriate monetary or non-monetary

---

[6] By not authorizing an increase in the number of depositions Plaintiffs may take, the Court does
not thereby limit submissions regarding summary judgment or witnesses at trial.

sanctions. See Fed. R. Civ. P. 11(b)(1), (c), 37; Pomales v. Celulares Telefonica, Inc., 342 F.3d 44, 48 (1st Cir. 2003) (discussing the Court's inherent power to sanction litigants).

Depositions by Defendants

Defendants stand in different shoes than the Plaintiffs for several reasons. First, Plaintiffs undertook a substantial investigation prior to the commencement of this lawsuit thereby giving them a substantial opportunity, which they availed, to examine under oath patients, to conduct IMEs, to review records, to conduct surveillance and to interview potential witnesses. Second, defendants have conducted the litigation differently than the Plaintiffs. Third, the two sides have different issues of focus. Plaintiffs' case is built upon the Defendants' alleged fraud and related RICO conspiracy, resulting in discovery focused on the underlying reimbursement claims and the parties to litigation. Defendants' defenses differ among the many defendants Plaintiffs elected to name in their Amended Complaint. Some Defendants' defenses depend not only on rebutting Plaintiffs' case, but also in part on evidence regarding others' conduct—for example, that of other lawyers who represented claimants from the clinics at issue—or from agents of the Plaintiffs, such as doctors who conducted IMEs. See Doc. No. 1145 at 4. Thus, subject to the considerations set forth in Fed. R. Civ. P. 26, the applicable considerations apply differently and more broadly. Fourth, Defendants have advanced a more tailored proposal, seeking shorter depositions of deponents likely to have less relevant evidence, intending to focus examination only on certain topics. Even so, the 22 depositions, as outlined in Defendants' motion, Doc. No. 1145 at 3–5, exceed the bounds permitted by the rules.

Defendants may take the ten full-day depositions outlined in §§ 2(a) and 2(b) of their motion.[7] Doc. No. 1145 at 3. They may also depose Michael Frustaci and Rick Cuomo as requested by § 2(c).[8] Defendants may also take 1.75-hour depositions of the four lawyers described in § 3. Id. at 4. Plaintiffs may depose then those lawyers for 1.75 hours. Finally, Defendants may take 3.5-hour depositions of the doctors, described in § 3, who performed independent medical examinations for Plaintiffs. Id. at 4–5. Plaintiffs may then depose those doctors for 30 minutes. If Plaintiffs use any of their time, Defendants may then have 20 additional minutes for follow-up questions. Defendants may not depose the representatives of the National Insurance Crime Bureau and the Insurance Fraud Bureau as they propose. Id. at 5.

Discovery and Trial Schedule[9]

In light of the number of depositions permitted, the Rule 26 considerations, the age of the case, the Court's findings in this Order, the portion of the deposition period that has already elapsed, the importance of the issues at stake, and the totality of all the circumstances, the Court finds good cause to revise the schedule as follows.

---

[7] The objections by Plaintiffs to the depositions of Attorneys Ganem and Brink, Doc. No. 1168 at 5–8, are OVERRULED.

[8] These two individuals are plainly both fact witnesses and expert witness for the Plaintiffs. Thus, they are fairly subject to deposition in both capacities. Rather than permitting two depositions—which will unnecessarily complicate matters and make an expensive case more expensive—the defendants may depose each of these individuals only once, but they are entitled to the expert reports prior to deposition. Each deposition may last two days.

[9] The Court no longer considers the personal circumstances of one of Plaintiffs' counsel relevant to whether or how to revise the schedule. Fed. R. Civ. P. 26(b)(1) expressly makes the "resources" of the parties relevant to the scope of discovery. Both Plaintiffs are significant businesses with extensive operations who, guided by full-time in-house counsel, authorized the filing of this RICO action asserting that numerous defendants committed fraud and numerous federal crimes. Since the unexpected personal issue arose, Plaintiffs have had ample time—two months—to arrange for additional counsel to assist with this case and for any such counsel to read into the case. In addition, Plaintiffs have consistently maintained that this issue affected only the scheduling of depositions.

By March 25, 2019, Plaintiffs shall file a status report that states (1) Plaintiffs' calculation of damages, by Defendant and by category, assuming their position on the statute of limitations prevails; (2) Plaintiffs' position as to the applicable statute of limitations period(s) (e.g., three years as to all claims; or three years as to some claims, and another period as to other claims); and (3) the reason(s) Plaintiffs believe that all of the damages they seek are recoverable in light of the statute of limitations.

By April 4, 2019, Glassman and the Glassman Law Office shall file a status report explaining their joint or separate positions as to the applicable statute of limitations period(s), the reason(s) some or all of the damages Plaintiffs seek are barred by these periods of limitation, and the damages Plaintiffs would recover under Plaintiffs' calculation but Defendants' analysis of the statute of limitations.

Neither status report shall exceed five pages. No party shall file further briefing on these status reports, whether styled as a reply, as a surreply, or otherwise, without leave of Court.

By April 4, 2019, Plaintiffs shall show, in a filing not to exceed ten pages, (1) the basis for establishing liability against the Clinic Employees (William Hernandez, Maximo Soto, Arismendy Ramos, Tanisha Ramos, Karla Mendoza, and April Stewart) and the Chiropractors other than Richard McGovern (Marsella Imonti, Allison Robin, Charles Ronchetti, and Tara O'Desky) and (2) good cause for proceeding further with the claims against these defendants. The Court requires this information to assist its efforts to ensure that the scope of discovery is proportional, to manage any summary judgment process efficiently, and to determine the structure of trial. No responses are required to this filing. If a party wishes leave to respond, it may file a motion not to exceed three pages explaining the reasons for which such a response would be helpful.

By May 1, 2019, Plaintiffs shall disclose expert reports by Frustaci and/or Cuomo.

By June 1, 2019, Defendants Richard McGovern shall, in a filing not to exceed five pages, explain the basis for summary judgment motions he anticipates filing, if any, and the reasons for which such motions might prevail. By the same date, Brandy Soto and Heger Asenjo shall, in a joint filing not to exceed five pages, address the same topics with respect to their own summary judgment motions. No responses are required to these filings. If a party wishes leave to respond, it may file a motion not to exceed three pages explaining the reasons for which such a response would be helpful.

By July 31, 2019, the parties shall complete all fact depositions. By the same date, Plaintiffs shall disclose all expert reports upon which they may rely to support their pending claims, and Defendants shall disclose all expert reports upon which they may rely to support their pending counterclaims.

By August 31, 2019, Plaintiffs shall disclose rebuttal experts in response to Defendants' expert reports, and Defendants shall disclose rebuttal experts in response to Plaintiffs' expert reports.

By September 21, 2019, the parties shall complete all expert depositions.

The Court does not anticipate any extension in these deadlines. The Court does not anticipate regarding a party's failure to complete discovery it has authorized to take during a particular period as a basis for that party to seek an extension.

The Court will further address the possibility and timing of summary judgment motions as the case proceeds.

Trial remains scheduled for November 4, 2019, to run day to day thereafter.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge