UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:15-CV-12939-LTS

| | |
|---|---|
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, and THE COMMERCE INSURANCE COMPANY,     Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> SAVIN HILL FAMILY CHIROPRACTIC, INC., et als.,     Defendants, | ) ) ) ) ) ) ) ) ) ) |

**PLAINTIFFS, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY AND THE COMMERCE INSURANCE COMPANY'S RESPONSE TO THE COURT'S MARCH 19, 2019 ORDER (DOC. NO. 1216)**

NOW COME the Plaintiffs/Defendants-in-Counterclaim, Metropolitan Property and Casualty Insurance Company ("Metropolitan"), and The Commerce Insurance Company ("Commerce")(collectively "the Plaintiffs"), in the above-captioned action, and hereby respectfully submit to this Honorable Court their Response, pursuant to the Court's March 19, 2019 Order (Doc. No. 1216).

    1.    **The Basis for Establishing Liability against the Chiropractic Defendants and the Clinic Employee Defendants**

The Plaintiffs' Second Amended Complaint ("SAC") (Doc. No. 304) asserts six (6) specific causes of action (fraud, civil RICO, civil RICO conspiracy, true conspiracy, civil conspiracy, and intentional interference with advantageous business relationships) against the subject Defendants, as well as a claim for violations of M.G.L. c. 93A, §11, against the Chiropractor Defendants. As a threshold matter, because federal procedural law allows for alternative contentions and/or theories of liability, the Plaintiffs have not determined all the bases for establishing liability against the subject Defendants in connection with the aforementioned claims as discovery remains ongoing at this stage of the litigation. See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 155 (1994).

Specifically, federal procedural law allows alternative contentions and parties in a civil case involving the array of factual and legal theories as alleged in this case are typically, "allowed to maintain alternative contentions at least until the evidence is closed, when the court may require some choices to be made about the form of verdict to be used in submitting the case to the jury—see Fed.R.Civ.P. 49—and about instructions to the jury." Id.  In this instance, although the Plaintiffs are in possession of the evidence necessary for establishing liability and illustrating good cause for proceeding further with their claims against the subject Defendants, the Parties have not yet completed discovery, conducted depositions and the Clinic Defendants ("Savin Hill, Logan Chiropractic, Metro Coach, Tony Ramos and Kenneth Ramos"), who have produced de minimis responsive paper and/or electronic discovery following the recent dismissal of their respective bankruptcy petitions and the lifting of the automatic stays pertaining to them in this litigation, and have not complied with pending Orders of this Court.  Moreover, the Plaintiffs, at this time, have been denied the ability to conduct the depositions of the Clinic Employee Defendants, which would further bolster the evidence currently known and will therefore, be seeking reconsideration of that Order (Doc. No. 1216). Accordingly, the Plaintiffs are not yet in possession all of the evidence that could provide further bases for establishing liability against the subject Defendants, or that will illustrate all of their good cause for proceeding further with their claims.

     Notwithstanding the foregoing, the Plaintiffs' bases for establishing liability against the Clinic Employee Defendants and the Chiropractor Defendants includes their active participation in the fraudulent scheme by knowingly and willfully signing, certifying, and/or submitting chiropractic records and bills for false, unwarranted, unlicensed, predetermined and/or unnecessary and unreasonable treatment rendered to the Plaintiffs' claimants and/or insureds by themselves and others in order to fraudulently obtain insurance benefits from the Plaintiffs. Thus, it is the Plaintiffs' position that one basis for establishing liability against the Chiropractor Defendants and the Clinic Employee Defendants is that they knowingly made false representations of material fact in the chiropractic

records and bills from Savin Hill and Logan Chiropractic for the purpose of inducing the Plaintiffs to issue payment of PIP, MedPay, BI, OBI, and UM insurance benefits, and that the Plaintiffs reasonably relied upon the misrepresentations as true when they paid unwarranted insurance benefits to the Defendants.  See Int'l Floor Crafts, Inc. v. Dziemit, 420 F. App'x 6, 14-16 (1st Cir. 2011); citing, Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir.2009); quoting, Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443 (2002)).  Under Massachusetts law, it is immaterial to the Plaintiffs' fraud claims against the subject Defendants whether the intentionally false statement be an overstatement or understatement of the fact bearing upon liability with regard to the submission of a fraudulent insurance claim, and "[w]here the plaintiff proves 'a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge ... it is not necessary to make any further proof of actual intent to deceive.' " Searls v. Standard Acc. Ins. Co., 316; In re Sestito, 136 B.R. 602, 604–05 (Bankr. D. Mass. 1992); quoting, Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991); Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444 (1975).  Mass. 606, 609 (1944).  Here, the Plaintiffs intend on establishing liability against the subject Defendants by presenting evidence illustrating that it is more likely than not that they knowingly and willfully signed, certified, and/or submitted chiropractic records and bills for false, unwarranted, unlicensed, predetermined and/or unnecessary and unreasonable treatment rendered to the Plaintiffs' claimants and/or insureds. The Plaintiffs will also establish that the Chiropractor Defendants and Clinic Employee Defendants knowingly and willfully engaged in a, "plan collectively to commit motor vehicle insurance fraud, that is to say that [they] joined one or more of them in a plan, collectively to do those things which constituted motor vehicle insurance fraud." Com. v. Lonardo, 74 Mass. App. Ct. 566, 572 (2009).  Moreover, the Plaintiffs have evidence that will satisfy the, "willful blindness formulation," that is to say that the subject Defendants do not need to actually know that the statements they made were false, even though the Plaintiffs have specific evidence to the contrary, if the falsity is susceptible of actual

knowledge.  Kozdras v. Land/Vest Props., Inc., 382 Mass. 34, 42-44 (1980).  Based upon the foregoing, the Plaintiffs intend on establishing liability against the subject Defendants for knowingly and willfully engaging in fraudulent conduct by submitting false chiropractic records and bills to the Plaintiffs, and they cannot escape liability by willfully turning a blind eye to the fraudulent conduct of each other and their co-Defendants.

Under Massachusetts law, courts use a preponderance of the evidence standard as the standard of proof in civil cases."  In re Daboul, 85 B.R. 197, 201 (Bankr. D. Mass. 1988).  Under the preponderance of the evidence standard, a jury must only find "whether [the Plaintiff] has proved ... that it is more likely than not" that the Defendant is liable for the tortious conduct.  Liberty Mut. Ins. Co. v. M.C.K., Inc., 62 Mass. App. Ct. 1103, (2004) (for claims of fraud and violations of M.G.L. c. 93A, §11, the jury must only find "whether [the Plaintiff] has proved ... that it is more likely than not that [the Defendant] did personally participate in [the alleged] fraud and in the unfair and deceptive acts and practices").  Accordingly, the evidence supporting all of the Plaintiffs' bases of establishing liability only needs to prove that it is more likely than not that the subject Defendants are liable for the alleged Massachusetts tort claims.

The Plaintiffs also intend on establishing liability against the subject Defendants because they have intentionally and knowingly conducted and/or participated, directly and/or indirectly, in the conduct and affairs of all Defendants' "association-in-fact" enterprise through a pattern of racketeering activity consisting of repeated violations of the federal mail and wire fraud statutes, 18 U.S.C. §1341 and 18 U.S.C. §1343, based upon the use of the United States mails and wires to submit thousands of false and fraudulent chiropractic records, bills, and insurance claims on a continuous basis to Metropolitan and Commerce for the improper and unlawful payment of insurance benefits.  It is the Plaintiffs' position that the fraudulent conduct of the subject Defendants has resulted in a knowing participation in the conduct and affairs of the Defendants' "association-in-fact" enterprise, all of which are enterprises engaged in interstate commerce, thus constituting a pattern of

racketeering activity in violation of 18 U.S.C. §1962(c), as well as a conspiracy to commit a violation of §1962(c), pursuant to 18 U.S.C. §1962(d).

Additionally, the united and concerted actions of the Clinic Employee Defendants, the Chiropractor Defendants and all other co-conspirator Defendants provide another basis for establishing liability against the subject Defendants as it resulted in the submission of thousands of false and fraudulent insurance claims, undetectable on an individual claim basis, to Metropolitan and Commerce.  Specifically, the knowing and concerted actions of the Clinic Employee Defendants and the Chiropractor Defendants as licensed and unlicensed healthcare providers, insurance coordinators, custodians of medical records and runners, as defined by M.G.L. c. 266, §111C,  as well as the actions of all other Defendants resulted in the exercise of a peculiar and improper power of coercion against and over Metropolitan and Commerce, which effectively frustrated the Plaintiffs' safeguards against fraud, thus resulting in the payment of unwarranted insurance benefits.  Accordingly, the Plaintiffs intend on establishing liability against the subject Defendants, pursuant to their coercive civil conspiracy cause of action, by submitting evidence satisfying the preponderance of the evidence standard that the subject Defendants and their co-Defendants, acting in unison, had a peculiar power of coercion over the Plaintiff that they would not have had if they had been acting independently." Jurgens v. Abraham, 616 F.Supp. 1381, 1386 (D.Mass.1985)(quotations and citation omitted); Aetna Cas. Sur. Co. v. P & B Autobody, et. al., 43 F.3d 1546, 1563-1564 (1stCir. 1994).

The Plaintiffs also intend on utilizing their claim for civil conspiracy as a basis for establishing liability against the Chiropractor Defendants and the Clinic Employee Defendants, which carries joint and several liability for each co-conspirator.  "Under this theory, a defendant may be held liable for actions done by others pursuant to a common design or with the defendant's substantial assistance or encouragement."  Mass. Laborers' Health & Welfare Fund v. Philip Morris, 62 F.Supp.2d 236, 244 (D.Mass.1999); Grant v. John Hancock Mut. Life Ins., 183 F.Supp.2d 344, 363 (D.Mass.2002).  The "[k]ey to this cause of action is a defendant's substantial assistance, with the

5

knowledge that such assistance is contributing to a common tortious plan." Grant, 183 F.Supp.2d at 363, quoting, Kurker v. Hill, 44 Mass.App.Ct.184, 189 (1998).

Here, the Plaintiffs have uncovered evidence illustrating that the subject Defendants knowingly participated in the Defendants' scheme to defraud the Plaintiffs by participating in the Clinic Defendants' incentive and/or bonus payment structure designed to ensure claimants and/or patients attended six (6) treatment visits regardless of the necessity of treatment or the veracity of injury, carrying out the fraudulent treatment and billing practices implemented by their co-Defendant, Brandy Soto and other co-Defendants, and by knowingly rendering impermissible and unlawful treatment to claimants and/or patients in violation of the Office Policies and Procedures Manual of the Clinic Defendants, which is given to each employee and specifically precludes them from violating any, "licensure and practice requires of Massachusetts state professional licensing boards," and includes copies of the Massachusetts regulations governing the standards of chiropractic practice, as well as in violation of the training material they received from McGovern, according to his Supplemental Affidavit (Doc. No. 68) (see "Exhibit A"). Indeed, the test allegedly administered to all of the Clinic Employee Defendants expressly states that the administration of chiropractic treatment, in the form of supportive modalities, prior to the patient being seen by a chiropractor will result in their immediate termination. Id. The Plaintiffs have direct evidence in testimony and recorded statements from numerous patients and/or claimants establishing that the Clinic Employee Defendants routinely rendered treatment before they saw a chiropractor on a particular treatment visit and/or on days when the patients never even saw a chiropractor.

    **2.    The Plaintiffs have Good Cause for Proceeding Further with the claims against the Clinic Employee Defendants and the Chiropractor Defendants**

The Plaintiffs have good cause for proceeding further with the claims against the subject Defendants. Pursuant to Black's law dictionary, the term "good cause" means that "from a legal point of view there are sufficient grounds to act on." Black's Law Dictionary 2nd Ed. Furthermore,

under both Fed.R.Civ.P. 26 (c) and Fed.R.Civ.P. 35, a "finding of good cause must be based on a particular factual demonstration… [and] not on conclusory statements. See 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, at 264–65 (1970); Schlagenhauf v. Holder, 379 U.S. 104, 118–19 (1964) (good cause under Fed.R.Civ.P. 35 must be based on more than "conclusory allegations").  In this instance, the Plaintiffs have amassed significant evidence, not only supporting the factual allegations in the SAC, which describe with particularity the subject Defendants' direct knowledge and participation in a conspiratorial scheme to defraud the Plaintiffs and provide the basis for their claims against said Defendants, but only very recently, the Plaintiffs obtained new evidence establishing the Clinic Defendants and Soto offered an incentive and/or cash bonus structure to the Clinic Employee Defendants and other staff to ensure that claimants and/or patients, including those insured by Metropolitan and Commerce, returned to Savin Hill and Logan Chiro for six (6) treatment visits in order to receive the pre-determined, inflated, unwarranted and excessive treatment program rendered by the Chiropractor Defendants (see "Exhibit B").

    As an initial matter, the Plaintiffs did not subjectively and/or arbitrarily select the five (5) Chiropractor Defendants (four (4) chiropractors excluding McGovern, whom the Court specifically excluded from this filing) of the approximately twenty-five (25) chiropractor names that appear on the records and bills submitted to the Plaintiffs from Savin Hill and/or Logan Chiropractic, nor did they subjectively and/or arbitrarily select the six (6) Clinic Employee Defendants of the approximately twenty (20) known unlicensed employees of the clinics.  To the contrary, as alleged in the SAC and established by the chiropractic records and bills submitted to the Plaintiffs, the five (5) Chiropractic Defendants (including) collectively, performed 93% and 92% of the Metropolitan and Commerce claimants', respectively, initial evaluations at Savin Hill or Logan Chiro. Id., at ¶¶341-342. With regard to the Clinic Employee Defendants, the evidence establishes and supports the Plaintiffs' allegations that Hernandez served as the sole director and corporate officer of Logan Chiropractic from 2007 through 2009 (see "Exhibit C" and the SAC, at ¶¶27, 253) before the

7

purported ownership of the clinic was transferred to the Defendant, Kenneth Ramos, and Hernandez transitioned his role within the Defendants' scheme to a primary referral sources and alleged "runner" for the Defendants in his capacity as a customer service representative at Enterprise as admitted to by the Law Firm Defendants.  Specifically, the Plaintiffs have obtained numerous "referral sheets" from the Clinic Defendants, Brandy Soto and the Law Firm Defendants during discovery (see "Exhibit D"), which establish that Hernandez served as a primary referral source in furtherance of the Defendants' scheme to defraud the Plaintiffs of insurance benefits through the submission and/or prosecution of false insurance claims.  Importantly, these same referral sheets were regularly emailed by the Defendant, Karla Mendoza as well as other employees of the clinics to Soto on a regular basis (see "Exhibit E"), and the evidence establishes that Savin Hill and Logan Chiropractic patient lists were also emailed by and between Glassman, Soto and other employee(s) of the Law Firm Defendants (see "Exhibit E").  The Savin Hill and Logan Chiropractic patient list attached as Exhibit D also identifies certain Clinic Employee Defendants' direct participation in the improper and illicit referral relationship and scheme by and between the Law Firm Defendants and the Clinic Defendants, a necessary aspect of ensuring continuity of the Defendants' fraud scheme and evidence that the Defendants' predicate acts constitute a pattern of racketeering activity. See United States v. Boylan, 898 F.2d 230 (1st Cir.), cert. denied, 498 U.S. 849 (1990).

Furthermore, in addition to the voluminous chiropractic records identifying the treating chiropractic assistants by the following initials, "T.R., A.R., M.S., K.M., and A.S.," the Plaintiffs objectively named and have good cause to proceed further against the Clinic Employee Defendants because of the multiple roles they played at the clinics and in furtherance of the Defendants' scheme. Specifically, the Plaintiffs have obtained evidence establishing that April Stewart, Maximo Soto and Arismendy Ramos all served as the custodians of medical records for Savin Hill and Logan Chiro, and that Karla Mendoza served as the insurance coordinator for the clinics at the same that they were rendering unauthorized chiropractic practice at the clinics.  Accordingly, the Plaintiffs did not

subjectively and/or arbitrarily select the subject Defendants, but instead named the individuals who were directly responsible for rendering the majority of the fraudulent treatment to the Plaintiffs' insured and/or claimants at the clinics, and because they signed, certified, and/or submitted chiropractic records and bills to the Plaintiffs for false, unwarranted, unlicensed, predetermined and/or unnecessary and unreasonable chiropractic treatment rendered by themselves or others.  Therefore, not only are the Clinic Employee Defendants and the Chiropractor Defendants liable for the fraudulent treatment practices and billing protocols administered by them and other Defendants at the clinics, but the Plaintiffs have good cause to proceed further with their claims against the subject Defendants.

      The Plaintiffs have good cause to proceed further with their claims against the subject Defendants because the evidence currently known illustrates that the Chiropractor Defendants admitted to assigning the CPT Codes to Savin Hill and Logan Chiropractic's' records and bills used to legitimize the fraudulent treatment and billing practices and protocols, which was implemented by Soto, the Clinic Defendants and McGovern, and was carried out by the Chiropractor Defendants, the Clinic Employee Defendants and others in order to defraud the Plaintiffs of insurance benefits. Specifically, the Clinic Defendants' Answer to the Plaintiffs' Master Interrogatory No. 9 establishes that the assignment of CPT Codes to the chiropractic records and bills was performed by the chiropractors employed by the clinics, and the Chiropractor Defendants' Master Interrogatory Answers establish that they unequivocally stand by their assignment of CPT Codes used to bill the Plaintiffs for chiropractic services.  However, as set forth in 233 CMR 4.09 of the regulations governing the standards of chiropractic practice in Massachusetts and as pled in the Plaintiffs' SAC, "[c]harges for all services provided by a chiropractor shall be based on currently accepted and clinically appropriate procedure codes, including but not limited to Current Procedural Terminology (CPT) codes" and charges not based on currently accepted procedures constitute "improper charges.. [and] a form of 'deceit.'" Id.

Moreover, the expert opinion of the Plaintiffs' independent chiropractic expert, Dr. Frustaci provides evidence of the fraudulent billing contained within every Metropolitan and Commerce claimants' chiropractic records and bills from Savin Hill or Logan Chiro, which specifically includes, but is not limited to: (A) billing for false, exaggerated and/or misleading findings/reports, (B) billing for overutilization of chiropractic practice, (C) billing for treatment not rendered, and (D) billing for unauthorized chiropractic practice.  Dr. Frustaci's expert opinions also provide evidence that the Chiropractor Defendants as well as other Defendants violated the regulations set forth in 233 CMR 4.00 et seq., and 5.00 et seq., which are designed to prevent chiropractors and chiropractic facilities from wrongfully taking advantage of the Massachusetts "No-Fault" system established by M.G.L. c. 90, §34M, and the statutory framework governing bodily injury claims and the amount of medical expenses a patient must incur before he or she satisfies the Massachusetts "tort threshold," prescribed by M.G.L. c. 231, §6D.  These regulations not only demonstrate that the Chiropractor Defendants and the Clinics are bound by these regulations as they were the alleged treating chiropractors at Savin Hill and Logan Chiropractic, but that the subject Defendants engaged in "gross deceit" by billing the Plaintiffs for overutilization, treatment not rendered and unauthorized chiropractic practice. Additionally, as set forth supra p. 7, the Plaintiffs have a good cause to proceed further with their claims against the subject Defendants because the relevant evidence establishes their knowing participation in the scheme.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | By the Plaintiffs, |
|  | Metropolitan Property and Casualty |
|  | Insurance Company, and |
|  | The Commerce Insurance Company, |
|  | By their attorneys, |
|  |  |
|  | /s/ Peter R. Houston |
|  | Glenda H. Ganem |
|  | BBO No. 564374 |
|  | gganem@mhg-pc.com |
|  | Peter R. Houston |
|  | phouston@mhg-pc.com |
|  | BBO No. 681915 |
|  | McGovern, Houston & Ganem, P.C. |
|  | 21 Merchants Row, 4th Floor |
|  | Boston, MA 02109 |
| Date:   April 4, 2019 | (617) 723-1444 |

**CERTIFICATE OF SERVICE**

I, Peter R. Houston, Esq., attorney for the Plaintiffs, Metropolitan Property and Casualty Insurance Company and The Commerce Insurance Company, hereby certify that this document, was served, via electronic mail and regular mail, postage-prepaid, to all Defendants and counsel for all Defendants as identified on the Notice of Electronic Filing (NEF) and in compliance with the Fed.R.Civ.P.

|  |  |
|---|---|
|  | /s/ Peter R. Houston, Esq. |
| Date: April 4, 2019 | Peter R. Houston |